**12**

**MACDONALD | FERNANDEZ LLP**
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
914 Thirteenth Street
Modesto, CA 95354
Telephone: (209) 521-8100
Facsimile: (209) 236-0172

Attorneys for Debtor in Possession,
JEFFERY EDWARD ARAMBEL

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 18-90029-E-11 |
| JEFFERY EDWARD ARAMBEL, | Chapter 11 |
| Debtor. | Docket Control No. MF-9 |
| | Date: April 19, 2018 |
| | Time: 10:30 a.m. |
| | Place: Courtroom 33 |
| | 501 I Street, 6th Floor |
| | Sacramento, California |
| | Hon. Ronald H. Sargis |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEBTOR IN POSSESSION'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS (HOME RANCH)**

**Proposed Purchaser**
Skip Foppiano, or assignee

| **Asset to be Sold** | **Price** |
|---|---|
| ±180.81 acres known as Home Ranch | $3,700,000.00 |
| (Excludes residence and appurtenant land) | ($20,463.47 per acre) |
| APNs 021-013-025; 021-013-026; 021-013-027; and 021-013-028 | |
| (Howard Ranch Sale) | ($1,700,000.00) |

| **Secured Creditors** | **Priority** | **Claim Amount** |
|---|---|---|
| Stanislaus County Tax Collector | Tax | $42,640.45 |
| Mid Valley Services, Inc. | First | $861,264.44 |
| Mid Valley Services, Inc. | Second | $3,296,408.33 |
| SBN V Ag I LLC ("Summit") | Third | $5,378,229.00 |
| Employment Development Dept. | Fourth | $20,251.85 |

## I.   <u>INTRODUCTION</u>

Jeffery Edward Arambel, Debtor in Possession herein, negotiated a favorable sale of that certain real property known as "Home Ranch," comprising approximately 180.81 acres of apricot and peach orchards on Needham Road near Stark Road west of Westley, California (APNs 021-013-025; 021-013-026; 021-013-027; and 021-013-028) (the "Property"), excluding a certain 3,200 square-foot home and shop built upon the land and the approximately one acre surrounding it, to Skip Foppiano, an individual residing in California, or his assignee, for the gross price of $3,700,000.00, as further described in the Purchase and Sale Agreement (the "<u>PSA</u>") offered as Exhibit "A" to the accompanying Motion.

This Motion proposes to pay the secured claims of Stanislaus County Tax Collector and Mid Valley Services, Inc. in full but to reserve net proceeds while disputes regarding Summit and the Employment Development Department's security interests are resolved. Specifically, Summit contends that the Property is collateral for the Debtor in Possession's guarantee of the indebtedness of JEA2, LLC, an entity owned by the Debtor in Possession. Under the circumstances described below and to be further described in a complaint to avoid the guarantee, Summit's liens will be extinguished by virtue of the doctrine of marshalling, equitable subordination, and counterclaims for usury. The Employment Development Department recorded its lien after the petition for relief was filed in this case in violation of 11 U.S.C. § 362(a)(4). Accordingly, Summit and the Employment Development Department's liens are subject to *bona fide* dispute. 11 U.SC. § 363(f)(4).

## II.   <u>JURISDICTION AND VENUE</u>

The Court has jurisdiction of these matters pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

This Motion is made pursuant to Bankruptcy Code Sections 105(a), 363(b), 363(f), 1123(b)(4), and Rule 6004 of the Federal Rules of Bankruptcy Procedure.

## III.   <u>BACKGROUND AND SUMMARY OF RELIEF SOUGHT</u>

The within case was commenced by filing a voluntary chapter 11 petition on January 17, 2018. No trustee has been appointed and the Debtor is in possession of the estate.

***Background***

Among the assets of the estate is Home Ranch, described above. Skip Foppiano has agreed to purchase the Property subject to the terms and conditions of the of the PSA. Under the terms of the PSA, Mr. Foppiano agrees to purchase the Property for the gross price of $3,700,000.00.

The proposed sale is subject to the concurrent sale of the Howard Ranch, as described in the accompanying Motion for Authority to Sell Real Property Free and Clear of Liens (Howard Ranch) for the gross price of $1,700,000.00. For further particulars, reference is made thereto. Home Ranch and Howard Ranch are collateral for the same claims except for real property taxes. The sum of the gross prices of the proposed sales is $5,400,000.00.

$100,000.00 of the combined purchase prices is comprised of two $50,000.00 deposits Mr. Foppiano paid in connection with the potential sale of certain other real properties, namely the "Kellner Ranch" and the "Newman Ranch." The parties dispute whether said deposits are refundable.

***Security Interests***

The Property secures the following estimated claims:

| Priority | Claim Holder | Estimated Claim |
|----------|--------------|-----------------|
| Tax | Stanislaus County Tax Collector | $42,640.45 |
| 1st | Mid Valley Services, Inc. | $861,264.44 |
| 2nd | Mid Valley Services, Inc. | $3,296,408.33 |
| 3rd | Summit | $5,378,229.00[1] |
| 4th | EDD | $20,251.85 |

A true and correct copy of the preliminary title report for this property is offered as Exhibit "C."

The claims of both Mid Valley Services and Summit are secured by other assets as described in Debtor in Possession's Schedules such that their claims are over-secured. In particular, Mid Valley Services' claims are also secured by liens against real properties known as "601 Rogers

---

[1] This claim is included in Amended Schedule B at Item No. 19. This is a guarantee of JEA2's indebtedness to Summit. It is unclear whether this makes up part of Summit's aggregate claims of approximately $23 million. Counsel for Debtor in Possession has requested a payoff demand from Summit orally on record at the Section 341 Meeting of Creditors on February 22, 2018, and in emails sent on March 21 and March 27, 2018. There has been no response.

Road" and the "Grayson Residential" property, as those properties are described in the Schedules. The proposed sales, together, will release 601 Rogers Road and the Grayson Residential property from Mid Valley Services' liens.

### *Commissions, Taxes and Closing Costs*

Debtor in Possession also seeks authority to pay a broker's commission to Pearson Realty of 4% of the gross purchase price. An application to approve Pearson Realty's employment will be filed shortly.

In addition, the Debtor in Possession estimates that there will be escrow fees, recording fees, transfer taxes and other closing costs will not exceed 2% of the gross purchase price.

### *Estimated Proceeds*

The two sales are sufficient to pay Stanislaus County Tax Collector and Mid Valley Services' claims in full, as follows:

| | |
|---|---|
| Aggregate Gross Proceeds | $5,400,000.00 |
| | |
| Secured Claims | |
| Stanislaus County Tax Collector (Both Ranches) | $79,365.02 |
| Mid Valley Services, Inc. (1st DOT) | $861,264.44 |
| Mid Valley Services, Inc. (2nd DOT) | $3,296,408.33 |
| Commissions (Both Sales) | $216,000.00 |
| Est. Closing Costs (Both Sales) | $108,000.00 |
| Total Claims | $4,561,037.79 |
| | |
| Balance | $838,962.21 |

The claims of Mid Valley Services, Inc. shall be paid in full from escrow up to the aggregate amount of $4,157,672.77 together with interest at the rate of $1,900.00 *per diem* from March 31, 2018. All proceeds net of the expenditures described above shall be deposited to a segregated debtor in possession account and shall not be used except upon further order of the Court. Summit and the EDD's security interests shall attach to such proceeds in the same amount, to the same extent and in the same priority as their security interests immediately prior to closing of the sale.

### *Sale Free and Clear*

The sale should be approved free and clear of the security interests asserted by Summit and the EDD because such interests are subject to a *bona fide* dispute. 11 U.S.C. § 363(f)(4). Summit's lien on the property arises from a guarantee of certain obligations of JEA2, LLC. *See* Exhibit "D."

Accordingly, Summit may be compelled to marshal its liens onto JEA2's assets, which are sufficient to secure the liens in full. Cal. Civ. Code §§ 2899 & 3433. Moreover, Summit was the architect of JEA2's creation as a scheme to place assets beyond the reach of other creditors; accordingly, the guarantee and Summit's liens are subject to equitable subordination. 11 U.S.C. § 510(c). Finally, Summit carries no license with the California Department of Business Oversight, and it is not clear which other exception from the usury law applies. *See* Cal. Const. art. 15, § 1(2). The EDD's lien was recorded post-petition on January 24, 2018, in derogation of 11 U.S.C. § 362(a). *See* Exhibit "E."

### ***Good Faith Buyer***

This Motion also requests a determination that Mr. Foppiano is a good-faith buyer and is entitled to the protections of Bankruptcy Code § 363(m). Debtor in Possession intends to offer a declaration from Mr. Foppiano to support such a finding. Debtor in Possession requests that the provisions of Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure that would otherwise stay the order approving the sale be waived under the circumstances.

The proposed sales are subject to bankruptcy court approval and overbidding. Debtor in Possession requests approval of certain bidding procedures as part of this Motion, as described below.

### IV. **SUMMARY OF PROPOSED SALE**

The following is a summary of the material terms of the PSA:

a. Mr. Foppiano, or his assignee, will purchase the Property for the gross of price of $3,700,000.00, all cash.

b. The Property is to be sold upon an "as is," "where is" and "with all faults" basis.

c. The due diligence period has elapsed, and the sale is free of contingencies.

d. A deposit of $2,000.00 was paid to escrow.

e. The date set for close of escrow is April 25, 2018, subject to extension by agreement of the parties.

f.    The assets to be sold include any crop grown in 2018 and its proceeds; the Debtor in Possession expects that there will be none or only a nominal crop.

g.    Upon closing of both sales, the aforesaid deposits totaling $100,000.00 for potential sales of the Kellner Ranch and Newman Ranch will be released by way of cancelling the underlying escrows, whereupon the deposits will be used to pay the purchase price hereunder, as follows:  $50,000.00 to this sale; and $50,000.00 to the Howard Ranch sale.

h.    Real property taxes and special assessments; amounts payable under agreements encumbering the Property; and annual permit or inspection fees shall be pro-rated.  The parties shall each pay one-half of the total cost of the owner's title insurance policy, transfer taxes, closing fees charged by the title company, and any escrow fees.  Debtor in Possession shall pay for a natural hazards zone disclosure report, the releases of any mortgage or other encumbrance, and a broker's commission to Pearson Reality of 4% of the gross purchase price.  Mr. Foppiano shall pay the costs for any title insurance required by his lenders, if any.  Each party shall pay its own legal fees, accounting, and other professional fees.

The foregoing summary is provided for the convenience of the Court and parties in interest, and the terms of the PSA shall control in the event of any discrepancy.

## V.  PROPOSED BIDDING AND SALE PROCEDURES

The Debtor in Possession requests approval of the following bidding and sale procedures:

1.    The sale and opportunity for overbid shall be conducted on April 19, 2018, at 10:30 a.m., at 501 "I" Street, 6th Floor, Courtroom 33, in Sacramento, California, or as soon thereafter as the Court may order.

2.    The auction shall be consolidated with the auction for the Howard Ranch, with parties submitting joint bids for both properties.

3.    A Bidder shall qualify by presenting the Debtor in Possession with proof that the bidder presently has liquid resources necessary to pay the gross sale price of both properties ($5,400,000.00) plus the minimum initial overbid.  Only qualified bidders may bid.

4.    Bids must be made in person and will not be accepted by telephone, facsimile or email.

6

5.      The minimum initial overbid shall be $5,500,000.00 (approximately 102% of the purchase price). Thereafter, bids shall be made in minimum increments of $50,000.00.

6.      Bids shall be made on terms equivalent to or better than the terms provided in the PSAs for the two sales, including terms with respect to due diligence, inspections, contingencies and time for closing.

7.      Bids shall be all cash and free of contingencies.

8.      The highest and best combined bid shall be reduced to a written agreement acceptable to the Debtor in Possession on or before April 20, 2018, subject to extension only by express written agreement of the Debtor in Possession.

9.      In the event that there are overbids and Mr. Foppiano is not the successful bidder, the Deposit shall be refunded to him within five (5) business days of the hearing hereon. The successful bidder shall deposit $4,000.00 to escrow immediately.

## VI.  ANALYSIS OF SALE

### A.    Marketing of Assets

The Property was appropriately marketed. The Property has been posted for sale since May 2016. Person Realty was retained in May 2016 to serve as broker to the pre-petition debtor and had the property listed on various websites, including Pearson Realty's website and listings on Land and Farm, Loopnet/CoStar, and Lands of America, which are specialized websites to advertise the sale of agricultural real property. To date, the Land and Farm posting for the Property has been viewed 833 and Loopnet has included the property in search results 21,033 times in the last 180 days. Copies of specific reports from the listing websites are provided as Exhibit "B."

The Property has also been marketed on Person Realty's website and has been the subject of multiple email and direct-mail marketing efforts to more than 3,000 potential buyers. Samples of direct-mail flyers are included in Exhibit "B." Person Realty fielded between five and six serious expressions of interest for the Property and received one written offer: the offer from Skip Foppiano

### B.    Alternatives to Sale

The most likely alternative to the proposed sale is for Mid Valley Services or Summit to foreclose their liens against the Property. The Debtor in Possession expects that this would seriously

depress the value of the Property, undercutting distributions to other creditors and stakeholders. Accordingly, the Debtor in Possession has determined that the proposed sale is in the best interests of the estate.

### C.    No Relationship to Purchaser

The Debtor in Possession does not have any known relationship to Mr. Foppiano.  Mr. Foppiano has no known relationship with any of the estate's major creditors or known parties in interest.  The proposed sale is the result of arms-length negotiations.  Mr. Foppiano may assign the Property to a related assignee.  Such assignee would be a business entity owned by Mr. Foppiano. Mr. Foppiano does not contemplate assigning the Property to any individual or entity related to the Debtor in Possession.

### D.    Insider Compensation

Except for the aforesaid purchase price, Mr. Foppiano has not offered any compensation to the Debtor in Possession or any employee or agent thereof.  To the best of the Debtor in Possession's knowledge, Mr. Foppiano does not contemplate paying any consideration to any person or entity other than the Debtor in Possession in connection with the sale.

### E.    Tax Impacts of Sale

Debtor in Possession does not anticipate any significant tax impacts from the proposed sale because of the substantial net operating loss carryovers he has accrued from prior tax years.

## VII.    ARGUMENT

### A.    THE PROPOSED SALE IS IN THE BEST INTERESTS OF THE ESTATE

The Debtor in Possession is entitled to sell the Property upon the terms described above because such a sale is within the Debtor in Possession's reasonable business judgment.  *In re Continental Air Lines, Inc.,* 780 F.2d 1223, 1226 (5th Cir. 1986) (standard under 11 U.S.C. § 363(b)(1) is "business judgment"); *In re Ernst Home Center, Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997).  "[T]he bankruptcy court should presume that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *Agarwal v. Pomona Valley Medical Group, Inc. (In re*

*Pomona Valley Medical Group, Inc.*), 476 F.3d 665, 670 (9th Cir. 2007) (applying business judgment standard). Where a sale is proposed in good faith and upon a reasonable basis, "[t]he court will not entertain objections to a trustee's conduct of the estate." *In re Curlew Valley Associates*, 14 B.R. 506, 513–514 (Bankr. D. Utah 1981); *see also In re Southern Biotech, Inc.*, 37 B.R. 318, 322–323 (Bankr. M.D. Fla. 1983). This is because the "[Debtor in Possession], not the Court, is selling this property." *In re Gulf States Steel, Inc.*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002).

The sale was negotiated on an arms-length basis and is subject to Court approval. The proposed sale price provides a substantial benefit to the estate by paying off accrued real property taxes and paying off the senior secured liens on the Property (Mid Valley Services), thereby reducing claims against other assets of the estate. Because the sale is in the best interests of creditors and the estate, the proposed sale should be approved.

**B.     THE COURT SHOULD APPROVE THE SALE FREE AND CLEAR OF SUMMIT AND THE EDD'S LIENS ASSERTED AGAINST THE PROPERTY**

The Court may order that a sale be free and clear of liens that attach to the Property where:

(1)     Applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)     The entity holding the interest consents;

(3)     The interest is a lien and the price at which the property is sold is greater than then aggregate value of all liens on the property;

(4)     The interest is in bona fide dispute; or

(5)     The entity holding the interest could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f). Here, the Court may authorize the sale free and clear of Summit and the EDD's liens because they are subject to bona fide dispute.

Specifically, Summit has an obligation to marshal its liens onto JEA2's assets, which are sufficient to secure the liens in full. Cal. Civ. Code §§ 2899 & 3433; *see also*, *e.g.*, *Shedoudy v. Beverly Surgical Supply Co.*, 100 Cal. App. 3d 730, 734 (1980). Although the underlying deed of trust contains a waiver of marshalling rights, such a waiver arguably binds only the Debtor and not creditors. Pursuant to Bankruptcy Code §§ 544(a)(1) and 1107(a), the Debtor in Possession has the status of a hypothetical judgment creditor and can invoke the doctrine of marshalling in such

9

capacity. *See Owens–Corning Fiberglas Corp. v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.)*, 759 F.2d 1440, 1446–1447 (9th Cir. 1985).

Moreover, Summit demanded the formation and creation of JEA2 in order to place assets beyond the reach of other creditors. Such conduct makes Summit's guarantee and liens subject to equitable subordination. 11 U.S.C. § 510(c). Finally, Summit carries no license with the California Department of Business Oversight, and it is not clear which other exception from California's usury law, if any, applies. Cal. Const. art. 15, § 1(2). Such claims will be raised and resolved by way of adversary proceeding. Debtor in Possession expects that Summit will deny the allegations, but nevertheless they raise a *bona fide* dispute. Accordingly, the sale should be approved free and clear of Summit's liens. 11 U.S.C. § 363(f)(4).

The EDD's lien was recorded on January 24, 2018, several days after the voluntary petition was filed in this case. Hence, the lien is void. *Schwartz v. United States (In re Schwartz)*, 954 F.2d 569, 571 (9th Cir. 1992). Debtor in Possession is demanding that the EDD voluntarily release the lien, but if no such voluntary release is forthcoming, the Debtor in Possession will commence an adversary proceeding for declaratory relief and to recover damages for a knowing violation of the automatic stay. *See* 11 U.S.C. §§ 105(a), 362(k); *America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard)*, 803 F.3d 1095, 1101 (9th Cir. 2015) (*en banc*); *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1191–92 (9th Cir. 2003).

### C. THE PROPOSED SALE IS IN GOOD FAITH AND THE PURCHASER IS ENTITLED TO THE PROTECTIONS OF BANKRUPTCY CODE § 363(m)

Mr. Foppiano is a good-faith buyer and is entitled to the protections of Bankruptcy Code § 363(m). Although the Bankruptcy Code does not define "good faith," courts have found that the good faith requirement of § 363(m) focuses primarily upon the disclosure of all material sale terms and the absence of fraud or collusion between bidders. *See, e.g., In re Abbotts Dairies*, 788 F.2d at 147–148; *see also In re Apex Oil Co.*, 92 B.R. 847, 869–871 (Bankr. M.D. Mo. 1988). It is typically only "fraud, collusion between the purchaser and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders" that leads to a determination that there was a lack of good faith. *In re M Capital Corp.*, 290 B.R. 743, 748 n.3 (B.A.P. 9th Cir. 2003) (quoting *Community*

*Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

As further discussed above, the Purchase Agreement was negotiated at arms' length. Mr. Foppiano has no material connection to any other party in interest. No special treatment for the Debtor in Possession or any insider is proposed. The Debtor in Possession is informed that Mr. Foppiano will execute a declaration to support a finding of its good faith in advance of the hearing.

**D.  THE STAYS PROVIDED IN RULE 62(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND RULE 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE SHOULD BE WAIVED**

The Debtor in Possession requests that the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure be waived. All creditors and parties-in-interest have been provided with notice and afforded an opportunity to object, and no party will be prejudiced by waiver of the applicable stays.

**V.  PRAYER FOR RELIEF**

**WHEREFORE**, the Debtor in Possession prays for an order as follows:

1.  Granting the Motion and approving the sale to Mr. Foppiano for the gross price of $3,700,000.00;

2.  Authorizing the Debtor in Possession to consummate the sale;

3.  Authorizing the Debtor in Possession to take all actions reasonably necessary to close the sale;

4.  Approving the disbursement of the proceeds from escrow to the Stanislaus County Tax Collector and Mid Valley Services in order of their priority under applicable nonbankruptcy law to the extent funds are available to pay them;

5.  Approving and authorizing payment of a broker's commission to Pearson Realty of 4% of the gross purchase price;

6.  Authorizing the Debtor in Possession to pay its share of the transfer taxes, recording fees, real property taxes; water, sewer, and utility charges; amounts payable under agreements encumbering the Property; annual permit or inspection fees; the title insurance policy; closing fees charged by the title company; and any escrow fees;

7.  Authorizing the Debtor in Possession to pay for all costs associated with procuring

11

the natural hazards report;

8.    Approving the sale free and clear of the liens, claims, encumbrances and interests of Summit and the EDD;

9.    Authorizing and directing the Debtor in Possession to hold the balance of the sale proceeds in a segregated debtor-in-possession account pending further order of the Court, with Summit and the EDD's disputed liens attaching to the proceeds to the same extent, validity, and priority as its liens against the Property;

10.    Determining Mr. Foppiano to be a good faith purchaser pursuant to Bankruptcy Code Section 363(m);

11.    Reserving jurisdiction in this Court to interpret and enforce the order and the PSA;

12.    Waiving the stays imposed by Rule 62(a) of the Federal Rules of Civil Procedure and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure; and

13.    For such other and further relief as is appropriate in the premises.

DATED: March 29, 2018                    MACDONALD FERNANDEZ LLP

By: /s/ *Matthew J. Olson*
        Matthew J. Olson,
        Attorneys for Debtor in Possession,
        JEFFERY EDWARD ARAMBEL