**MACDONALD | FERNANDEZ LLP**
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
914 Thirteenth Street
Modesto, CA  95354
Telephone:  (209) 521-8100
Facsimile:  (209) 236-0172

Attorneys for Debtor in Possession,
JEFFERY EDWARD ARAMBEL

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 18-90029-E-11 |
| JEFFERY EDWARD ARAMBEL, | Chapter 11 |
| Debtor. | Docket Control No. MF-9 |
| | Date:　April 19, 2018<br>Time:　10:30 a.m.<br>Place:　Courtroom 33<br>　　　　501 I Street, 6th Floor<br>　　　　Sacramento, California |
| | Hon. Ronald H. Sargis |

**DECLARATION OF JEFFREY EDWARD ARAMBEL IN SUPPORT OF
DEBTOR IN POSSESSION'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY
FREE AND CLEAR OF LIENS (HOME RANCH)**

I, Jeffrey Edward Arambel, declare:

1.　I am the Debtor in Possession herein.  I am over the age of eighteen.  The following facts are true and correct of my own knowledge.  If called as a witness, I could and would competently testify as follows.

2.　I negotiated a sale of that certain real property known as "Home Ranch," comprising approximately 180.81 acres of apricot and peach orchards on Needham Road west of Westley, California (APNs 021-013-025, 021-013-026, 021-013-027, and 021-013-028) (the "Property"), to Skip Foppiano for the gross price of $3,700,000.00, as further described in the Purchase and Sale Agreement (the "PSA"), a true and correct copy of which is offered as Exhibit "A" to the

1

accompanying Motion and is incorporated herein by reference.

3. The Property secures the following estimated claims:

| Priority | Claim Holder | Estimated Claim |
|---|---|---|
| Tax | Stanislaus County Tax Collector | $36,724.57 |
| 1st | Mid Valley Services, Inc. | $861,264.44 |
| 2nd | Mid Valley Services, Inc. | $3,296,408.33 |
| 3rd | Summit | $5,378,229.00 |
| 4th | EDD | $20,251.85 |

I reserve all rights to object to these claims.

4. A true and correct copy of the title report related to this sale is offered as Exhibit "C."

5. Summit's lien against the Property arises from my guarantee of a loan to JEA2, LLC. A true and correct copy of Summit's Deed of Trust which recites that it is based on the loan to JEA2, LLC is offered as Exhibit "D." JEA2 was created at Summit's insistence in connection with the funding of a loan. In connection with that transaction, JEA2 was established, Summit lent money to JEA2, and I was required to guarantee JEA2's borrowing.

6. I was unaware that the Employment Development Department had a lien against any of my properties until I reviewed the title report for this sale. A true and correct copy of the lien is offered as Exhibit "E." The date stamp from the County Recorder indicates that the lien was not recorded until after I filed my voluntary petition to commence this bankruptcy case.

7. I estimate that there will be escrow fees, recording fees, transfer taxes and other closing costs that will not exceed 2% of the gross purchase price, which is $74,000.00.

8. A portion of the purchase price is comprised of $100,000.00 in the form of two $50,000.00 deposits Mr. Foppiano paid in connection with the potential sale of certain other real properties, namely the "Kellner Ranch" and the "Newman Ranch." Mr. Foppiano and I dispute whether said deposits are refundable.

9. Regardless of any contrary or vague terms of the PSA, Mr. Foppiano and I agree that the PSA is entered into by the Debtor in Possession and that it is subject to Court approval and overbid.

10. The Property is to be sold upon an "as is," "where is" and "with all faults" basis.

11. The due diligence period has elapsed, and I have not received any notice or indication of cancellation or termination of the PSA. There are no outstanding contingencies.

12. Mr. Foppiano has paid a deposit of $2,000.00 to escrow.

13. The assets to be sold include any crop grown in 2018 and its proceeds. I expect that there will no crop or only a nominal crop as the apricot orchards are not currently being farmed.

14. It is my opinion that the most likely alternative to the proposed sale is for Mid Valley Services, Inc. or Summit to foreclose their liens against the Property. I expect that this would seriously depress the value of the Property, undercutting distributions to other creditors and stakeholders.

15. The aforesaid negotiations were conducted at arm's-length.

16. I have no relationship to Mr. Foppiano. I know of no relationship between Mr. Foppiano and any of my major creditors.

17. I understand that Mr. Foppiano may assign the Property to a related assignee, which would be a business entity owned by Mr. Foppiano. I know of no plan or intention for Mr. Foppiano to assign the Property to any individual or entity related to myself or any of my major creditors.

18. Except for the aforesaid purchase price, Mr. Foppiano has not offered me any compensation and has not offered any compensation to any of my employees (I have none) or agents.

19. I know of no plan or intention for Mr. Foppiano pay any consideration to any person or entity other than my estate in connection with the sale.

20. I anticipate no significant tax impacts from the proposed sale because of the substantial net operating loss carryovers I have accrued from prior tax years.

21. In light of the foregoing, I have determined that the proposed sale is in the best interests of the estate.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 29th day of March, 2018, at Modesto, California.

    /s/ Jeffrey Edward Arambel
JEFFREY EDWARD ARAMBEL