**111**

**MACDONALD | FERNANDEZ LLP**
IAIN A. MACDONALD (SBN 051073)
RENO F.R. FERNANDEZ III (SBN 251934)
MATTHEW J. OLSON (SBN 265908)
914 Thirteenth Street
Modesto, CA 95354
Telephone: (209) 521-8100
Facsimile: (209) 236-0172

Attorneys for Debtor in Possession,
JEFFERY EDWARD ARAMBEL

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: | Case No. 18-90029-E-11 |
| JEFFERY EDWARD ARAMBEL, | Chapter 11 |
| Debtor. | Docket Control No. MF-9 |
| | Date: April 19, 2018<br>Time: 10:30 a.m.<br>Place: Courtroom 33<br>501 I Street, 6th Floor<br>Sacramento, California<br><br>Hon. Ronald H. Sargis |

**EXHIBITS IN SUPPORT OF**
**DEBTOR IN POSSESSION'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY**
**FREE AND CLEAR OF LIENS (HOME RANCH)**

| Exhibit | Description | Page |
|:---:|:---|:---:|
| A | Purchase and Sale Agreement (Home Ranch) | 2 |
| B | Marketing Materials (Home Ranch) | 21 |
| C | Preliminary Title Report (Home Ranch) | 51 |
| D | Summit Deed of Trust | 78 |
| E | EDD Lien | 110 |

# EXHIBIT A

*Home C/O*



**CALIFORNIA ASSOCIATION OF REALTORS®**

## SELLER COUNTER OFFER No. 1
May not be used as a multiple counter offer.
(C.A.R. Form SCO, 11/14)

Date *February 26, 2018*

This is a counter offer to the: ☐ Purchase Agreement, ☐ Buyer Counter Offer No.___, or ☐ Other _____ ("Offer"), dated *February 9, 2018*, on property known as *180.81 +/- acres Home Ranch, Unincorporated Area, CA* ("Property"), between *Skip Foppiano and/or Assignee* ("Buyer"), and *Jeffery Arambel* ("Seller").

1. **TERMS:** The terms and conditions of the above referenced document are accepted subject to the following:
   A. Paragraphs in the Offer that require initials by all parties, but are not initialed by all parties, are excluded from the final agreement unless specifically referenced for inclusion in paragraph 1C of this or another Counter Offer or an addendum.
   B. Unless otherwise agreed in writing, down payment and loan amount(s) will be adjusted in the same proportion as in the original Offer.
   C. **OTHER TERMS:** *1. The Purchase Price shall be $3,700,000.00.*
   *2. The Deposit shall be $2,000.00.*
   *3. Any and all Contingencies including but not limited to due diligence, financing, etc. shall expire on March 15, 2018.*
   *4. The Close of Escrow shall be March 25, 2018 and is subject to the concurrent close of escrow with Stanislaus County APN: 021-013-006 (Howard Ranch).*
   *5. Seller (Jeff Arambel) and Buyer (Skip Foppiano) Agree that upon the COE by Seller for the purchase from Buyer of both the 180.81 acre Home Ranch for 33.70% Cash and the 83.93 acre (Howard Ranch for $1.7M Cash that Seller agrees to cancel and allow for the release from Escrow back to the Buyer of the two previous escrow deposits between Buyer and Seller of $50,000 each ...[Continued on Addendum No. One attached]...*

   D. The following attached addenda are incorporated into this Seller Counter offer: ☒ Addendum No. *One*
   ☐ _____ ☐ _____

2. **EXPIRATION:** This Seller Counter Offer shall be deemed revoked and the deposits, if any, shall be returned:
   A. Unless by 5:00pm on the third Day After the date it is signed in paragraph 4 (if more than one signature then, the last signature date) or by *3:00* ☐ AM ☒ PM on *02/27/2018* (date) (i) it is signed in paragraph 5 by Buyer and (ii) a copy of the signed Seller Counter Offer is personally received by Seller or *Jon Daggett* , who is authorized to receive it.
   OR B. If Seller withdraws it anytime prior to Acceptance (CAR Form WOO may be used).
   OR C. If Seller accepts another offer prior to Buyer's Acceptance of this counter offer.

3. **MARKETING TO OTHER BUYERS:** Seller has the right to continue to offer the Property for sale. Seller has the right to accept any other offer received, prior to Acceptance of this Counter Offer by Buyer as specified in 2A and 5. In such event, Seller is advised to withdraw this Seller Counter Offer before accepting another offer.

4. **OFFER: SELLER MAKES THIS COUNTER OFFER ON THE TERMS ABOVE AND ACKNOWLEDGES RECEIPT OF A COPY.**
   Seller _*Jeff Arambel*_____
   Seller _____ *Jeffery Arambel* Date *2/26/18*
   Date _____

5. **ACCEPTANCE: I/WE accept** the above Seller Counter Offer (If checked ☐ **SUBJECT TO THE ATTACHED COUNTER OFFER)** and acknowledge receipt of a Copy.
   Buyer _____
   Buyer _____ *Skip Foppiano and/or Assignee* Date *3-2-18* Time _____ ☐ AM/ ☐ PM
   Date _____ Time _____ ☐ AM/ ☐ PM

**CONFIRMATION OF ACCEPTANCE:**
(____ / ____) (Initials) **Confirmation of Acceptance:** A Copy of Signed Acceptance was personally received by Seller, or Seller's authorized agent as specified in paragraph 2A on (date) _____ at _____ ☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by Seller or Seller's authorized agent whether or not confirmed in this document.

© 2014, California Association of REALTORS®, Inc.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**SCO 11/14 (PAGE 1 OF 1)**

**SELLER COUNTER OFFER (SCO PAGE 1 OF 1)**

Peterson Realty, 7480 N. Palm Ave., Suite 101 Fresno, CA 93711    Phone: 559.297.3100    Fax: 559.422.2938    180.81 or Home
Jon Daggett    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

p.4



CALIFORNIA
ASSOCIATION
OF REALTORS®

**ADDENDUM**

(C.A.R. Form ADM, Revised 12/15)

**No.** One (1) to SCO

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☒ Other __Seller Counter Offer No. One__
dated __February 26, 2018__ , on property known as __83.93 acre - Howard Ranch__
__Unincorporated Area, CA__
in which __Skip Foppiano and/or Assignee__ is referred to as ("Buyer/Tenant")
and __Jeffery Arambel__ is referred to as ("Seller/Landlord").

...[Item 5. continued from Seller Counter offer No. One] ... Escrow #'s 4501701761-SM (Kellner Ranch) and 4501701759-SM (Newman Ranch). Buyer and Seller further agree that the return of the Two $50,000 Deposits is only agreed to in the event that the Home Ranch $3.7M and Howard Ranch $1.7M Purchases Close/Record. In the event the COE for the Home/Howard Ranches does not occur per this contract then the Buyer and Seller agree that this contract was not accepted/completed and therefore has no bearing on the Resolution of the Kellner/Newman Cancelation/Deposit Matter.

6. The Expiration of this Seller Counter Offer shall be 3:00 PM on February 27, 2018.

*7. Seller shall cooperate with Buyer's 1031 exchange transaction at no additional costs to Seller at the close of escrow. Jeff Arambel 2/26/18*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __3-2-18__

Buyer/Tenant _____
Skip Foppiano and/or Assignee

Buyer/Tenant _____

Date __2/26/18__

Seller/Landlord _____
Jeffery Arambel

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/15 (PAGE 1 OF 1)

Reviewed by _____ Date _____

**ADDENDUM (ADM PAGE 1 OF 1)**

Premier Realty, 7488 N. Palm Ave., Suite 101 Fresno, CA 93711    Phone: 669.289.5026    Fax: 559.432.3998    83.93 ac Howard
Jon Maggio                              Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com



*Howie Kmett 2/9/18*

**CALIFORNIA
ASSOCIATION
OF REALTORS®**

**DISCLOSURE REGARDING
REAL ESTATE AGENCY RELATIONSHIP**
(Selling Firm to Buyer)
(As required by the Civil Code)
(C.A.R. Form AD, Revised 12/14)

☐ (If checked) This form is being provided in connection with a transaction for a leasehold interest exceeding one year as per Civil Code section 2079.13(k) and (m).

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**
A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties. An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**
A selling agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
(a) Diligent exercise of reasonable skill and care in performance of the agent's duties.
(b) A duty of honest and fair dealing and good faith.
(c) A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**
A real estate agent, either acting directly or through one or more associate licensees, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
(a) A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
(b) Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, the agent may not, without the express permission of the respective party, disclose to the other party that the Seller will accept a price less than the listing price or that the Buyer will pay a price greater than the price offered.
The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional.
Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☒ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date 2/9/18
                Skip Ford and Halt or Assignee

☐ Buyer ☐ Seller ☐ Landlord ☐ Tenant _____ Date _____

Agent _____ **Pearson Realty** _____ BRE Lic. # **00920675**
        Real Estate Broker (Firm)
By _____ BRE Lic. # **01470909** _____ Date _____
    (Salesperson or Broker-Associate)    **Jon Daggett/Bill Hopkins**

**Agency Disclosure Compliance (Civil Code §2079.14):**
• When the listing brokerage company also represents Buyer/Tenant: The Listing Agent shall have one AD form signed by Seller/Landlord and a different AD form signed by Buyer/Tenant.
• When Seller/Landlord and Buyer/Tenant are represented by different brokerage companies: (i) the Listing Agent shall have one AD form signed by Seller/Landlord and (ii) the Buyer's/Tenant's Agent shall have one AD form signed by Buyer/Tenant and either that same or a different AD form presented to Seller/Landlord for signature prior to presentation of the offer. If the same form is used, Seller may sign here:

Seller/Landlord _____ Date _____    Seller/Landlord _____ Date _____
**Jeffrey Arambel**

The copyright laws of the United States (Title 17 U.S. Code) forbid the unauthorized reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
Copyright © 1991-2010, CALIFORNIA ASSOCIATION OF REALTORS®, INC.
ALL RIGHTS RESERVED.

Reviewed by _____ Date _____

**AD REVISED 12/14 (PAGE 1 OF 2)**
**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 1 OF 2)**

Pearson Realty, 7480 N. Palm Ave., Suite 101, Fresno, CA 93711    Phone: 559.287.3910   Fax: 559.432.1938    Arambel Home
Jon Daggett    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## CIVIL CODE SECTIONS 2079.24 (2079.16 APPEARS ON THE FRONT)

**2079.13** As used in Sections 2079.14 to 2079.24, inclusive, the following terms have the following meanings: (a) "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130", of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained, (b) "Associate licensee" means a person who is licensed as a real estate broker or salesperson under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code and who is either licensed under a broker or has entered into a written contract with a broker to act as the broker's agent in connection with acts requiring a real estate license and to function under the broker's supervision in the capacity of an associate licensee. The agent in the real property transaction bears responsibility for his or her associate licensees who perform as agents of the agent. When an associate licensee owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the associate licensee functions. (c) "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee. (d) "Commercial real property" means all real property in the state, except single-family residential real property, dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, mobilehomes, as defined in Section 798.3, or recreational vehicles, as defined in Section 799.29. (e) "Dual agent" means an agent acting, either directly or through an associate licensee, as agent for both the seller and the buyer in a real property transaction. (f) "Listing agreement" means a contract between an owner of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer. (g) "Listing agent" means a person who has obtained a listing of real property to act as an agent for compensation. (h) "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the listing agent. (i) "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. (j) "Offer to purchase" means a written contract executed by a buyer acting through a selling agent that becomes the contract for the sale of the real property upon acceptance by the seller. (k) "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property that constitutes or is improved with one to four dwelling units, any commercial real property, any leasehold in these types of property exceeding one year's duration, and mobilehomes, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. (l) "Real property transaction" means a transaction for the sale of real property in which an agent is employed by one or more of the principals to act in that transaction, and includes a listing or an offer to purchase. (m) "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer, and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. (n) "Seller" means the transferor in a real property transaction, and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor. (o) "Selling agent" means a listing agent who acts alone, or an agent who acts in cooperation with a listing agent, and who sells or finds and obtains a buyer for the real property, or an agent who locates property for a buyer or who finds a buyer for a property for which no listing exists and presents an offer to purchase to the seller. (p) "Subagent" means a person to whom an agent delegates agency powers as provided in Article 5 (commencing with Section 2349) of Chapter 1 of Title 9. However, "subagent" does not include an associate licensee who is acting under the supervision of an agent in a real property transaction.

**2079.14** Listing agents and selling agents shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and, except as provided in subdivision (c), shall obtain a signed acknowledgement of receipt from that seller or buyer, except as provided in this section or Section 2079.15, as follows: (a) The listing agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. (b) The selling agent shall provide the disclosure form to the seller as soon as practicable prior to presenting the seller with an offer to purchase, unless the selling agent previously provided the seller with a copy of the disclosure form pursuant to subdivision (a). (c) Where the selling agent does not deal on a face-to-face basis with the seller, the disclosure form prepared by the selling agent may be furnished to the seller (and acknowledgement of receipt obtained for the selling agent from the seller) by the listing agent, or the selling agent may deliver the disclosure form by certified mail addressed to the seller at his or her last known address, in which case no signed acknowledgement of receipt is required. (d) The selling agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase, except that if the offer to purchase is not prepared by the selling agent, the selling agent shall present the disclosure form to the buyer not later than the next business day after the selling agent receives the offer to purchase from the buyer.

**2079.15** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent, or an associate licensee acting for an agent, shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17** (a) As soon as practicable, the selling agent shall disclose to the buyer and seller whether the selling agent is acting in the real property transaction exclusively as the buyer's agent, exclusively as the seller's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the selling agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. (b) As soon as practicable, the listing agent shall disclose to the seller whether the listing agent is acting in the real property transaction exclusively as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the listing agent prior to or coincident with the execution of that contract by the seller. (c) The confirmation required by subdivisions (a) and (b) shall be in the following form.

(DO NOT COMPLETE. SAMPLE ONLY)

_____ is the agent of (check one): ☐ the seller exclusively; or ☐ both the buyer and seller.
(Name of Listing Agent)

(DO NOT COMPLETE. SAMPLE ONLY)

_____ is the agent of (check one): ☐ the buyer exclusively; or ☐ the seller exclusively; or
(Name of Selling Agent if not the same as the Listing Agent)     ☐ both the buyer and seller.

(d) The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14.

**2079.18** No selling agent in a real property transaction may act as an agent for the buyer only, when the selling agent is also acting as the listing agent in the transaction.

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21** A dual agent shall not disclose to the buyer that the seller is willing to sell the property at a price less than the listing price, without the express written consent of the seller. A dual agent shall not disclose to the seller that the buyer is willing to pay a price greater than the offering price, without the express written consent of the buyer. This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a listing agent from also being a selling agent, and the combination of these functions in one agent does not, of itself, make that agent a dual agent.

**2079.23** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.

**2079.24** Nothing in this article shall be construed to either: diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

AD REVISED 12/14 (PAGE 2 OF 2)

Reviewed by _____ Date _____



## DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP (AD PAGE 2 OF 2)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    180 A1 ar Home

p.5     Mar 06 18, 01:56p



**CALIFORNIA ASSOCIATION OF REALTORS®**

# VACANT LAND PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS
### (C.A.R. Form VLPA, Revised 12/15)

Date Prepared: **February 9, 2018**

**1. OFFER:**

A. **THIS IS AN OFFER FROM** _____ **Skip Foppiano and/or Assignee** _____ ("Buyer"),

B. **THE REAL PROPERTY** to be acquired is **190.81 +/- acres Home Ranch** _____ , situated in **Unincorporated** Area (City), **Stanislaus** (County), California, _____ (Zip Code), Assessor's Parcel No. **See Addm 1** ("Property").
Further Described As _____

C. **THE PURCHASE PRICE** offered is **Three Million, Two Hundred Fifty-Four Thousand, Five Hundred Eighty** _____ Dollars $ **3,254,580.00**

D. **CLOSE OF ESCROW** shall occur on ☒ **on or before 45 days** (date) (or ☐ _____ **Days After Acceptance**).

E. Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

A. **DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

B. **CONFIRMATION:** The following agency relationships are hereby confirmed for this transaction:
Listing Agent _____ **Pearson Realty** _____ (Print Firm Name) is the agent of (check one):
☐ the Seller exclusively; or ☒ both the Buyer and Seller.
Selling Agent _____ **Pearson Realty** _____ (Print Firm Name) (if not the same as the
Listing Agent) is the agent of (check one): ☐ the Buyer exclusively; or ☐ the Seller exclusively; or ☒ both the Buyer and Seller.

C. **POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Possible Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

A. **INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ **50,000.00**
　(1) **Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☒ other **See Addendum 1** within 3 business days after Acceptance (or _____ );
　OR (2) ☐ **Buyer Deposit with Agent:** Buyer has given the deposit by personal check (or _____ )
　to the agent submitting the offer (or to _____ ), made payable to _____ . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within 3 business days after Acceptance (or _____ ).
　Deposit checks given to agent shall be an original signed check and not a copy.
　(Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

B. **INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____ within _____ Days After Acceptance (or _____ ).
If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.

C. ☐ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within 3 (or _____ ) Days After Acceptance, Deliver to Seller such verification.

D. **LOAN(S):**
　(1) **FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
　This loan will be conventional financing or ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☒ subject to financing, ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
　(2) ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
　This loan will be conventional financing or ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
　(3) **FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has 17 (or _____ ) Days After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay for or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.

E. **ADDITIONAL FINANCING TERMS:**

_____

_____

Buyer's Initials ( _____ )( _____ )

© 1996-2016, California Association of REALTORS®, Inc.
**VLPA REVISED 12/15 (PAGE 1 OF 11)**

Seller's Initials ( _____ )( _____ )

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 1 OF 11)**

Pearson Realty, 7480 N. Palm Ave., Suite 101 Fresno, CA 93711　　　　　Jon Daggett　　Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026　www.zipLogix.com　Phone: 559.367.3330　Fax: 559.432.7938　190.81 at Home

Property Address: _180.81 +/- acres Home Ranch, Unincorporated Area, CA_

  **F.**  **BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of ............................. Date: _February 9, 2018_
     to be deposited with Escrow Holder pursuant to Escrow Holder instructions. ................................. $     3,204,580.00
  **G.**  **PURCHASE PRICE (TOTAL):**
  **H.**  **VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's ....................... $     3,254,580.00
     3J(1)) shall, within 3 (or ____ ) Days After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing
     costs. ( ☐ Verification attached.)
  **I.**  **APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the
     Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3),
     in writing, remove the appraisal contingency or cancel this Agreement within 17 (or ____ ) Days After Acceptance.
  **J.**  **LOAN TERMS:**
     **(1) LOAN APPLICATIONS:** Within 3 (or ____ ) Days After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender
     or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or
     preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the
     prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)
     **(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the
     loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or
     the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle
     Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's
     contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies of this Agreement.**
     **(3) LOAN CONTINGENCY REMOVAL:**
     Within 21 (or ____ ) Days After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency
     or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of
     the appraisal contingency.
     **(4) ☒ NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not
     obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.
     **(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by
     the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender
     Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable
     Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to
     the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.
  **K.**  **BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not
     limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a
     specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall
     pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any
     financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer
     from the obligation to purchase the Property and close escrow as specified in this Agreement.
  **L.**  **SELLER FINANCING:** The following terms (or ☐ the terms specified in the attached Seller Financing Addendum) (C.A.R. Form
     SFA) apply ONLY to financing extended by Seller under this Agreement.
     **(1) BUYER'S CREDIT-WORTHINESS:** Buyer authorizes Seller and/or Brokers to obtain, at Buyer's expense, a copy of Buyer's
     credit report. Within 7 (or ____ ) Days After Acceptance, Buyer shall provide any supporting documentation
     reasonably requested by Seller.
     **(2) TERMS:** Buyer's promissory note, deed of trust and other documents as appropriate shall implement the following
     additional terms: (i) the maximum interest rate specified in paragraph 3D shall be the actual fixed interest rate for Seller financing;
     (ii) deed of trust shall contain a REQUEST FOR NOTICE OF DEFAULT on senior loans; (iii) Buyer shall sign and pay for a
     REQUEST FOR NOTICE OF DELINQUENCY prior to Close Of Escrow and at any future time if requested by Seller; (iv) note and
     deed of trust shall contain an acceleration clause making the loan due, when permitted by law and at Seller's option, upon the sale
     or transfer of the Property or any interest in it; (v) note shall contain a late charge of 6% of the installment due (or ____ ) if
     the installment is not received within 10 days of the date due; (vi) title insurance coverage in the form of a joint protection policy
     shall be provided insuring Seller's deed of trust interest in the Property (any increased cost over owner's policy shall be paid by
     Buyer); and (vii) tax service shall be obtained and paid for by Buyer to notify Seller if property taxes have not been paid.
     **(3) ADDED, DELETED OR SUBSTITUTED BUYERS:** The addition, deletion or substitution of any person or entity under this
     Agreement or to title prior to Close Of Escrow shall require Seller's written consent. Seller may grant or withhold consent in
     Seller's sole discretion. Any additional or substituted person or entity shall, if requested by Seller, submit to Seller the same
     documentation as required for the original named Buyer. Seller and/or Brokers may obtain a credit report, at Buyer's
     expense, on any such person or entity.
  **M.**  **ASSUMED OR "SUBJECT TO" FINANCING:** Seller represents that Seller is not delinquent on any payments due on any
     loans. Seller shall, within the time specified in paragraph 18, provide Copies of all applicable notes and deeds of trust, loan
     balances and current interest rates to Buyer. Buyer shall then, as specified in paragraph 19B(3), remove this contingency or
     cancel this Agreement. Differences between estimated and actual loan balances shall be adjusted at Close Of Escrow by cash
     down payment. Impound accounts, if any, shall be assigned and charged to Buyer and credited to Seller. Seller is advised that
     Buyer's assumption of an existing loan may not release Seller from liability on that loan. If this is an assumption of a VA Loan,
     the sale is contingent upon Seller being provided a release of liability and substitution of eligibility, unless otherwise agreed in
     writing. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal counsel
     regarding the ability of an existing lender to call the loan due, and the consequences thereof.

Buyer's Initials (      )(     )                         Seller's Initials (      )(     )
VLPA REVISED 12/15 (PAGE 2 OF 11)

          **VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 2 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com      180.81 +/- Home

Property Address: *180.81 +/- acres Home Ranch, Unincorporated Area, CA*     Date: *February 9, 2018*

**4. SALE OF BUYER'S PROPERTY:**

  A. ☐ This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

OR B. ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ☐ MANUFACTURED HOME PURCHASE:** The purchase of the Property is contingent upon Buyer acquiring a personal property manufactured home to be placed on the Property after Close Of Escrow. Buyer ☐ has ☐ has not entered into a contract for the purchase of a personal property manufactured home. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement, (or ☐ this contingency shall remain in effect until the Close Of Escrow of the Property).

**6. ☐ CONSTRUCTION LOAN FINANCING:** The purchase of the Property is contingent upon Buyer obtaining a construction loan. A draw from the construction loan ☐ will ☐ will not be used to finance the Property. Within the time specified in paragraph 19, Buyer shall remove this contingency or cancel this Agreement (or ☐ this contingency shall remain in effect until Close Of Escrow of the Property).

**7. ADDENDA AND ADVISORIES:**

  A. ADDENDA:

| | |
|---|---|
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☒ Addendum #   *1*   (C.A.R. Form ADM) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R. Form SWPI) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

  B. BUYER AND SELLER ADVISORIES:

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**8. OTHER TERMS:** _____

_____

_____

**9. ALLOCATION OF COSTS**

  A. **INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned, it does not determine who is to pay for any work recommended or identified in the Report.

    (1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by *a reputable company*

    (2) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

    (3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

  B. **ESCROW AND TITLE:**

    (1) (a) ☒ Buyer ☒ Seller shall pay escrow fee *split equally 50%/50%*

       (b) Escrow Holder shall be *Chicago Title Co Fresno*

       (c) The Parties shall, within 5 (or ___ ) Days After receipt, sign and return Escrow Holder's general provisions.

    (2) (a) ☒ Buyer ☒ Seller shall pay for owner's title insurance policy specified in paragraph 18E *split equally 50%/50%*

       (b) Owner's title policy to be issued by *Chicago Title Co Fresno* *split equally 50%/50%*

       (Buyer shall pay for any title insurance policy insuring Buyer's lender, unless otherwise agreed in writing.)

  C. **OTHER COSTS:**

    (1) ☒ Buyer ☒ Seller shall pay County transfer tax or fee *split equally 50%/50%*

    (2) ☐ Buyer ☐ Seller shall pay City transfer tax or fee

    (3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee

    (4) Seller shall pay HOA fees for preparing all documents required to be delivered by Civil Code §4525.

    (5) Buyer to pay for any HOA certification fee.

    (6) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

    (7) ☐ Buyer ☐ Seller shall pay for any private transfer fee

    (8) ☐ Buyer ☐ Seller shall pay for _____

    (9) ☐ Buyer ☐ Seller shall pay for _____

**10. CLOSING AND POSSESSION:** Possession shall be delivered to Buyer: (i) ☐ at 6 PM or *1:00* ☐ AM ☒ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ___ ☐ AM ☐ PM on _____ The Property shall be unoccupied, unless otherwise agreed in writing. Seller shall provide keys and/or means to operate all Property locks. If Property is located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

**11. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:**

  A. **NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are not included in the purchase price or excluded from the sale unless specified in 11B or C.

Buyer's Initials ( __S__ ) ( _____ )         Seller's Initials ( _____ ) ( _____ )

VLPA REVISED 12/15 (PAGE 3 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 3 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     180.81 at Home

Property Address: **180.81 +/- acres Home Ranch, Unincorporated Area, CA**      Date: **February 8, 2018**

  B. **ITEMS INCLUDED IN SALE:**
    (1) All EXISTING fixtures and fittings that are attached to the Property.
    (2) The following items: *The 2018 crops and the 2018 crop proceeds*

    (3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller.
    (4) All items included shall be transferred free of liens and without Seller warranty.
  C. **ITEMS EXCLUDED FROM SALE:**

**12. STATUTORY AND OTHER DISCLOSURES AND CANCELLATION RIGHTS:**
  A. **NATURAL AND ENVIRONMENTAL HAZARD DISCLOSURES AND OTHER BOOKLETS:** Within the time specified in paragraph 19A, Seller shall, if required by Law: (i) Deliver to Buyer earthquake guide(s) (and questionnaire), environmental hazards booklet (ii) disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; and Seismic Hazard Zone; and (iii) disclose any other zone as required by Law and provide any other information required for those zones.
  B. **WITHHOLDING TAXES:** Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).
  C. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)
  D. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at http://www.npms.phmsa.dot.gov/. To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.
  E. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**
    (1) **SELLER HAS:** 7 (or ___ ) Days After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form VLQ).
    (2) If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has 3 (or ___ ) Days After Acceptance to request from the HOA (C.A.R. Form HOA1): (i) Copies of any documents required by Law; (II) disclosure of any pending or anticipated claim or litigation by or against the HOA; (III) a statement containing the location and number of designated parking and storage spaces; (IV) Copies of the most recent 12 months of HOA minutes for regular and special meetings; and (v) the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 9, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.
**13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE:**
  A. Within the time specified in paragraph 19, if Seller has actual knowledge, Seller shall provide to Buyer, in writing, the following information:
    (1) **LEGAL PROCEEDINGS:** Any lawsuits by or against Seller, threatening or affecting the Property, including any lawsuits alleging a defect or deficiency in the Property or common areas, or any known notices of abatement or citations filed or issued against the Property.
    (2) **AGRICULTURAL USE:** Whether the Property is subject to restrictions for agricultural use pursuant to the Williamson Act (Government Code §§51200-51295).
    (3) **DEED RESTRICTIONS:** Any deed restrictions or obligations.
    (4) **FARM USE:** Whether the Property is in, or adjacent to, an area with Right to Farm rights (Civil Code §3482.5 and §3482.6).
    (5) **ENDANGERED SPECIES:** Presence of endangered, threatened, 'candidate' species, or wetlands on the Property.
    (6) **ENVIRONMENTAL HAZARDS:** Any substances, materials, or products that may be an environmental hazard including, but not limited to, asbestos, formaldehyde, radon gas, lead-based paint, fuel or chemical storage tanks, and contaminated soil or water on the Property.
    (7) **COMMON WALLS:** Any features of the Property shared in common with adjoining landowners, such as walls, fences, roads, and driveways, and agriculture and domestic wells whose use or responsibility for maintenance may have an effect on the Property.
    (8) **LANDLOCKED:** The absence of legal or physical access to the Property.
    (9) **EASEMENTS/ENCROACHMENTS:** Any encroachments, easements or similar matters that may affect the Property.
    (10) **SOIL FILL:** Any fill (compacted or otherwise), or abandoned mining operations on the Property.
    (11) **SOIL PROBLEMS:** Any slippage, sliding, flooring, drainage, grading, or other soil problems.
    (12) **EARTHQUAKE DAMAGE:** Major damage to the Property or any of the structures from fire, earthquake, floods, or landslides.
    (13) **ZONING ISSUES:** Any zoning violations, non-conforming uses, or violations of 'setback' requirements.
    (14) **NEIGHBORHOOD PROBLEMS:** Any neighborhood noise problems, or other nuisances.
  B. **RENTAL AND SERVICE AGREEMENTS:** Within the time specified in paragraph 19, Seller shall make available to Buyer for inspection and review, all current leases, rental agreements, service contracts and other related agreements, licenses, and permits pertaining to the operation or use of the Property.
  C. ☐ **TENANT ESTOPPEL CERTIFICATES:** Within the time specified in paragraph 19, Seller shall deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: (i) that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); (ii) that no lessor defaults exist; and (iii) stating the amount of any prepaid rent or security deposit.

Buyer's Initials (    ) (    )         Seller's Initials (    ) (    )

VLPA REVISED 12/15 (PAGE 4 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 4 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com      180.81 ac Home

p. 9      Mar 06 18, 02:00p

Property Address: **180.81 +/- acres Home Ranch, Unincorporated Area, CA**　　　　Date: **February 9, 2018**

　　D. **MELLO-ROOS TAX; 1915 BOND ACT:** Within the time specified in paragraph 19, Seller shall: (i) make a good faith effort to obtain a notice from any local agencies that levy a special tax or assessment on the Property (or, if allowed, substantially equivalent notice), pursuant to the Mello-Roos Community Facilities Act, and Improvement Bond Act of 1915, and (ii) promptly deliver to Buyer any such notice obtained.

　　E. **SELLER VACANT LAND QUESTIONNAIRE:** Seller shall, within the time specified in paragraph 19, complete and provide Buyer with a Seller Vacant Land Questionnaire (C.A.R. Form VLQ).

14. **SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer of which Buyer is otherwise unaware, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies disclosed in reports ordered and paid for by Buyer.

15. **CHANGES DURING ESCROW:**
　　A. Prior to Close Of Escrow, Seller may engage in the following acts, ("Proposed Changes"), subject to Buyer's rights in paragraph 15B: (i) rent or lease any part of the premises; (ii) alter, modify or extend any existing rental or lease agreement; (iii) enter into, alter, modify or extend any service contract(s); or (iv) change the status of the condition of the Property.
　　B. At least 7 (or ___ ) Days prior to any Proposed Changes, Seller shall give written notice to Buyer of such Proposed Changes. Within 5 (or ___ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes, in which case Seller shall not make the Proposed Changes.

16. **CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close of Escrow.
　　A. Seller shall, within the time specified in paragraph 19A, DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, and make any and all other disclosures required by law.
　　B. Buyer has the right to conduct Buyer Investigations of the property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
　　C. Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

17. **BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
　　A. Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: (i) inspect for lead-based paint and other lead-based paint hazards; (ii) inspect for wood destroying pests and organisms; (iii) review the registered sex offender database; (iv) confirm the insurability of Buyer and the Property; and (v) satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: (i) invasive or destructive Buyer Investigations except for minimally invasive testing; or (ii) inspections by any governmental building or zoning inspector or government employee, unless required by Law.
　　B. Seller shall make the Property available for all Buyer Investigations. Seller shall (i) as specified in paragraph 19B, complete Buyer Investigations and, either remove the contingency or cancel this Agreement, and (ii) give Seller, at no cost, complete Copies of all investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
　　C. **Buyer indemnity and Seller protection for entry upon property:** Buyer shall: (i) keep the Property free and clear of liens; (ii) repair all damage arising from Buyer Investigations; and (iii) indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs of Buyer's Investigations. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination or cancellation of this Agreement and Close Of Escrow.
　　D. **BUYER IS STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY AND ALL MATTERS AFFECTING THE VALUE OR DESIRABILITY OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE ITEMS SPECIFIED BELOW. IF BUYER DOES NOT EXERCISE THESE RIGHTS, BUYER IS ACTING AGAINST THE ADVICE OF BROKERS. BUYER UNDERSTANDS THAT ALTHOUGH CONDITIONS ARE OFTEN DIFFICULT TO LOCATE AND DISCOVER, ALL REAL PROPERTY CONTAINS CONDITIONS THAT ARE NOT READILY APPARENT AND THAT MAY AFFECT THE VALUE OR DESIRABILITY OF THE PROPERTY. BUYER AND SELLER ARE AWARE THAT BROKERS DO NOT GUARANTEE, AND IN NO WAY ASSUME RESPONSIBILITY FOR, THE CONDITION OF THE PROPERTY. BROKERS HAVE NOT AND WILL NOT VERIFY ANY OF THE ITEMS IN THIS PARAGRAPH 17, UNLESS OTHERWISE AGREED IN WRITING.**
　　E. **SIZE, LINES, ACCESS AND BOUNDARIES:** Lot size, property lines, legal or physical access and boundaries including features of the Property shared with adjoining landowners, such as walls, fences, roads and driveways, whose use or responsibility for maintenance may have an effect on the Property and any encroachments, easements or similar matters that may affect the Property. (Fences, hedges, walls and other natural or constructed barriers or markers do not necessarily identify true Property boundaries. Property lines may be verified by survey.) (Unless otherwise specified in writing, any numerical statements by Brokers regarding lot size are APPROXIMATIONS ONLY, which have not been and will not be verified, and should not be relied upon by Buyer.)
　　F. **ZONING AND LAND USE:** Past, present, or proposed laws, ordinances, referendums, initiatives, votes, applications and permits affecting the current use of the Property, future development, zoning, building, size, governmental permits and inspections. Any zoning violations, non-conforming uses, or violations of "setback" requirements. (Buyer should also investigate whether these matters affect Buyer's intended use of the Property.)
　　G. **UTILITIES AND SERVICES:** Availability, costs, restrictions and location of utilities and services, including but not limited to, sewerage, sanitation, septic and leach lines, water, electricity, gas, telephone, cable TV and drainage.

Buyer's Initials ( _____ )

VLPA REVISED 12/15 (PAGE 5 OF 11)

Seller's Initials ( _____ ) ( _____ )

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 5 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026　www.zipLogix.com　　180.81 ac Home

Property Address: __180.61 +/- acres Home Ranch, Unincorporated Area, CA__     Date: __February 9, 2018__

**H. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel, oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, including mold (airborne, toxic or otherwise), fungus or similar contaminant, materials, products or conditions.

**I. GEOLOGIC CONDITIONS:** Geologic/seismic conditions, soil and terrain stability, suitability and drainage including any slippage, sliding, flooding, drainage, grading, fill (compacted or otherwise), or other soil problems.

**J. NATURAL HAZARD ZONE:** Special Flood Hazard Areas, Potential Flooding (Inundation) Areas, Very High Fire Hazard Zones, State Fire Responsibility Areas, Earthquake Fault Zones, Seismic Hazard Zones, or any other zone for which disclosure is required by Law.

**K. PROPERTY DAMAGE:** Major damage to the Property or any of the structures or non-structural systems and components and any personal property included in the sale from fire, earthquake, floods, landslides or other causes.

**L. NEIGHBORHOOD, AREA AND PROPERTY CONDITIONS:** Neighborhood or area conditions, including Agricultural Use Restrictions pursuant to the Williamson Act (Government Code §§51200-51295), Right To Farm Laws (Civil Code §3482.5 and §3482.6),schools, proximity and adequacy of law enforcement, crime statistics, the proximity of registered felons or offenders, fire protection, other government services, availability, adequacy and cost of any speed-wired, wireless internet connections or other telecommunications or other technology services and installations, proximity to commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, abandoned mining operations on the Property, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

**M. COMMON INTEREST SUBDIVISIONS; OWNER ASSOCIATIONS:** Facilities and condition of common areas (facilities such as pools, tennis courts, walkways, or other areas co-owned in undivided interest with others), Owners' Association that has any authority over the subject property, CC&Rs, or other deed restrictions or obligations, and possible lack of compliance with any Owners' Association requirements.

**N. SPECIAL TAX:** Any local agencies that levy a special tax on the Property pursuant to the Mello-Roos Community Facilities Act or Improvement Bond Act of 1915.

**O. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants and the right of a landlord to terminate a tenancy.

**P. MANUFACTURED HOME PLACEMENT:** Conditions that may affect the ability to place and use a manufactured home on the Property.

**18. TITLE AND VESTING:**

**A.** Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosures (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.

**B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

**C.** Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a "CLTA/ALTA Homeowner's Policy of Title Insurance", if applicable to the type of property and buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or _____ ) Days After Acceptance** to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 8M, 7A, 8, 9, 12A, B, and E, 13, 16A and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

**B. (1) BUYER HAS: 17 (or _30_ ) Days After Acceptance, unless otherwise agreed in writing, to:**
(i) complete all Buyer investigations; review all disclosures, reports, and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and (ii) Deliver to Seller Signed Copies of Statutory Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.

**(2)** Within the time specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

**(3)** By the end of the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has 5 (or _____ ) Days After Delivery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

Buyer's Initials ( ___S___ ) ( _____ )

Seller's Initials ( _____ ) ( _____ )

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 6 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     180.61 +/- Home

Property Address: **150.81 +/- acres Home Ranch, Unincorporated Area, CA** _____ Date: **February 9, 2018**

(4) **Continuation of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

**C. SELLER RIGHT TO CANCEL:**

(1) **Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

(2) **Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): (i) Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; (ii) Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); (iii) Deliver a letter as required by paragraph 3J(1); (iv) Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; (v) Return Statutory Disclosures as required by paragraph 12A; or (vi) Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 27B; or (vii) Provide evidence of authority to sign in a representative capacity as specified in paragraph 19. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: (i) be in writing; (ii) be signed by the applicable Buyer or Seller; and (iii) give the other Party at least **2**(or _____ ) Days After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days Prior** to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

**E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: (i) completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; (ii) elected to proceed with the transaction; and (iii) assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: (i) be signed by the applicable Buyer or Seller; and (ii) give the other Party at least **3** (or _____ ) Days After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days Prior** to the scheduled close of escrow.

**G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award. If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).

**20. REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: (i) obtain invoices and paid receipts for Repairs performed by others; (ii) prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and (iii) provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

**21. FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5** (or _____ ) Days Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: (i) the Property is maintained pursuant to paragraph 16; (ii) Repairs have been completed as agreed; and (iii) Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

**22. ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: (i) Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; (ii) Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; (iii) Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and (iv) Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

**23. PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment

Buyer's Initials ( **S** )( _____ )                    Seller's Initials ( _____ )( _____ )

**VLPA REVISED 12/15 (PAGE 7 OF 11)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 7 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com            150.81 +/- Home

Filed 03/29/18     Case 18-90028     Doc 177

Property Address: __180.81 +/- acres Home Ranch, Unincorporated Area, CA__     Date: __February 9, 2018__

District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: (i) for periods after Close Of Escrow, by Buyer; and (ii) for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

**24. BROKERS:**

**A. COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

**B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: (i) Does not decide what price Buyer should pay or Seller should accept; (ii) Does not guarantee the condition of the Property; (iii) Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; (iv) Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; (v) Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; (vi) Shall not be responsible for inspecting public records or permits concerning the title or use of Property; (vii) Shall not be responsible for identifying the location of boundary lines or other items affecting title; (viii) Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; (ix) Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; (x) Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and (xi) Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

**25. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 37 or 38 and attach a Representative Capacity Signature Addendum (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code §18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**26. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

**A.** The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder, which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5, 6, 7A, 8, 9, 12B, 18, 18G, 23, 24A, 26, 28, 32, 35, 36, 37, 38 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 24A, or paragraph D of the section titled Real Estate Brokers on page 10 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 9B(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, within 3 (or ____ ) Days, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 9, 12 or elsewhere in this Agreement.

**B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within 3 Days After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 12B, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

**C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 24A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 24A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

**D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

**E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within 3 Days after mutual execution of the amendment.

Buyer's Initials ( S )( _____ )      Seller's Initials ( _____ )( _____ )

VLPA REVISED 12/15 (PAGE 8 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 8 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     180.81 +/- Home

Property Address: _180.81 +/- acres Home Ranch, Unincorporated Area, CA_ _____ Date: _February 9, 2018_

**27. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.

B. **LIQUIDATED DAMAGES:** If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. Buyer and Seller agree that this amount is a reasonable sum given that it is impractical or extremely difficult to establish the amount of damages that would actually be suffered by Seller in the event Buyer were to breach this Agreement. Release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).

Buyer's Initials _____ / _____     Seller's Initials _____ / _____

**28. DISPUTE RESOLUTION:**

A. **MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (www. consumermediation.org) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVIS ON IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 28C.

B. **ARBITRATION OF DISPUTES:** The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 28C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials _____ / _____     Seller's Initials _____ / _____

C. **ADDITIONAL MEDIATION AND ARBITRATION TERMS:**

(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.

(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.

(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

**29. SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.

**30. MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.

Buyer's Initials ( _____ )( _____ )     Seller's Initials ( _____ )( _____ )

VLPA REVISED 12/15 (PAGE 9 OF 11)

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 9 OF 11)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     180.81 +/- Home

Mar 06 18, 02:05p

p.14

Property Address: **180.81 +/- acres Home Ranch, Unincorporated Area, CA**     Date: **February 9, 2018**

**31. ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorney fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 28A.

**32. ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in writing by Seller (C.A.R. Form AOAA).

**33. EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.

**34. TERMS AND CONDITIONS OF OFFER:** This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counteroffer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.

**35. TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance with the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**

**36. DEFINITIONS:** As used in this Agreement:
A. **"Acceptance"** means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.
B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.
C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.
D. **"Close Of Escrow"** means the date the grant deed, or other evidence of transfer of title, is recorded.
E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.
F. **"Days"** means calendar days. However, after Acceptance, the last Day for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.
G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.
H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.
I. **"Deliver", "Delivered" or "Delivery",** unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).
J. **"Electronic Copy" or "Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.
K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.
L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.
M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

**37. EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by _____ **Jon Daggett** _____ who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by **12:00** ☐ AM/ ☒ PM, on **February 12, 2018** (date)).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **2 | 8 | 18**    BUYER _____
(Print name) **Skip Foppiano and/or Assignee**
Date _____    BUYER _____
(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

Buyer's Initials ( __S__ ) ( _____ )         Seller's Initials ( _____ ) ( _____ )

**VLPA REVISED 12/15 (PAGE 10 OF 11)**

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 10 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com     180.81 ac Home

Property Address: _180.81 +/- acres Home Ranch, Unincorporated Area, CA_    Date: _February 9, 2018_

**38. ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER** (C.A.R. Form SCO or SMCO) DATED:_____

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _____ SELLER _____

(Print name) _Jefferey Arambel_ _____

Date _____ SELLER _____

(Print name) _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

( ____ / ____ )   **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(initials)   personally received by Buyer or Buyer's authorized agent on (date) _____ at _____
☐ AM/ ☐ PM. A binding Agreement is created when a Copy of Signed Acceptance is personally received by
Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this
confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence
the date that Confirmation of Acceptance has occurred.

---

**REAL ESTATE BROKERS:**
A. Real Estate Brokers are not parties to the Agreement between Buyer and Seller.
B. Agency relationships are confirmed as stated in paragraph 2.
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING BROKER COMPENSATION:** Listing Broker agrees to pay Cooperating Broker **(Selling Firm)** and Cooperating Broker agrees to accept, out of Listing Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Listing Broker and Cooperating Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.

Real Estate Broker (Selling Firm) _Pearson Realty_ _____
By _____ _Jon Daggett/Bill Hopkins_ CalBRE Lic. # _01470963_   CalBRE Lic. # _00020875_
By _____ CalBRE Lic. # _____ Date _____
Address _7480 N. Palm Avenue, Suite 101_ _____ City _Fresno_ _____ State _CA_ Zip _93711_
Telephone _(559)287-3020_ Fax _(559)256-7391_ E-mail _jdaggett@pearsonrealty.com_

Real Estate Broker (Listing Firm) _Pearson Realty_ _____
By _____ _Jon Daggett/Bill Hopkins_ CalBRE Lic. # _01470963_   CalBRE Lic. # _00020875_
By _____ CalBRE Lic. # _____ Date _____
Address _7480 N. Palm Avenue, Suite 101_ _____ City _Fresno_ _____ State _CA_ Zip _93711_
Telephone _(559)287-3020_ Fax _(559)256-7391_ E-mail _jdaggett@pearsonrealty.com_

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked) ☐ a deposit in the amount of $ _____
counter offer numbers _____ ☐ Seller's Statement of Information and _____ ),
supplemental escrow instructions and the terms of Escrow Holder's general provisions, and agrees to act as Escrow Holder subject to paragraph 28 of this Agreement, any
Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

Escrow Holder _Chicago Title Co_ _____
By _____ Escrow # _____
Address _____ Date _____
Phone/Fax/E-mail _____
Escrow Holder has the following license number # _____
☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Bureau of Real Estate.

---

**PRESENTATION OF OFFER:** ( _____ ) _____ Listing Broker presented this offer to Seller on _____
    Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
    Seller's Initials

---

©1996- 2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.) NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Buyer's Acknowledge that page 11 is part of this Agreement ( _____ )( _____ )

VLPA REVISED 12/15 (PAGE 11 OF 11)

Reviewed by _____ Broker or Designee

**VACANT LAND PURCHASE AGREEMENT (VLPA PAGE 11 OF 11)**
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   180.81 ac Home

Mar 06 18, 02:07p       p.16



CALIFORNIA
ASSOCIATION
OF REALTORS®

# BUYER'S INSPECTION ADVISORY
(C.A.R. Form BIA, Revised 11/14)

Property Address: **180.81 +/- acres Home Ranch, Unincorporated Area, CA** _____ ("Property").

**1. IMPORTANCE OF PROPERTY INVESTIGATION:** The physical condition of the land and improvements being purchased is not guaranteed by either Seller or Brokers. You have an affirmative duty to exercise reasonable care to protect yourself, including discovery of the legal, practical and technical implications of disclosed facts, and the investigation and verification of information and facts that you know or that are within your diligent attention and observation. A general physical inspection typically does not cover all aspects of the Property nor items affecting the Property that are not physically located on the Property. If the professionals recommend further investigations, including a recommendation by a pest control operator to inspect inaccessible areas of the Property, you should contact qualified experts to conduct such additional investigations.

**2. BROKER OBLIGATIONS:** Brokers do not have expertise in all areas and therefore cannot advise you on many items, such as those listed below. If Broker gives you referrals to professionals, Broker does not guarantee their performance.

**3. YOU ARE STRONGLY ADVISED TO INVESTIGATE THE CONDITION AND SUITABILITY OF ALL ASPECTS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO THE FOLLOWING. IF YOU DO NOT DO SO, YOU ARE ACTING AGAINST THE ADVICE OF BROKERS.**

  **A. GENERAL CONDITION OF THE PROPERTY, ITS SYSTEMS AND COMPONENTS:** Foundation, roof (condition, age, leaks, useful life), plumbing, heating, air conditioning, electrical, mechanical, security, pool/spa (cracks, leaks, operation), other structural and nonstructural systems and components, fixtures, built-in appliances, any personal property included in the sale, and energy efficiency of the Property.

  **B. SQUARE FOOTAGE, AGE, BOUNDARIES:** Square footage, room dimensions, lot size, age of improvements and boundaries. Any numerical statements regarding these items are APPROXIMATIONS ONLY and have not been verified by Seller and cannot be verified by Brokers. Fences, hedges, walls, retaining walls and other barriers or markers do not necessarily identify true Property boundaries.

  **C. WOOD DESTROYING PESTS:** Presence of, or conditions likely to lead to the presence of wood destroying pests and organisms.

  **D. SOIL STABILITY:** Existence of fill or compacted soil, expansive or contracting soil, susceptibility to slippage, settling or movement, and the adequacy of drainage.

  **E. WATER AND UTILITIES; WELL SYSTEMS AND COMPONENTS; WASTE DISPOSAL:** Water and utility availability, use restrictions and costs. Water quality, adequacy, condition, and performance of well systems and components. The type, size, adequacy, capacity and condition of sewer and septic systems and components, connection to sewer, and applicable fees.

  **F. ENVIRONMENTAL HAZARDS:** Potential environmental hazards, including, but not limited to, asbestos, lead-based paint and other lead contamination, radon, methane, other gases, fuel oil or chemical storage tanks, contaminated soil or water, hazardous waste, waste disposal sites, electromagnetic fields, nuclear sources, and other substances, materials, products, or conditions (including mold (airborne, toxic or otherwise), fungus or similar contaminants).

  **G. EARTHQUAKES AND FLOODING:** Susceptibility of the Property to earthquake/seismic hazards and propensity of the Property to flood.

  **H. FIRE, HAZARD AND OTHER INSURANCE:** The availability and cost of necessary or desired insurance may vary. The location of the Property in a seismic, flood or fire hazard zone, and other conditions, such as the age of the Property and the claims history of the Property and Buyer, may affect the availability and need for certain types of insurance. Buyer should explore insurance options early as this information may affect other decisions, including the removal of loan and inspection contingencies.

  **I. BUILDING PERMITS, ZONING AND GOVERNMENTAL REQUIREMENTS:** Permits, inspections, certificates, zoning, other governmental limitations, restrictions, and requirements affecting the current or future use of the Property, its development or size.

  **J. RENTAL PROPERTY RESTRICTIONS:** Some cities and counties impose restrictions that limit the amount of rent that can be charged, the maximum number of occupants, and the right of a landlord to terminate a tenancy. Deadbolt or other locks and security systems for doors and windows, including window bars, should be examined to determine whether they satisfy legal requirements.

  **K. SECURITY AND SAFETY:** State and local Law may require the installation of barriers, access alarms, self-latching mechanisms and/or other measures to decrease the risk to children and other persons of existing swimming pools and hot tubs, as well as various fire safety and other measures concerning other features of the Property.

  **L. NEIGHBORHOOD, AREA, SUBDIVISION CONDITIONS; PERSONAL FACTORS:** Neighborhood or area conditions, including schools, law enforcement, crime statistics, registered felons or offenders, fire protection, other government services, availability, adequacy and cost of internet connections or other technology services and installations, commercial, industrial or agricultural activities, existing and proposed transportation, construction and development that may affect noise, view, or traffic, airport noise, noise or odor from any source, wild and domestic animals, other nuisances, hazards, or circumstances, protected species, wetland properties, botanical diseases, historic or other governmentally protected sites or improvements, cemeteries, facilities and condition of common areas of common interest subdivisions, and possible lack of compliance with any governing documents or Homeowners' Association requirements, conditions and influences of significance to certain cultures and/or religions, and personal needs, requirements and preferences of Buyer.

By signing below, Buyers acknowledge that they have read, understand, accept and have received a Copy of this Advisory. Buyers are encouraged to read it carefully.

Buyer _____     Buyer _____

      Skip Pippino and/or Assignee

© 1991-2004, California Association of REALTORS®, Inc. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**BIA REVISED 11/14 (PAGE 1 OF 1)**

## BUYER'S INSPECTION ADVISORY (BIA PAGE 1 OF 1)

Pearson Realty, 7480 N. Palm Ave., Suite 101 Fresno, CA 93711
Jon Daggett     Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Phone: 559.237.3010    Fax: 559.432.1938    180.81 ac Home



**CALIFORNIA ASSOCIATION OF REALTORS®**

## POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER - DISCLOSURE AND CONSENT
(C.A.R. Form PRBS, 11/14)

A real estate broker (Broker), whether a corporation, partnership or sole proprietorship, may represent more than one buyer or seller. This multiple representation can occur through an individual licensed as a broker or salesperson or through different individual brokers or salespersons (associate licensees) acting under the Broker's license. The associate licensees may be working out of the same or different office locations.

**Multiple Buyers:** Broker (individually or through its associate licensees) may be working with many prospective buyers at the same time. These prospective buyers may have an interest in, and make offers on, the same properties. Some of these properties may be listed with Broker and some may not. Broker will not limit or restrict any particular buyer from making an offer on any particular property whether or not Broker represents other buyers interested in the same property.

**Multiple Sellers:** Broker (individually or through its associate licensees) may have listings on many properties at the same time. As a result, Broker will attempt to find buyers for each of those listed properties. Some listed properties may appeal to the same prospective buyers. Some properties may attract more prospective buyers than others. Some of these prospective buyers may be represented by Broker and some may not. Broker will market all listed properties to all prospective buyers whether or not Broker has another or other listed properties that may appeal to the same prospective buyers.

**Dual Agency:** If Seller is represented by Broker, Seller acknowledges that Broker may represent prospective buyers of Seller's property and consents to Broker acting as a dual agent for both seller and buyer in that transaction. If Buyer is represented by Broker, buyer acknowledges that Broker may represent sellers of property that Buyer is interested in acquiring and consents to Broker acting as a dual agent for both buyer and seller with regard to that property.

In the event of dual agency, seller and buyer agree that: **(a)** Broker, without the prior written consent of the Buyer, will not disclose to seller that the Buyer is willing to pay a price greater than the offered price; **(b)** Broker, without the prior written consent of the seller, will not disclose to the buyer that seller is willing to sell property at a price less than the listing price; and **(c)** other than as set forth in (a) and (b) above, a dual agent is obligated to disclose known facts materially affecting the value or desirability of the property to both parties.

**Offers not necessarily confidential:** Buyer is advised that seller or listing agent may disclose the existence, terms, or conditions of buyer's offer unless all parties and their agent have signed a written confidentiality agreement. Whether any such information is actually disclosed depends on many factors, such as current market conditions, the prevailing practice in the real estate community, the listing agent's marketing strategy and the instructions of the seller.

Buyer and seller understand that Broker may represent more than one buyer or more than one seller and even both buyer and seller on the same transaction and consents to such relationships.

Seller and/or Buyer acknowledges reading and understanding this Possible Representation of More Than One Buyer or Seller - Disclosure and Consent and agrees to the agency possibilities disclosed.

Seller _____ Date _____

Seller _____ *Jefferey Arambel* Date _____

Buyer _____ Date _____

Buyer _____ *Skip Foppiano and/or Assignee* Date 2-9-18

Real Estate Broker (Firm) *Pearson Realty* _____ Date _____

By _____ CalBRE Lic # *00020875* Date _____

*Jon Daggett/Bill Hopkins*     CalBRE Lic # *01470963* Date _____

Real Estate Broker (Firm) *Pearson Realty* _____ Date _____

By _____ CalBRE Lic # *00020875* Date _____

*Jon Daggett/Bill Hopkins*     CalBRE Lic # *01470963* Date _____

© 2014, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

PRBS 11/14 (PAGE 1 OF 1)

**POSSIBLE REPRESENTATION OF MORE THAN ONE BUYER OR SELLER (PRBS PAGE 1 OF 1)**

Pearson Realty, 7480 N. Palm Ave, Suite 101 Fresno, CA 93711    Jon Daggett    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com    Phone: 559.287.3620    Fax: 559.432.3938    100.81 ac Home



## CALIFORNIA
## ASSOCIATION
## OF REALTORS®

### ADDENDUM
(C.A.R. Form ADM, Revised 12/15)

No. _1_

The following terms and conditions are hereby incorporated in and made a part of the: ☐ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement. ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind). ☒ Other _VLPA_

dated _February 9, 2018_ , on property known as _160.91 +/- acres Home Ranch_

_Unincorporated Area, CA_

in which _Skip Foppiano and/or Assignee_ is referred to as ("Buyer/Tenant")

and _Jefferey Arambel_ is referred to as ("Seller/Landlord").

*1. The Property includes Stanislaus County APN's: 021-013-025, 026, 027 & 028.*

*2. Buyer to inspect the subject property including, but not limited to: soil tests, water productivity, perched water possibilities, water quality, irrigation systems, valves, hoses, filters, tanks, location of the subject property, preliminary title report, Natural Hazard Disclosure Statement, Williamson Act contract, property corners, etc. at Buyer's sole cost and expense and hereby agrees to purchase the subject property as inspected in it's "AS IS" condition at the close of escrow removing all contingencies whatsoever, in the event Buyer does not approve of the subject property, for any reason whatsoever, within the 30 day due diligence period in writing through escrow, both Buyer and Seller agree to execute escrow cancellation instructions immediately on or before the 30 day due diligence period and Buyer's $60,000 deposit will be refunded to Buyer immediately through escrow. Close of escrow to be on or before 45 days from acceptance Buyer's obligation to purchase the subject property is expressly conditioned upon Buyer's written approval of the above mentioned contingencies during Buyer's 30 day due diligence period.*

*3. Buyer and Seller agree to execute mutual cancellation instructions on Escrow #4501701759-SM (Newman Ranch), and Buyer's $50,000 deposit from that escrow shall be transferred and applied to the initial deposit for this new purchase agreement/escrow.*

*4. The subject property to be free of any underground tanks, hazardous materials, waste substances and/or adverse environmental conditions at the close of escrow. The property to be free of any and all monetary liens and/or encumbrances on or before the close of escrow.*

*5. Seller shall pay Pearson Realty 4% of the gross sales price at the close of escrow.*

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date _2-9-18_                                              Date _____

Buyer/Tenant _____                              Seller/Landlord _____
       **Skip Foppiano and/or Assignee**                               _Jefferey Arambel_

Buyer/Tenant _____                              Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL. This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

ADM REVISED 12/15 (PAGE 1 OF 1)

| Reviewed by _____ Date _____ |



### ADDENDUM (ADM PAGE 1 OF 1)

Pearson Realty, 7480 N. Palm Ave., Suite 101 Fresno, CA 93711      Phone: 559.287.3020      Fax: 559.432.2838      160.91 ac Home
Jon Dargert                       Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

# EXHIBIT B



**PEARSON REALTY**
AGRICULTURAL PROPERTIES
*A Tradition in Trust Since 1919*

# FOR SALE
# #8 Home Ranch



## 180.81± Acres
## Stanislaus County, California

**Exclusively Presented By:**
**Pearson Realty**



# #8 Home Ranch

## *180.81± Acres*        *$4,283,250*

**LOCATION:** The subject property is located just east of Westley Road exit off of the I-5 corridor. The site address is 2955 Needham, Westley, CA 95387. Travel easterly to the property to Stark Road, south to Needham Road west to the subject property. The property will be on the north side of the road adjacent to the Howard Ranch and Needham Ranch.

**DESCRIPTION:** The property is planted to approximately 96± acres of Patterson variety apricots planted in 1990± and inter-planted in 1994±. The Patterson apricot spacing is approximately 10 x 14± for 311± trees to the acres. The production is available upon request, but approximately 18± tons to the acre. Furthermore, the balance of the property is planted to 82± acres of Ross peaches planted in 2009± on a 13 x 17± spacing for 197± trees per acres. The production records are available upon request.

**LEGAL:** APN's 021-013-025; 48.06± acres, 021-013-026; 48.70± acres, 021-013-027; 39.83± acres 021-013-028; 44.22± acres. A-2-40 Agriculture Exclusive (40± acre minimum parcel size). The property is located in the Williamson Act. SEC 5 & 6 T.5 S. R. 7 E. M. D. B. & M.

**WATER:** All of the irrigation has been provided via hose pull sprinkler system from a deep pump and well on the property as well as district water from Del Puerto Water District a federal water district which receives water from the Delta Mendota Canal.

**SOILS:** Vernalis-Zacharian complex, 0 to 2 percent sloes
Zacharias clay loam, 0 to 2 percent slopes
Cortina gravelly sandy loam, 0 to 5 percent slopes, rarely flooded
Stomar clay loam, 0 to 2 percent slopes

**BUILDINGS/
IMPROVEMENTS:** Shop

**PRICE/TERMS:** $4,283,250. All cash at the close of escrow and cultural cost in addition to the purchase price prior to close of escrow.




# SOILS MAP      # 8 HOME RANCH - 180.81± ACRES





| 120 | Vernalis-Zacharias complex, 0 to 2 percent slopes | Grade 1 - Excellent |
|-----|--------------------------------------------------|---------------------|
| 130 | Stomar clay loam, 0 to 2 percent slopes | Grade 1 - Excellent |
| 140 | Zacharias clay loam, 0 to 2 percent slopes | Grade 1 - Excellent |
| 210 | Cortina gravelly sandy loam, 0 to 5 percent slopes, rarely flooded | Grade 3 - Fair |

# ASSESSOR'S PARCEL MAP



# LOCATION







## Offices Serving The Central Valley

**FRESNO**
7480 N. Palm Ave, Ste 101
Fresno, CA 93711
559.432.6200

**VISALIA**
3447 S. Demaree Street
Visalia, CA 93277
559.732.7300

**BAKERSFIELD**
1801 Oak Street, Ste 121
Bakersfield , CA 93301
661.334.2777

## PEARSON REALTY
AGRICULTURAL PROPERTIES
*A Tradition in Trust Since 1919*

We believe the information contained herein to be correct. It is obtained from sources which we regard as reliable, but we assume no liability for errors or omissions. Policy on cooperation: All real estate licensees are invited to offer this property to prospective buyers. Do not offer to other agents without prior approval.



# AG LAND FOR SALE

## STANISLAUS COUNTY RANCHES NEAR PATTERSON, CA

| | | |
|---|---|---|
| #2 Howard Ranch | 83.93± acres | Apricots |
| #4 Cheng Ranch | 35.40± acres | Peaches |
| #5 Newman Ranch | 314.78± acres | Peaches/Apricots |
| #8 Home Ranch | 180.81± acres | Peaches/Apricots |
| #10 Needham Ranch | 265.40± acres | Peaches/Apricots |
| #12 Kellner Ranch | 176.30± acres | Almonds/Apricots |
| #23 Lismer Ranch | 400.00± acres | Grazing/Peaches/Cherries |
| Arambel Grazing Portfolio | 10,789.85± acres | (6) Grazing Ranches |

*Seller will consider all offers.*

**For Additional Information Please Contact:**

Jon Daggett
Senior Vice President
559.287.3020
jdaggett@pearsonrealty.com
CA BRE #01470963

Bill Hopkins
Senior Vice President
559.970.9070
bhopkins@pearsonrealty.com
CA BRE #00942873

www.pearsonrealty.com



# AG LAND FOR SALE

## STANISLAUS COUNTY RANCHES NEAR PATTERSON, CA

| | | |
|---|---|---|
| #2 Howard Ranch | 83.93± acres | Apricots |
| #4 Cheng Ranch | 35.40± acres | Peaches |
| #5 Newman Ranch | 314.78± acres | Peaches/Apricots |
| #8 Home Ranch | 180.81± acres | Peaches/Apricots |
| #10 Needham Ranch | 265.40± acres | Peaches/Apricots |
| #12 Kellner Ranch | 176.30± acres | Almonds/Apricots |
| #23 Lismer Ranch | 400.00± acres | Grazing/Peaches/Cherries |
| Arambel Grazing Portfolio | 10,789.85± acres | (6) Grazing Ranches |

*Seller will consider all offers.*

**For Additional Information Please Contact:**

Jon Daggett
Senior Vice President
559.287.3020
jdaggett@pearsonrealty.com
CA BRE #01470963

Bill Hopkins
Senior Vice President
559.970.9070
bhopkins@pearsonrealty.com
CA BRE #00942873

www.pearsonrealty.com



7480 North Palm Avenue, Suite 101
Fresno, CA 93711

*OR CURRENT RESIDENT*

**PLEASE CONTACT US TO BE ADDED TO OUR E-MAIL/MAILING LIST AND BE NOTIFIED OF OUR OTHER NEW LISTINGS COMING SOON IN NORTHERN CALIFORNIA!**



7480 North Palm Avenue, Suite 101
Fresno, CA 93711

*OR CURRENT RESIDENT*

**PLEASE CONTACT US TO BE ADDED TO OUR E-MAIL/MAILING LIST AND BE NOTIFIED OF OUR OTHER NEW LISTINGS COMING SOON IN NORTHERN CALIFORNIA!**

## Cheryl Aanonson

**From:** marketing <marketing@thepresort.com>
**Sent:** Tuesday, June 28, 2016 2:32 PM
**To:** Cheryl Aanonson
**Subject:** Re: Print Quote

$975.00 to mail and $270.00 for printing.

*[handwritten: $1,245⁰⁰ / 3000 pieces ⇒ .415¢ / ½ page postcard]*

Thank You,
Victoria

*****************

Victoria Mejia
Assistant Director of Marketing
Presort Center of Fresno, LLC
1931 G St
Fresno CA 93706
Ph: 559-498-6151
Fax: 559-498-6585

*[handwritten: 6/30/15]*

---

**From:** Cheryl Aanonson <CAanonson@pearsonrealty.com>
**Sent:** Tuesday, June 28, 2016 2:15 PM
**To:** marketing
**Subject:** RE: Print Quote

Hi Victoria,

Attached is a the postcard our marketing department did.  Can you please confirm pricing on it for 3,000 pieces?

Thank you!

**Cheryl R. Aanonson**
**Pearson Realty**
7480 N. Palm Avenue, Suite 101
Fresno, CA 93711
T 559.447.6239 | C 559.871.0480
F 559.432.2938 | caanonson@pearsonrealty.com
*CA BRE# 01415147*
www.pearsonrealty.com
*Independently Owned and Operated*



---

**From:** marketing [mailto:marketing@thepresort.com]
**Sent:** Wednesday, June 22, 2016 4:07 PM
**To:** Cheryl Aanonson
**Subject:** Fw: Print Quote



# AG LAND FOR SALE

**25% PRICE REDUCTION!**

## STANISLAUS COUNTY RANCHES NEAR PATTERSON, CA

| | | |
|---|---|---|
| #2 Howard Ranch | 83.93± acres | Apricots |
| #4 Cheng Ranch | 35.40± acres | Peaches |
| #5 Newman Ranch | 314.78± acres | Peaches/Apricots |
| #8 Home Ranch | 180.81± acres | Peaches/Apricots |
| #10 Needham Ranch | 265.40± acres | Peaches/Apricots |
| #12 Kellner Ranch | 176.30± acres | Almonds/Apricots |
| #23 Lismer Ranch | 400.00± acres | Grazing/Peaches/Cherries |
| Arambel Grazing Portfolio | 10,789.85± acres | (6) Grazing Ranches |

*Seller will consider all offers.

**For Additional Information Please Contact:**

**Jon Daggett**
Senior Vice President
559.287.3020
jdaggett@pearsonrealty.com
CA BRE #01470963

**Bill Hopkins**
Senior Vice President
559.970.9070
bhopkins@pearsonrealty.com
CA BRE #00942873

www.pearsonrealty.com

PEARSON REALTY
A Tradition in Trust Since 1919



7480 North Palm Avenue, Suite 101
Fresno, CA 93711



*OR CURRENT RESIDENT*

*Please contact us to be added to our
e-mail/mailing list and be notified of
other new listings coming soon
in Northern California!*

# THE MAIL SERVICE SPECIALISTS

Presort Center of Fresno, LLC
(559) 498-6151
FAX 498-6585
1931 "G" Street, Fresno CA 93706

January 10, 2017

To: Cheryl R. Aanonson: - *Pearson Realty*

Thank you for giving us the opportunity to quote your project. Below are all cost associated with this job with postage as an estimate. The Presort Center will require postage on this project to be paid prior to mailing. Turnaround time will be two days after receipt of material and data files.

## Mail Quote

*Based on mailing 3,000 postcards*
Data Processing/Inkjetting/Printing                     $408.00
Presorted Standard Postage **estimated** (.279 per piece)     $837.00

Total to print and mail                               $ 1,245.00
*(Postage is only an estimate based on customer supplied information)*

Thank You

Victoria Mejia

*approved.*

*Cheryl Aanonson*

*1-12-17*

2955 Needham
Total Listing Views in the last 180 days

# Exposure Scores



Views (LAST 180 DAYS)
21,033

# Visitor Map



● 1-20 VIEWS    ● 21-99 VIEWS    ● 100+ VIEWS

# Visitor Details



| INSIDE OF LISTING'S COUNTY | OUTSIDE OF LISTING'S COUNTY | OTHER |
|---|---|---|
| 0% | 5% | 89% |
| OWNERS, INVESTORS, PRINCIPALS | OWNERS, INVESTORS, PRINCIPALS | UNKNOWN ROLES |
| 1% | 4% | |
| BROKERS, AGENTS | BROKERS, AGENTS | |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| Donlon Realty | PATTERSON | CA | 09/27/2017 | Broker/Agent |
| Bella Casa Realty & Mortgage | CERES | CA | 09/27/2017 | Broker/Agent |
| N/A | TURLOCK | CA | 09/27/2017 | Unknown |
| N/A | TRACY | CA | 09/27/2017 | Unknown |
| N/A | TRACY | CA | 09/29/2017 | Unknown |
| N/A | | CA | 09/29/2017 | Unknown |
| N/A | SAN JOSE | CA | 09/30/2017 | Unknown |
| N/A | RIVERBANK | CA | 09/30/2017 | Unknown |
| N/A | LOS ANGELES | CA | 09/30/2017 | Unknown |
| Donlon Realty | PATTERSON | CA | 10/01/2017 | Broker/Agent |
| Diehl Real Estate | MODESTO | CA | 10/01/2017 | Broker/Agent |
| N/A | DUBLIN | OH | 10/01/2017 | Unknown |
| N/A | ATWATER | CA | 10/01/2017 | Unknown |
| N/A | | OH | 10/01/2017 | Unknown |
| N/A | SAN FRANCISCO | CA | 10/02/2017 | Unknown |
| N/A | | CA | 10/02/2017 | Unknown |
| N/A | VISALIA | CA | 10/04/2017 | Unknown |
| N/A | STOCKTON | CA | 10/04/2017 | Unknown |
| N/A | FREMONT | CA | 10/04/2017 | Unknown |
| N/A | SACRAMENTO | CA | 10/06/2017 | Unknown |
| N/A | SOUTH SAN FRANCISCO | CA | 10/10/2017 | Unknown |
| N/A | SANTA CRUZ | CA | 10/10/2017 | Unknown |
| N/A | MOKELUMNE HILL | CA | 10/10/2017 | Unknown |
| N/A | BOYDTON | VA | 10/10/2017 | Unknown |
| Peter Boysen Realty | LINDEN | CA | 10/11/2017 | Broker/Agent |
| N/A | MARTINEZ | CA | 10/11/2017 | Unknown |
| N/A | STOCKTON | CA | 10/12/2017 | Unknown |
| N/A | BOYDTON | VA | 10/12/2017 | Unknown |
| N/A | TRACY | CA | 10/13/2017 | Unknown |
| N/A | VICTORVILLE | CA | 10/15/2017 | Broker/Agent |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | VALLEJO | CA | 10/15/2017 | Unknown |
| N/A | PLEASANTON | CA | 10/16/2017 | Unknown |
| N/A | MANTECA | CA | 10/16/2017 | Unknown |
| N/A | DANVILLE | CA | 10/16/2017 | Unknown |
| N/A | | | 10/17/2017 | Unknown |
| N/A | TURLOCK | CA | 10/18/2017 | Unknown |
| N/A | SAN JOSE | CA | 10/18/2017 | Unknown |
| N/A | NEWBURYPORT | MA | 10/18/2017 | Unknown |
| N/A | | | 10/19/2017 | Unknown |
| N/A | BOYDTON | VA | 10/21/2017 | Unknown |
| N/A | REDMOND | WA | 10/22/2017 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 10/22/2017 | Unknown |
| N/A | GALT | CA | 10/22/2017 | Unknown |
| Greystone Realty | FOWLER | CA | 10/25/2017 | Lender/Mortgage Broker |
| Ag Land Real Estate | DAVIS | CA | 10/26/2017 | Broker/Agent |
| N/A | PORTLAND | OR | 10/26/2017 | Unknown |
| N/A | MODESTO | CA | 10/28/2017 | Unknown |
| N/A | REDMOND | WA | 10/28/2017 | Unknown |
| N/A | DUBLIN | OH | 10/28/2017 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 10/29/2017 | Unknown |
| N/A | WALNUT CREEK | CA | 10/29/2017 | Unknown |
| N/A | SAN JOSE | CA | 10/29/2017 | Owner/Investor |
| N/A | FOLSOM | CA | 10/31/2017 | Unknown |
| N/A | VALLEJO | CA | 11/01/2017 | Unknown |
| N/A | SAN LUIS OBISPO | CA | 11/01/2017 | Unknown |
| N/A | NEWARK | DE | 11/01/2017 | Unknown |
| N/A | BAKERSFIELD | CA | 11/01/2017 | Unknown |
| Teresi Enterprises | LODI | CA | 11/02/2017 | Owner/Investor |
| N/A | REDMOND | WA | 11/03/2017 | Unknown |
| N/A | VENTURA | CA | 11/04/2017 | Unknown |
| N/A | REDMOND | WA | 11/04/2017 | Unknown |
| N/A | MERCED | CA | 11/05/2017 | Unknown |
| N/A | LOS ANGELES | CA | 11/05/2017 | Unknown |
| N/A | BOYDTON | VA | 11/09/2017 | Unknown |
| N/A | SAN JOSE | CA | 11/10/2017 | Unknown |

| Company | City | State | Date Viewed | Role |
|---------|------|-------|-------------|------|
| N/A | BAKERSFIELD | CA | 11/12/2017 | Unknown |
| N/A | MANTECA | CA | 11/13/2017 | Unknown |
| N/A | LAFAYETTE | CA | 11/13/2017 | Unknown |
| N/A | REDMOND | WA | 11/14/2017 | Unknown |
| N/A | SAN RAMON | CA | 11/15/2017 | Unknown |
| N/A | SACRAMENTO | CA | 11/15/2017 | Unknown |
| N/A | MERCED | CA | 11/15/2017 | Unknown |
| N/A | TRACY | CA | 11/16/2017 | Unknown |
| N/A | MODESTO | CA | 11/16/2017 | Unknown |
| N/A | DENVER | CO | 11/16/2017 | Unknown |
| N/A | | | 11/17/2017 | Unknown |
| N/A | SAN RAMON | CA | 11/19/2017 | Unknown |
| N/A | FRESNO | CA | 11/19/2017 | Unknown |
| N/A | REEDLEY | CA | 11/20/2017 | Unknown |
| N/A | BOYDTON | VA | 11/20/2017 | Unknown |
| N/A | REDMOND | WA | 11/21/2017 | Unknown |
| N/A | MERCED | CA | 11/21/2017 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 11/23/2017 | Unknown |
| N/A | TURLOCK | CA | 11/25/2017 | Unknown |
| N/A | BOYDTON | VA | 11/25/2017 | Unknown |
| N/A | SANTA CLARA | CA | 11/26/2017 | Unknown |
| N/A | SAN RAMON | CA | 11/26/2017 | Unknown |
| N/A | SAN MATEO | CA | 11/26/2017 | Unknown |
| N/A | SAN DIEGO | CA | 11/26/2017 | Unknown |
| N/A | LIVERMORE | CA | 11/27/2017 | Unknown |
| N/A | REDMOND | WA | 11/28/2017 | Unknown |
| N/A | TURLOCK | CA | 11/28/2017 | Unknown |
| N/A | REDMOND | WA | 11/30/2017 | Unknown |
| N/A | REDMOND | WA | 12/01/2017 | Unknown |
| N/A | BEDMINSTER | NJ | 12/01/2017 | Unknown |
| N/A | SANTA CLARA | CA | 12/02/2017 | Unknown |
| N/A | SAN FRANCISCO | CA | 12/05/2017 | Broker/Agent |
| N/A | SACRAMENTO | CA | 12/05/2017 | Unknown |
| N/A | PATTERSON | CA | 12/05/2017 | Unknown |
| N/A | TRACY | CA | 12/06/2017 | Unknown |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | STOCKTON | CA | 12/06/2017 | Unknown |
| N/A | SACRAMENTO | CA | 12/07/2017 | Unknown |
| N/A | MODESTO | CA | 12/07/2017 | Unknown |
| Show and Sell | FREMONT | CA | 12/09/2017 | Broker/Agent |
| N/A | TRACY | CA | 12/09/2017 | Unknown |
| N/A | NEW PHILADELPHIA | OH | 12/09/2017 | Unknown |
| N/A | MADERA | CA | 12/10/2017 | Unknown |
| N/A | STOCKTON | CA | 12/11/2017 | Unknown |
| N/A | SACRAMENTO | CA | 12/11/2017 | Unknown |
| N/A | PORTLAND | OR | 12/11/2017 | Unknown |
| N/A | REDMOND | WA | 12/12/2017 | Unknown |
| N/A | TRACY | CA | 12/14/2017 | Unknown |
| N/A | ADELAIDE | CA | 12/14/2017 | Appraiser |
| N/A | SANTA ROSA | CA | 12/15/2017 | Unknown |
| N/A | OAKLAND | CA | 12/15/2017 | Unknown |
| N/A | BOYDTON | VA | 12/16/2017 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 12/17/2017 | Unknown |
| N/A | SANTA CLARITA | CA | 12/17/2017 | Unknown |
| N/A | ADELAIDE | CA | 12/17/2017 | Appraiser |
| N/A | SEBRING | FL | 12/18/2017 | Unknown |
| N/A | STANFORD | CA | 12/19/2017 | Unknown |
| N/A | SANTA CLARITA | CA | 12/19/2017 | Unknown |
| N/A | MOUNT LAUREL | NJ | 12/19/2017 | Unknown |
| N/A | MANTECA | CA | 12/19/2017 | Unknown |
| N/A | BEND | OR | 12/19/2017 | Unknown |
| N/A | TURLOCK | CA | 12/20/2017 | Unknown |
| N/A | SAN JOSE | CA | 12/20/2017 | Unknown |
| N/A | SACRAMENTO | CA | 12/20/2017 | Unknown |
| N/A | PORTLAND | OR | 12/20/2017 | Unknown |
| N/A | MODESTO | CA | 12/20/2017 | Unknown |
| N/A | REDMOND | WA | 12/21/2017 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 12/21/2017 | Unknown |
| Omer's Exxon | CATLETTSBURG | KY | 12/21/2017 | Owner/Investor |
| N/A | MALIBU | CA | 12/22/2017 | Unknown |
| N/A | REDMOND | WA | 12/23/2017 | Unknown |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | SACRAMENTO | CA | 12/23/2017 | Unknown |
| N/A | SANTA CRUZ | CA | 12/24/2017 | Unknown |
| Parminder singh | SACRAMENTO | CA | 12/25/2017 | Developer |
| N/A | SAN FRANCISCO | CA | 12/25/2017 | Unknown |
| N/A | SACRAMENTO | CA | 12/25/2017 | Unknown |
| N/A | PORTLAND | OR | 12/26/2017 | Unknown |
| N/A | DUBLIN | OH | 12/26/2017 | Unknown |
| N/A | TRACY | CA | 12/27/2017 | Unknown |
| N/A | LOS ANGELES | CA | 12/27/2017 | Unknown |
| N/A | BEDMINSTER | NJ | 12/27/2017 | Unknown |
| N/A | WEST JORDAN | UT | 12/28/2017 | Unknown |
| N/A | SACRAMENTO | CA | 12/28/2017 | Unknown |
| N/A | PATTERSON | CA | 12/28/2017 | Unknown |
| N/A | NEWARK | CA | 12/28/2017 | Unknown |
| N/A | HANFORD | CA | 12/28/2017 | Other |
| N/A | QUINCY | WA | 12/29/2017 | Unknown |
| DPI GROUP, LLC | Pat DeSantis | FRESNO | CA | 12/30/2017 | Owner/Investor |
| N/A | SAN FRANCISCO | CA | 01/01/2018 | Unknown |
| N/A | PERRIS | CA | 01/01/2018 | Unknown |
| N/A | HAYWARD | CA | 01/01/2018 | Unknown |
| N/A | DALLAS | TX | 01/01/2018 | Unknown |
| N/A | RIVERBANK | CA | 01/02/2018 | Unknown |
| N/A | FRESNO | CA | 01/02/2018 | Unknown |
| N/A | SAN FRANCISCO | CA | 01/03/2018 | Unknown |
| N/A | DANVILLE | CA | 01/05/2018 | Owner/Investor |
| N/A | BEDMINSTER | NJ | 01/06/2018 | Unknown |
| N/A | ALAMEDA | CA | 01/07/2018 | Unknown |
| N/A | SACRAMENTO | CA | 01/08/2018 | Unknown |
| N/A | REEDLEY | CA | 01/08/2018 | Broker/Agent |
| N/A | MODESTO | CA | 01/08/2018 | Unknown |
| N/A | STOCKTON | CA | 01/09/2018 | Unknown |
| N/A | SALT LAKE CITY | UT | 01/09/2018 | Unknown |
| N/A | LIVERMORE | CA | 01/09/2018 | Owner/Investor |
| N/A | CERES | CA | 01/09/2018 | Owner/Investor |
| N/A | BAKERSFIELD | CA | 01/09/2018 | Unknown |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | MERCED | CA | 01/10/2018 | Unknown |
| N/A | CERES | CA | 01/10/2018 | Other |
| N/A | PATTERSON | CA | 01/11/2018 | Unknown |
| N/A | CAMERON MILLS | NY | 01/11/2018 | Unknown |
| N/A | | IF | 01/12/2018 | Unknown |
| N/A | REDMOND | WA | 01/13/2018 | Unknown |
| N/A | SACRAMENTO | CA | 01/13/2018 | Unknown |
| N/A | FRESNO | CA | 01/13/2018 | Unknown |
| N/A | TROY | MI | 01/14/2018 | Unknown |
| N/A | SANTA CLARA | CA | 01/14/2018 | Unknown |
| N/A | RANCHO MIRAGE | CA | 01/15/2018 | Unknown |
| N/A | MILPITAS | CA | 01/15/2018 | Unknown |
| N/A | MALIBU | CA | 01/16/2018 | Unknown |
| N/A | BOYDTON | VA | 01/17/2018 | Unknown |
| N/A | TRACY | CA | 01/17/2018 | Unknown |
| N/A | MOUNT LAUREL | NJ | 01/17/2018 | Unknown |
| N/A | | | 01/17/2018 | Unknown |
| N/A | ROCKLIN | CA | 01/18/2018 | Unknown |
| N/A | STOCKTON | CA | 01/19/2018 | Unknown |
| N/A | SAN PABLO | CA | 01/21/2018 | Unknown |
| N/A | SAN FRANCISCO | CA | 01/21/2018 | Unknown |
| N/A | KISSIMMEE | FL | 01/21/2018 | Unknown |
| N/A | REDMOND | WA | 01/22/2018 | Unknown |
| Coldwell Banker Residential Brokerage | APTOS | CA | 01/22/2018 | Broker/Agent |
| N/A | WALNUT CREEK | CA | 01/22/2018 | Unknown |
| N/A | LAKE PROVIDENCE | LA | 01/22/2018 | Unknown |
| N/A | UNION CITY | CA | 01/23/2018 | Owner/Investor |
| N/A | TURLOCK | CA | 01/24/2018 | Unknown |
| N/A | SAN JOSE | CA | 01/25/2018 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 01/25/2018 | Unknown |
| N/A | LIVERMORE | CA | 01/25/2018 | Unknown |
| N/A | LAFAYETTE | CA | 01/25/2018 | Unknown |
| N/A | FRESNO | CA | 01/25/2018 | Unknown |
| N/A | REDMOND | WA | 01/26/2018 | Unknown |
| N/A | MANTECA | CA | 01/26/2018 | Unknown |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | MOUNTAIN VIEW | CA | 01/27/2018 | Unknown |
| N/A | MALIBU | CA | 01/27/2018 | Unknown |
| N/A | LIVERMORE | CA | 01/27/2018 | Unknown |
| N/A | CERES | CA | 01/27/2018 | Unknown |
| Roessler Investment Group | SAN FRANCISCO | CA | 01/29/2018 | Broker/Agent |
| N/A | CONCORD | CA | 01/29/2018 | Unknown |
| N/A | REDMOND | WA | 01/30/2018 | Unknown |
| N/A | SAN LUIS OBISPO | CA | 01/30/2018 | Unknown |
| N/A | PORTLAND | OR | 01/30/2018 | Unknown |
| N/A | MODESTO | CA | 01/30/2018 | Unknown |
| N/A | HAYWARD | CA | 01/30/2018 | Unknown |
| N/A | BEDMINSTER | NJ | 01/30/2018 | Unknown |
| N/A | | VA | 01/30/2018 | Unknown |
| N/A | PORTLAND | OR | 01/31/2018 | Unknown |
| Greystone Realty | FOWLER | CA | 02/02/2018 | Lender/Mortgage Broker |
| N/A | SACRAMENTO | CA | 02/02/2018 | Unknown |
| N/A | PORTLAND | OR | 02/02/2018 | Unknown |
| N/A | ALVIN | TX | 02/03/2018 | Unknown |
| N/A | PORTLAND | OR | 02/05/2018 | Unknown |
| N/A | NEWARK | CA | 02/05/2018 | Unknown |
| Forest Land Company, Inc | NEWPORT BEACH | CA | 02/06/2018 | Broker/Agent |
| N/A | SAN JOSE | CA | 02/06/2018 | Unknown |
| N/A | PORTLAND | OR | 02/06/2018 | Unknown |
| N/A | FREMONT | CA | 02/06/2018 | Unknown |
| N/A | TURLOCK | CA | 02/07/2018 | Unknown |
| N/A | PRINEVILLE | OR | 02/07/2018 | Unknown |
| N/A | PORTLAND | OR | 02/07/2018 | Unknown |
| N/A | LOS ANGELES | CA | 02/07/2018 | Unknown |
| N/A | GREENVILLE | SC | 02/07/2018 | Unknown |
| N/A | CITRUS HEIGHTS | CA | 02/07/2018 | Unknown |
| N/A | BEDMINSTER | NJ | 02/07/2018 | Unknown |
| N/A | STOCKTON | CA | 02/08/2018 | Unknown |
| N/A | SAN RAMON | CA | 02/08/2018 | Unknown |
| N/A | SAN JOSE | CA | 02/08/2018 | Unknown |
| N/A | MODESTO | CA | 02/08/2018 | Unknown |

| Company | City | State | Date Viewed | Role |
|---------|------|-------|-------------|------|
| N/A | MARINA | CA | 02/08/2018 | Unknown |
| N/A | CITRUS HEIGHTS | CA | 02/08/2018 | Unknown |
| N/A | PORTLAND | OR | 02/09/2018 | Unknown |
| N/A | REDMOND | WA | 02/10/2018 | Unknown |
| N/A | SAN JOSE | CA | 02/10/2018 | Unknown |
| N/A | Mount Aukum | CA | 02/10/2018 | Unknown |
| N/A | FRESNO | CA | 02/10/2018 | Unknown |
| N/A | CUPERTINO | CA | 02/10/2018 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 02/11/2018 | Unknown |
| N/A | DALLAS | TX | 02/11/2018 | Unknown |
| N/A | PORTLAND | OR | 02/12/2018 | Unknown |
| N/A | BAKERSFIELD | CA | 02/12/2018 | Broker/Agent |
| N/A | SANTA ROSA | CA | 02/13/2018 | Unknown |
| N/A | LAFAYETTE | CA | 02/13/2018 | Unknown |
| N/A | FREMONT | CA | 02/13/2018 | Unknown |
| N/A | STOCKTON | CA | 02/14/2018 | Unknown |
| N/A | PORTLAND | OR | 02/14/2018 | Unknown |
| N/A | ELK GROVE | CA | 02/14/2018 | Unknown |
| N/A | CHICO | CA | 02/14/2018 | Unknown |
| N/A | SAN JOSE | CA | 02/15/2018 | Unknown |
| N/A | HANFORD | CA | 02/15/2018 | Other |
| N/A | FREMONT | CA | 02/15/2018 | Unknown |
| N/A | PORTLAND | OR | 02/16/2018 | Unknown |
| N/A | BOYDTON | VA | 02/18/2018 | Unknown |
| N/A | STOCKTON | CA | 02/18/2018 | Unknown |
| N/A | LIVERMORE | CA | 02/18/2018 | Unknown |
| N/A | TURLOCK | CA | 02/19/2018 | Unknown |
| N/A | TRACY | CA | 02/19/2018 | Unknown |
| N/A | SACRAMENTO | CA | 02/19/2018 | Broker/Agent |
| N/A | PORTLAND | OR | 02/19/2018 | Unknown |
| N/A | BEDMINSTER | NJ | 02/19/2018 | Unknown |
| N/A | BERKELEY | CA | 02/20/2018 | Broker/Agent |
| N/A | PORTLAND | OR | 02/21/2018 | Unknown |
| N/A | BEDMINSTER | NJ | 02/21/2018 | Unknown |
| N/A | BALTIMORE | MD | 02/21/2018 | Unknown |

| Company | City | State | Date Viewed | Role |
|---|---|---|---|---|
| N/A | HONOLULU | HI | 02/22/2018 | Unknown |
| N/A | TRACY | CA | 02/23/2018 | Unknown |
| N/A | STOCKTON | CA | 02/23/2018 | Unknown |
| N/A | PORTLAND | OR | 02/23/2018 | Unknown |
| N/A | FREMONT | CA | 02/23/2018 | Unknown |
| N/A | CHICO | CA | 02/23/2018 | Unknown |
| N/A | FRESNO | CA | 02/24/2018 | Unknown |
| N/A | TURLOCK | CA | 02/25/2018 | Unknown |
| N/A | STOCKTON | CA | 02/25/2018 | Unknown |
| Hancock Commercial | SAN FRANCISCO | CA | 02/26/2018 | Broker/Agent |
| N/A | TUSTIN | CA | 02/26/2018 | Unknown |
| N/A | TURLOCK | CA | 02/26/2018 | Unknown |
| N/A | SAN JOSE | CA | 02/26/2018 | Owner/Investor |
| N/A | PORTLAND | OR | 02/26/2018 | Unknown |
| N/A | SACRAMENTO | CA | 02/27/2018 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 02/27/2018 | Unknown |
| N/A | PORTLAND | OR | 02/28/2018 | Unknown |
| N/A | MOUNTAIN VIEW | CA | 02/28/2018 | Unknown |
| N/A | BEDMINSTER | NJ | 03/01/2018 | Unknown |
| N/A | RUTLAND | VT | 03/02/2018 | Unknown |
| N/A | PORTLAND | OR | 03/02/2018 | Unknown |
| N/A | MILLBRAE | CA | 03/02/2018 | Unknown |
| N/A | SAN PABLO | CA | 03/03/2018 | Unknown |
| N/A | OAKDALE | CA | 03/03/2018 | Unknown |
| N/A | MANTECA | CA | 03/03/2018 | Unknown |
| N/A | BAKERSFIELD | CA | 03/04/2018 | Unknown |
| N/A | SAN MATEO | CA | 03/05/2018 | Unknown |
| N/A | PORTLAND | OR | 03/05/2018 | Unknown |
| N/A | MODESTO | CA | 03/06/2018 | Unknown |
| N/A | PORTLAND | OR | 03/07/2018 | Unknown |
| N/A | LOS ANGELES | CA | 03/07/2018 | Unknown |
| N/A | REDMOND | WA | 03/10/2018 | Unknown |
| N/A | NORTH CHICAGO | IL | 03/19/2018 | Unknown |
| N/A | SACRAMENTO | CA | 03/23/2018 | Unknown |
| N/A | MODESTO | CA | 03/24/2018 | Unknown |

02/26/18    LoopNet - Email Leads

  

‹ RETURN TO MARKETING

## Leads for My Listing

**Listing** | Banner Ads

| From | Subject | Date |
|------|---------|------|
| Rance Boysen | Lead for 180.81 acs. Home Ranch | Sep 09, 2017 |
| roger shirke | Lead for 180.81 acs. Home Ranch | Jul 01, 2016 |

Page: **1**

**Contact Us** | About Us | Products | Advertise | Blog | Terms Of Use | Privacy Policy | © 2018 LoopNet, Inc.          Partners: BizBuySell | LandAndFarm | BizQuest

**PropertyControlCenter.com - Jon Daggett**

- Listings
- **Properties**
  - Add New Listing
  - My Listings
  - My Showcase
    & Featured Properties
  - Deleted Listings
  - Sold Listings
  - Property Statistics
- **Flyers**
  - Add New Flyer
  - Flyer List
  - Bulk Flyer Builder
  - Email to Clients
- **Auctions**
  - Add New Auction
  - Current Auctions
  - Advertise Auctions
- Search
  - All Properties
  - **Saved Searches**
  - LandsofAmerica.com
  - LandAndFarm.com
  - **Comparable Sales**
    - Search All Comps
    - New Sales Comp
    - My Sales Comps
    - About/Getting Started
- Leads
  - View All Leads
  - Saved Searches
- **Contacts**
  - Create a new Contact
  - View All Contacts
  - Contact Groups
  - Import Contacts
- Advertising
  - Showcase & Featured Properties
  - Broker Banner Ads
- Platinum Sellers
  - Search
  - Your Property Inquiries
  - PropertyLink
  - Edit Member Page
- **Comparable Sales**
  - Search All Comps
  - New Sales Comp
  - My Sales Comps
  - About/Getting Started
- **Reports**
  - Properties Added
  - Properties in Search Results
  - Properties Marked as Sold
  - Average Price Per Acre
  - About Reports
- Tools
  - PropertyLink
  - Property Notifier
  - Link to Us
  - **Saved Properties**
  - LandsofAmerica.com
  - LandandFarm.com
- Account
  - Edit Platinum Seller Website
  - Account Information
  - Land Magazines Address
  - Upload Portrait and Logos
- Billing
  - Renew Account
  - Manage Billing
  - Cancel Membership

---

**Listing Information | Return to Listings**

**Required Information**

| Details |
| Photos |
| Amenities |

### ID: 3950217 - 180.81 acres in Stanislaus County, California

www.landsofamerica.com/listing/3950217

*Print Report | Email Report*

44



Listing Tools Reports Property Control Center

02/26/18

### Property Details (For Sale)

**Acres:** 181
**Price:** $4,283,250
**Type:** Farms
**County:** Stanislaus
**City:** Westley
**State:** California



### Lifetime Property Statistics

**Days Advertised:** 641
**Displayed in Searches:** 52,692
**Details Viewed:** 836
**Inquired by Email:** 1
**Shared with Someone:** 0
**Flyers Printed:** 0
**Visited Website:** 7
**Requested Phone:** 5
**Total Actions & Leads:** 13

**From Jun 23, 2016 to Mar 26, 2018 (21 months):**
**Displayed 52,275 times in search results; clicked and viewed 833 times**

View : last 1 | 3 | 6 | 12 | months

June ▼   2016 ▼   to   March ▼   2018 ▼      Go

**Optional Features**

Showcase & Featured Property

Files/Video/Tour

Flyer

**Property Tools**

Leads

Statistics



LA04WEBXPRD001 - 50.59.29.242

## Cheryl Aanonson

| | |
|---|---|
| **From:** | Cheryl Aanonson |
| **Sent:** | Tuesday, June 14, 2016 3:03 PM |
| **To:** | Cheryl Aanonson |
| **Subject:** | (8) New Ag Listings: Stanislaus County |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |
| | |
| **Categories:** | Green Category |

Below please find links to view the marketing brochures for (8) new ag properties in Stanislaus County that we thought may be of interest to you.

*#2 Howard Ranch*                    **Apricots**                    **83.93± acres**
http://www.pearsonrealty.com/brochures/2_HowardRanch_83.93.pdf

*#4 Cheng Ranch*                    **Peaches**                    **35.40± acres**
http://www.pearsonrealty.com/brochures/4_ChengRanch_35.40acs.pdf

*#5 Newman Ranch*                    **Peaches/Apricots**                    **314.78± acres**
http://www.pearsonrealty.com/brochures/5_NewmanRanch_314.78acs.pdf

*#8 Home Ranch*                    **Peaches/Apricots**                    **180.81± acres**
http://www.pearsonrealty.com/brochures/8_HomeRanch_108.81acs.pdf

*#10 Needham Ranch*                    **Peaches/Apricots**                    **265.4± acres**
http://www.pearsonrealty.com/brochures/10_NeedhamRanch_265.40acs.pdf

*#12 Kellner Ranch*                    **Almonds/Apricots**                    **176.3± acres**
http://www.pearsonrealty.com/brochures/12_KellnerRanch_176.30acs.pdf

*#23 Lismer Ranch*                    **Grazing/Peaches/Cherries**                    **400.0± acres**
http://www.pearsonrealty.com/brochures/23_LismerRanch_400acs.pdf

*Arambel Grazing Portfolio*                                        **10,789.85± acres**
http://www.pearsonrealty.com/brochures/ArambelGrazing_10789.85acs.pdf

**For further information please feel free to contact:**
Jon Daggett at 559.287.3020 or jdaggett@pearsonrealty.com

Best Regards,
**Cheryl Aanonson**
*Assistant to Jon Daggett*
**Pearson Realty**
7480 North Palm Avenue, Suite 101 | Fresno, CA 93711
Direct: 559.447.6239 | Fax: 559.432.2938
caanonson@pearsonrealty.com

*CA BRE# 01415147*

**For Additional Listings, please visit our website at www.pearsonrealty.com**



2

**Cheryl Aanonson**

**Subject:**               Stanislaus Co Armabel Properties



Pearson Realty
7480 North Palm, Ste. 101
Fresno, CA 93711

Presented by
Jon Daggett

### MY LISTINGS

**Arambel Properties**
Stanislaus County

**Available Listings**

**1**   **10,789.85 acs. Arambel Grazing Lands**
**10,789.85 acs. Arambel Grazing Lands**

**W. side of I-5, north of Del Puerto Canyon Rd., Patterson, CA 95363**

$23,185,710
Agricultural     Pasture/Ranch

**2**   **256.40 acs. Needham Ranch**
**256.40 acs. Needham Ranch**

**Both sides of I-5, west side of Needham Rd., Patterson, CA 95363**

$5,573,400
Agricultural     Agricultural

**3**   **176.30 acs. Kellner Ranch**
**176.30 acs. Kellner Ranch**

**Grayson Rd. to River Rd., NW on River Rd., property just E. of River Rd., Grayson, CA 95363**

$3,852,300
Agricultural     Agricultural



**4**   83.93 acs. Howard Ranch
83.93 acs. Howard Ranch

S. of Howard Rd., N. of Needham Rd. near Westley, CA, Westley, CA 95387

$2,014,320
Agricultural      Agricultural

**5**   35.40 acs. Cheng Ranch
35.40 acs. Cheng Ranch

NEC of Sycamore Ave. & Orange Ave., Patterson, CA, Patterson, CA 95363

$1,490,265
Agricultural      Agricultural

**6**   400 acs. Lismer Ranch
400 acs. Lismer Ranch

N. of Del Puerto Canyon Rd., W. of I-5, Patterson, CA 95363

$3,435,000
Agricultural      Agricultural

**7**   180.81 acs. Home Ranch
180.81 acs. Home Ranch

2955 Needham, Westley, CA 95387

$4,283,250
Agricultural      Agricultural

**8**   314.78 acs. Newman Ranch
314.78 acs. Newman Ranch

NEC of Orestimba Rd. & Eastin Rd, Newman, CA 95360

$7,441,875
Agricultural      Agricultural

## Map of Listings

| | Property Address | Date Created | List Price/Rental Rate | Property Type | Subtype |
|---|---|---|---|---|---|
| 1 | W. side of I-5, north of Del Puerto Canyon Rd., Patterson, CA | 6/21/2016 | $23,185,710 | Agricultural | Pasture/Ranch |
| 2 | Both sides of I-5, west side of Needham Rd., Patterson, CA | 6/21/2016 | $5,573,400 | Agricultural | Agricultural |

| | | | | | |
|---|---|---|---|---|---|
| 3 | Grayson Rd. to River Rd., NW on River Rd., property just E. of River Rd., Grayson, CA | 6/22/2016 | $3,852,300 | Agricultural | Agricultural |
| 4 | S. of Howard Rd., N. of Needham Rd. near Westley, CA, Westley, CA | 6/22/2016 | $2,014,320 | Agricultural | Agricultural |
| 5 | NEC of Sycamore Ave. & Orange Ave., Patterson, CA, Patterson, CA | 6/22/2016 | $1,490,265 | Agricultural | Agricultural |
| 6 | N. of Del Puerto Canyon Rd., W. of I-5, Patterson, CA | 6/22/2016 | $3,435,000 | Agricultural | Agricultural |
| 7 | 2955 Needham, Westley, CA | 6/22/2016 | $4,283,250 | Agricultural | Agricultural |
| 8 | NEC of Orestimba Rd. & Eastin Rd, Newman, CA | 6/22/2016 | $7,441,875 | Agricultural | Agricultural |



Jon Daggett
jdaggett@pearsonrealty.com
(559) 447-6291
License: 01470963

This information comes from users and sources believed to be reliable, but is not guaranteed.

This email was sent to caanonson@pearsonrealty.com by:
Jon Daggett, Pearson Realty, 7480 North Palm, Ste. 101, Fresno, CA 93711
Click here to avoid receiving future emails from us.

3

# EXHIBIT C

# Chicago Title Company

2540 West Shaw Lane, #112, , Fresno, CA 93711
Phone: (559) 492-4551 ● Fax:

Issuing Policies of Chicago Title Insurance Company

| | |
|---|---|
| Order No.: 45000994-450-SM-MW1 | Title Officer: Marc Wisneski |
| TO: | Escrow Officer: Sue Meyer |
| Pearson Realty | 7330 N. Palm Avenue, Suite 101 |
| 7480 N. Palm Avenue, Suite 101 | Fresno, CA 93711 |
| Fresno, CA 93711 | (559) 451-3700 |
| | (559) 431-8936 |

ATTN: .**Jon Daggett & Bill Hopkins**
YOUR REFERENCE:

**PROPERTY ADDRESS:     HOME RANCH in Stanislaus County, , CA**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein, **Chicago Title Company** hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a Florida Corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By: *Mark W. Barsetti*
Authorized Signature

By *[signature]*
Randy Quirk, President
Attest *[signature]*
Michael Gravelle, Secretary

CLTA Preliminary Report Form (Modified 11/17/06)
IPrelm (DSI Rev. 9/13/16)     Page 1     Printed: 7/15/2013 1:22 PM by <<User Initials>>
Order No.: 45000994-450-SM-MW1

52

# Chicago Title Company

2540 West Shaw Lane, #112, , Fresno, CA 93711
Phone: (559) 492-4551 ● Fax:

## PRELIMINARY REPORT

---

**EFFECTIVE DATE:**        **February 26, 2018 at 7:30 a.m.**

**ORDER NO.: 45000994-450-SM-MW1**

The form of policy or policies of title insurance contemplated by this report is:

**CLTA Standard Coverage Policy (4-8-14)**

1. THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

   **Fee Estate**

2. TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

   **Jeffrey Arambel, an unmarried man, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

   | | |
   |---|---|
   | **Name of Debtor:** | **Jeffery Edward Arambel** |
   | **Date of Filing:** | **January 17, 2018** |
   | **U.S. District Court:** | **Eastern District** |
   | **Case No:** | **18-90029** |

3. THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

   **See Exhibit A attached hereto and made a part hereof.**

CLTA Preliminary Report Form (Modified 11/17/06)        Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)        Page 2        Order No.: 45000994-450-SM-MW1

53

Your Reference:                                                                 Chicago Title Company

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA OF STANISLAUS, IN THE COUNTY OF STANISLAUS, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

**Parcel A:**

Parcel 1 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Except therefrom Parcel One as shown on that certain Parcel Map filed for record December 15, 1992 in Book 45 of Parcel Maps, Page 62, Stanislaus County Records.

Together with a non-exclusive easement for ingress and egress over and across the East 15 feet of Parcel 2 as shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-028

**Parcel B:**

Parcel 2 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1 as shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-027

**Parcel C:**

Parcel 3 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1; over and across the East 15 feet of Parcel 2; and over and across the 30 foot ingress and egress easement on Parcel 4, as said parcels are shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-025

**Parcel D:**

Parcel 4 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1; and over and across the East 15 feet of Parcel 2, as said parcels are shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-026

CLTA Preliminary Report Form (Modified 11/17/06)                      Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                           Page 3                        Order No.: 45000994-450-SM-MW1

54

Your Reference:                                                                   Chicago Title Company

**EXHIBIT A**
**(Continued)**

CLTA Preliminary Report Form (Modified 11/17/06)
IPrelm (DSI Rev. 9/13/16)           Page 4           Printed: 7/15/2013 1:22 PM by <<User Initials>>
Order No.: 45000994-450-SM-MW1

55

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.      Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2018-2019.

2.      Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

| | |
|---|---|
| Code Area: | 086-005 |
| Tax Identification No.: | 021-013-025 |
| Fiscal Year: | 2017-2018 |
| 1st Installment: | $1,395.51, Delinquent + Penalty $139.55 |
| 2nd Installment: | $1,395.51, Open |
| Exemption: | $0.00 |
| Land: | $166,357.00 |
| Improvements: | $17,604.00 |
| Fixtures: | $871.00 |

3.      Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017.

| | |
|---|---|
| APN No.: | 021-013-025 |
| Default No. | DEF170000273 |
| Default Date: | June 30, 2017 |

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

| | |
|---|---|
| Amount: | $3,333.04, by March 31, 2018 |
| Amount: | $3,373.22, by April 30, 2018 |

4.      Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

| | |
|---|---|
| Code Area: | 086-005 |
| Tax Identification No.: | 021-013-026 |
| Fiscal Year: | 2017-2018 |
| 1st Installment: | $1,639.88, Delinquent + Penalty $163.98 |
| 2nd Installment: | $1,639.88, Open |
| Exemption: | $0.00 |
| Land: | $168,572.00 |
| Improvements: | $56,437.00 |
| Fixtures: | $880.00 |

CLTA Preliminary Report Form (Modified 11/17/06)                          Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                    Page 5                         Order No.: 45000994-450-SM-MW1

56

# EXCEPTIONS
## (Continued)

5.     Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017.

      APN No.:                  021-013-026
      Default No.               DEF170000274
      Default Date:             June 30, 2017

      Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

      Amount:                   $3,919.66, by March 31, 2018
      Amount:                   $3,966.97, by April 30, 2018

6.     Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

      Code Area:                086-005
      Tax Identification No.:   021-013-027
      Fiscal Year:              2017-2018
      1st Installment:          $2,931.16, Delinquent + Penalty $293.11
      2nd Installment:          $2,931.16, Open
      Exemption:                $0.00
      Land:                     $137,869.00
      Improvements:             $9,319.00
      Fixtures:                 $351,060.00

7.     Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017.

      APN No.:                  021-013-027
      Default No.               DEF170000275
      Default Date:             June 30, 2017

      Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

      Amount:                   $7,412.96, by March 31, 2018
      Amount:                   $7,502.69, by April 30, 2018

CLTA Preliminary Report Form (Modified 11/17/06)                        Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                     Page 6                    Order No.: 45000994-450-SM-MW1

57

# EXCEPTIONS
## (Continued)

8.    Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

|  |  |
|---|---|
| Code Area: | 086-005 |
| Tax Identification No.: | 021-013-028 |
| Fiscal Year: | 2017-2018 |
| 1st Installment: | $3,339.66, Delinquent + Penalty $333.96 |
| 2nd Installment: | $3,339.66, Open |
| Exemption: | $0.00 |
| Land: | $153,065.00 |
| Improvements: | $26,923.00 |
| Personal Property: | $6,369.00 |
| Fixtures: | $382,167.00 |

9.    Said property has been declared tax defaulted for non-payment of delinquent taxes for the fiscal year 2016-2017.

|  |  |
|---|---|
| APN No.: | 021-013-028 |
| Default No. | DEF170000276 |
| Default Date: | June 30, 2017 |

Amounts to redeem for the above-stated fiscal year (and subsequent years if any) are:

|  |  |
|---|---|
| Amount: | $8,431.77, by March 31, 2018 |
| Amount: | $8,533.88, by April 30, 2018 |

Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

10.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

11.    Taxes and assessments levied by the Del Puerto Water District.

Amounts are unavailable at this time. A report has been ordered and the Company reserves the right to add additional items or make further requirements after review of the requested report.

12.    Any easement for water course, and rights incidental thereto, over that portion of said land lying within the banks of Kern Creek.

13.    Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

|  |  |
|---|---|
| Granted to: | United States of America |
| Purpose: | Flood, seep and overflow |
| Recording Date: | April 02, 1947 |
| Recording No: | Book 881 Page 86, of Official Records |
| Affects: | Parcels, C and D |

Deed of Correction recorded May 12, 1947 in Book 902 Page 223, of Official Records

CLTA Preliminary Report Form (Modified 11/17/06)                          Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                      Page 7                Order No.: 45000994-450-SM-MW1

58

# EXCEPTIONS
## (Continued)

14.      Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | C.P. Arambel, et ux |
| Purpose: | Irrigation or drainage ditch or pipeline |
| Recording Date: | June 30, 1947 |
| Recording No: | Book 902 Page 223, of Official Records |
| Affects: | Parcels C and D |

15.      Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | State of California |
| Purpose: | Drainage |
| Recording Date: | February 16, 1966 |
| Recording No: | 5638 Book 2085 Page 670, of Official Records |
| Affects: | Parcel B |

16.      Covenants and restrictions imposed by a Land Conservation Contract executed pursuant to Section 51200 et seq. California Government Code (Williamson Act) authorizing the establishment of agricultural preserves. The use of the land within the preserve may be restricted by the contract to agricultural, recreational, open-space, and other approved compatible uses.

| | |
|---|---|
| Dated: | February 01, 1971 |
| Executed by: | C.P. Arambel, Harold E. Erambel, Laura J. Arambel and the County of Stanislaus |
| Recording Date: | February 02, 1972 |
| Recording No: | 4312 Book 2450 Page 66, of Official Records |

Said contract was amended by agreement

| | |
|---|---|
| Dated: | December 14, 2010 |
| Recording Date: | December 16, 2010 |
| Recording No: | 2010-0111935, of Official Records |

17.      Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication, on the map of said tract/plat;

| | |
|---|---|
| Purpose: | ingress and egress |
| Affects: | Parcels A, B and D, as shown on said map |

| | |
|---|---|
| Purpose: | Public Utilities |
| Affects: | Parcel A, as shown on said map |

| | |
|---|---|
| Purpose: | Road (per California Aqueduct Drawing No. H-9A-23) |
| Affects: | Southwesterly corner of Parcel B as shown on said map |

CLTA Preliminary Report Form (Modified 11/17/06)       Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)      Page 8      Order No.: 45000994-450-SM-MW1

59

Your Reference:                                                                           Chicago Title Company

# EXCEPTIONS
## (Continued)

18.     Recitals as shown on that certain map/plat

        Recording Date:         February 27, 1991
        Recording No:           Book 44, Page 13, of Parcel Maps
        Which among other things recites Right to Farm.

        Reference is hereby made to said document for full particulars.

19.     Matters contained in that certain document

        Entitled:               Contract Between Del Puerto Water District and Jeff Arambel for Water Service
                                Under the Reliable Water Supply Program (RWSP)
        Dated:                  April 4, 2011
        Executed by:            Jeff Arambel and Del Puerto Water District
        Recording Date:         May 13, 2011
        Recording No:           2011-0041239, of Official Records

        Reference is hereby made to said document for full particulars.

        Affects:                The herein described Land and other land.

20.     A deed of trust to secure an indebtedness in the amount shown below,

        Amount:                 $ 3,000,000.00
        Dated:                  June 24, 2016
        Trustor/Grantor         Jeffery Arambel
        Trustee:                Mid Valley Services, Inc., a California corporation
        Beneficiary:            Mid Valley Services, Inc., a California corporation
        Loan No.:               E1606251554 une 30, 2016
        Recording Date:         June 30, 2016
        Recording No:           2016-0048897-00, Official Records

        Affects:                The herein described Land and other land
        A partial assignment of the beneficial interest under said trust deed

        From:                   Mid Valley Services, Inc., a California corporation
        To:                     Lou Telesmanic and Joanne Telesmanic, husband and wife as joint tenants, an
                                undivided 5.333% interest and Christopher L. Telesmanic, an undivided 1.667%
                                interest and Sam A. Borno and Rana A. Borno, husband and wife as joint
                                tenants, an undivided 16.667% interest and Sudeep Singh FLLLP, an undivided
                                10.000% interest and Kevin & Janice Delaney Holdings, LLC, a California limited
                                liability company, an undivided 6.333% interest and Golden Gulch Dairy, LLC, a
                                California limited liability company, an undivided 33.333% interest and Lehman
                                Family Farms, Inc., a California corporation, an undivided 6.667% interest and
                                Jesse J. Spain and Bonnie D. Spain, husband and wife as joint tenants, an
                                undivided 16.667% interest
        Recording Date:         July 13, 2016
        Recording No:           2016-0052334, of Official Records

CLTA Preliminary Report Form (Modified 11/17/06)                                      Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                      Page 9                                   Order No.: 45000994-450-SM-MW1

60

# EXCEPTIONS
## (Continued)

A partial assignment of the beneficial interest under said trust deed

| | |
|---|---|
| From: | Mid Valley Services, Inc., a California Corporation |
| To: | Pensco Trust Company Custodian FBO Sudeep Singh IRA |
| Recording Date: | November 7, 2016 |
| Recording No: | 2016-0087984, of Official Records |
| As to: | An undivided 3.333% |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Mid Valley Services, Inc., a California corporation |
| Recording Date: | July 11, 2017 |
| Recording No: | 2017-00050178-00, Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Mid Valley Services, Inc., a California corporation |
| Date, Time and Place of Sale: | November 15, 2017, at 12:00 P.M. at the I street Entrance to the county courthouse Building at 1100 "I" Street Modesto California 95254 |
| Recording Date: | October 12, 2017 |
| Recording No: | 2017-0075380-00, of Official Records |

21.   A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $ 800,000.00 |
| Dated: | June 30, 2016 |
| Trustor/Grantor | Jeffery Arambel |
| Trustee: | Mid Valley Services, Inc., a California corporation |
| Beneficiary: | Mid Valley Services, Inc., a California corporation |
| Loan No.: | E160625163 |
| Recording Date: | June 30, 2016 |
| Recording No: | 2016-0048899, Official Records |

| | |
|---|---|
| Affects: | The herein described Land and other land |

Said deed of trust recites that it is subordinate to the trust deed recorded concurrently therewith.

An assignment of the beneficial interest under said deed of trust which names:

| | |
|---|---|
| Assignee: | Mid Valley Services Inc. Retirement Trust Account, an undivided 6.875% interest and Russell Spain, an undivided 71.875% interest and Mid Valley Services Inc. 401 (k) plan, an undivided 15.000% interest and Gregory A. Kilgore and Megan K. Kilgore, husband and wife as joint tenants, an undivided 6.250% |
| Loan No.: | E160625163 |
| Recording Date: | July 13, 2016 |
| Recording No: | 2016-0052336-00, Official Records |

# EXCEPTIONS
## (Continued)

A partial assignment of the beneficial interest under said trust deed

| | |
|---|---|
| From: | Russell Spain |
| To: | Kevin Kummerfeld and Sally Kummerfeld, husband and wife as joint tenants, as to an undivided 28.125% beneficial Interest |
| Recording Date: | July 28, 2016 |
| Recording No: | 2016-0056641, Official Records |

A notice of default under the terms of said trust deed

| | |
|---|---|
| Executed by: | Mid Valley Services, Inc., a California Corporation |
| Recording Date: | July 11, 2017 |
| Recording No: | 2017-0050180-00-00, Official Records |

A notice of trustee's sale under said deed of trust

| | |
|---|---|
| Executed by: | Mid Valley Services, Inc., a California corporation |
| Date, Time and Place of Sale: | November 13, 2017, at 12:00 P.M at the I street Entrance to the county courthouse Building at 1100 "I" Street Modesto California 95354 |
| Recording Date: | October 12, 2017 |
| Recording No: | 2017-0075616-00, of Official Records |

22.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $5,500,000.00 |
| Dated: | April 17, 2017 |
| Trustor/Grantor | Jeffery E. Arambel, an unmarried |
| Trustee: | Stewart Title Company |
| Beneficiary: | SBV V AG I LLC, a Delaware Limited liability company |
| Loan No.: | None Shown |
| Recording Date: | April 19, 2017 |
| Recording No: | 2017-0028232-00, of Official Records |

Affects:      The herein described Land and other land

23.    A state tax lien for the amount shown and any other amounts due,

| | |
|---|---|
| State Identification No: | G001740029 |
| Filed by: | State of California Employment Development Department |
| Taxpayer: | Jeffrey E Arambel, J Arambel Farms |
| Amount: | $20,251.85 |
| Recording Date: | January 24, 2018 |
| Recording No: | 2018-000483-00, of Official Records |

24.    Any defect or invalidity of the title to said Land arising out of or occasioned by a violation of the Bankruptcy Code.

CLTA Preliminary Report Form (Modified 11/17/06)                                          Printed: 7/15/2013 1:22 PM by <<User Initials>>
IPrelm (DSI Rev. 9/13/16)                    Page 11                    Order No.: 45000994-450-SM-MW1

62

## EXCEPTIONS
## (Continued)

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

CLTA Preliminary Report Form (Modified 11/17/06)
IPrelm (DSI Rev. 9/13/16)          Page 12          Printed: 7/15/2013 1:22 PM by <<User Initials>>
Order No.: 45000994-450-SM-MW1

63


## REQUIREMENTS SECTION

1.      None

_____

**END OF REQUIREMENTS**
_____

# INFORMATIONAL NOTES SECTION

Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

1. If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

2. Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third-party service. If the above requirement cannot be met, please call the Company at the number provided in this report.

3. Your application for title insurance was placed by reference to only a street address or tax identification number. Based on our records, we believe that the legal description in this report covers the parcel(s) of Land that you requested. If the legal description is incorrect, the seller/borrower must notify the Company and/or the settlement company in order to prevent errors and to be certain that the correct parcel(s) of Land will appear on any documents to be recorded in connection with this transaction and on the policy of title insurance.

5. Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

6. Note: The name(s) of the proposed insured(s) furnished with this application for title insurance is/are:

   Name(s) furnished:      Skip Foppiano and/or Assignee

   If these name(s) are incorrect, incomplete or misspelled, please notify the Company.

7. Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

8. Note: The charge for a policy of title insurance, when issued through this application for title insurance, will be based on the Short Term Rate.

---

## END OF INFORMATIONAL NOTES

---

Marc Wisneski/jg

WIRE SAFE™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

| *Federal Bureau of Investigation:* | *Internet Crime Complaint Center:* |
| :---: | :---: |
| *http://www.fbi.gov* | *http://www.ic3.gov* |

## FIDELITY NATIONAL FINANCIAL

### PRIVACY NOTICE

At Fidelity National Financial, Inc., we respect and believe it is important to protect the privacy of consumers and our customers. This Privacy Notice explains how we collect, use, and protect any information that we collect from you, when and to whom we disclose such information, and the choices you have about the use of that information. A summary of the Privacy Notice is below, and we encourage you to review the entirety of the Privacy Notice following this summary. You can opt-out of certain disclosures by following our opt-out procedure set forth at the end of this Privacy Notice.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information about you, like your contact information, address demographic information, social security number (SSN), driver's license, passport, other government ID numbers and/or financial information. We may also receive browsing information from your Internet browser, computer and/or mobile device if you visit or use our websites or applications. | **How Information is Collected.** We may collect personal information from you via applications, forms, and correspondence we receive from you and others related to our transactions with you. When you visit our websites from your computer or mobile device, we automatically collect and store certain information available to us through your Internet browser or computer equipment to optimize your website experience. |
| **Use of Collected Information.** We request and use your personal information to provide products and services to you, to improve our products and services, and to communicate with you about these products and services. We may also share your contact information with our affiliates for marketing purposes. | **When Information Is Disclosed.** We may disclose your information to our affiliates and/or nonaffiliated parties providing services for you or us, to law enforcement agencies or governmental authorities, as required by law, and to parties whose interest in title must be determined. |
| **Choices With Your Information.** Your decision to submit information to us is entirely up to you. You can opt-out of certain disclosure or use of your information or choose to not provide any personal information to us. | **Information From Children.** We do not knowingly collect information from children who are under the age of 13, and our website is not intended to attract children. |
| **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. | **International Users.** By providing us with your information, you consent to its transfer, processing and storage outside of your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **The California Online Privacy Protection Act.** Some FNF companies provide services to mortgage loan servicers and, in some cases, their websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | |
| **Your Consent To This Privacy Notice**. By submitting information to us or by using our website, you are accepting and agreeing to the terms of this Privacy Notice. | **Access and Correction; Contact Us.** If you desire to contact us regarding this notice or your information, please contact us at privacy@fnf.com or as directed at the end of this Privacy Notice. |

# FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

Fidelity National Financial, Inc. and its majority-owned subsidiary companies providing title insurance, real estate- and loan-related services (collectively, "FNF", "our" or "we") respect and are committed to protecting your privacy. We will take reasonable steps to ensure that your Personal Information and Browsing Information will only be used in compliance with this Privacy Notice and applicable laws. This Privacy Notice is only in effect for Personal Information and Browsing Information collected and/or owned by or on behalf of FNF, including Personal Information and Browsing Information collected through any FNF website, online service or application (collectively, the "Website").

**Types of Information Collected**
We may collect two types of information from you: Personal Information and Browsing Information.

Personal Information. FNF may collect the following categories of Personal Information:
- contact information (e.g., name, address, phone number, email address);
- demographic information (e.g., date of birth, gender, marital status);
- social security number (SSN), driver's license, passport, and other government ID numbers;
- financial account information; and
- other personal information needed from you to provide title insurance, real estate- and loan-related services to you.

Browsing Information. FNF may collect the following categories of Browsing Information:
- Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
- browser language and type;
- domain name system requests;
- browsing history, such as time spent at a domain, time and date of your visit and number of clicks;
- http headers, application client and server banners; and
- operating system and fingerprinting data.

**How Information is Collected**
In the course of our business, we may collect *Personal Information* about you from the following sources:
- applications or other forms we receive from you or your authorized representative;
- the correspondence you and others send to us;
- information we receive through the Website;
- information about your transactions with, or services performed by, us, our affiliates or nonaffiliated third parties; and
- information from consumer or other reporting agencies and public records maintained by governmental entities that we obtain directly from those entities, our affiliates or others.

If you visit or use our Website, we may collect *Browsing Information* from you as follows:
- Browser Log Files. Our servers automatically log each visitor to the Website and collect and record certain browsing information about each visitor. The Browsing Information includes generic information and reveals nothing personal about the user.
- Cookies. When you visit our Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit a website again, the cookie allows the website to recognize your computer. Cookies may store user preferences and other information. You can choose whether or not to accept cookies by changing your Internet browser settings, which may impair or limit some functionality of the Website.

**Use of Collected Information**
Information collected by FNF is used for three main purposes:
- To provide products and services to you or any affiliate or third party who is obtaining services on your behalf or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you and to inform you about our, our affiliates' and third parties' products and services, jointly or independently.

**When Information Is Disclosed**
We may provide your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information to various individuals and companies, as permitted by law, without obtaining your prior authorization. Such laws do not allow consumers to restrict these disclosures. Please see the section "Choices With Your Personal Information" to learn how to limit the discretionary disclosure of your Personal Information and Browsing Information.

Disclosures of your Personal Information may be made to the following categories of affiliates and nonaffiliated third parties:
- to third parties to provide you with services you have requested, and to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to our affiliate financial service providers for their use to market their products or services to you;
- to nonaffiliated third party service providers who provide or perform services on our behalf and use the disclosed information only in connection with such services;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to market financial products or services to you;
- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoena or court

- to lenders, lien holders, judgment creditors, or other parties claiming an interest in title whose claim or interest must be determined, settled, paid, or released prior to closing; and
- other third parties for whom you have given us written authorization to disclose your Personal Information.

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:

- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any material, document, image, graphic, logo, design, audio, video or any other information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We maintain reasonable safeguards to keep your Personal Information secure. When we provide Personal Information to our affiliates or third party service providers as discussed in this Privacy Notice, we expect that these parties process such information in compliance with our Privacy Notice or in a manner that is in compliance with applicable privacy laws. The use of your information by a business partner may be subject to that party's own Privacy Notice. Unless permitted by law, we do not disclose information we collect from consumer or credit reporting agencies with our affiliates or others without your consent.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings. We cannot and will not be responsible for any breach of security by a third party or for any actions of any third party that receives any of the information that is disclosed to us.

**Choices With Your Information**

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you. The uses of your Personal Information and/or Browsing Information that, by law, you cannot limit, include:

- for our everyday business purposes – to process your transactions, maintain your account(s), to respond to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders, or report to credit bureaus;
- for our own marketing purposes;
- for joint marketing with financial companies; and
- for our affiliates' everyday business purposes – information about your transactions and experiences.

You may choose to prevent FNF from disclosing or using your Personal Information and/or Browsing Information under the following circumstances ("opt-out"):

- for our affiliates' everyday business purposes – information about your creditworthiness; and
- for our affiliates to market to you.

To the extent permitted above, you may opt-out of disclosure or use of your Personal Information and Browsing Information by notifying us by one of the methods at the end of this Privacy Notice. We do not share your personal information with non-affiliates for their direct marketing purposes.

For California Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by California law. Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not share your Personal Information and Browsing Information with nonaffiliated third parties, except as permitted by Vermont law, such as to process your transactions or to maintain your account. In addition, we will not share information about your creditworthiness with our affiliates except with your authorization. For joint marketing in Vermont, we will only disclose your name, contact information and information about your transactions.

**Information From Children**

The Website is meant for adults and is not intended or designed to attract children under the age of thirteen (13).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian. By using the Website, you affirm that you are over the age of 13 and will abide by the terms of this Privacy Notice.

**Privacy Outside the Website**

The Website may contain links to other websites. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

**International Users**

FNF's headquarters is located within the United States. If you reside outside the United States or are a citizen of the European Union, please note that we may transfer your Personal Information and/or Browsing Information outside of your country of residence or the European Union for any of the purposes described in this Privacy Notice. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection and transfer of such information in accordance with this Privacy Notice.

**The California Online Privacy Protection Act**

For some FNF websites, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those instances, we may collect certain information on behalf of that mortgage loan servicer via the website. The information which we may collect on behalf of the mortgage loan servicer is as follows:

- first and last name;
- property address;
- user name and password;
- loan number;
- social security number - masked upon entry;
- email address;
- three security questions and answers; and
- IP address.

The information you submit through the website is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than (1) those with which the mortgage loan servicer has contracted to interface with the CCN application, or (2) law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled "Choices with Your Information" and "Access and Correction." If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, you should contact your mortgage loan servicer.

**Your Consent To This Privacy Notice**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information by us in compliance with this Privacy Notice. Amendments to the Privacy Notice will be posted on the Website. Each time you provide information to us, or we receive information about you, following any amendment of this Privacy Notice will signify your assent to and acceptance of its revised terms for all previously collected information and information collected from you in the future. We may use comments, information or feedback that you submit to us in any manner that we may choose without notice or compensation to you.

**Accessing and Correcting Information; Contact Us**

If you have questions, would like to access or correct your Personal Information, or want to opt-out of information sharing with our affiliates for their marketing purposes, please send your requests to privacy@fnf.com or by mail or phone to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer
(888) 934-3354

# Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the field rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for each discount. These discounts only apply to transaction involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**           **FNF Underwriter**
FNTC - Chicago Title Company                 CTIC - Chicago Title Insurance Company
FNTCCA –Fidelity National Title Company of California

**Available Discounts**
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (CTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 or 36 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge.

**DISASTER LOANS (CTIC)**
The charge for a lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

**ATTACHMENT ONE**

**CALIFORNIA LAND TITLE ASSOCIATION**
**STANDARD COVERAGE POLICY – 1990**

**EXCLUSIONS FROM COVERAGE**

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

    (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;

    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

    (c) resulting in no loss or damage to the insured claimant;

    (d) attaching or created subsequent to Date of Policy; or

    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.

4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.

5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.

6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

**EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.

    Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.

2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.

3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.

4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.

5. (a) Unpatented mining claims;  (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof;  (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.

6. Any lien or right to a lien for services, labor or material not shown by the public records.

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE**

**EXCLUSIONS**

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:

    a. building;

    b. zoning;

    c. land use;

    d. improvements on the Land;

    e. land division; and

f.   environmental protection.
This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.   The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.   The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.   Risks:
    a.   that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b.   that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
    c.   that result in no loss to You; or
    d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.   Failure to pay value for Your Title.
6.   Lack of a right:
    a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b.   in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.   The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.   Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.   Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
  • For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|                  | Your Deductible Amount |                                                          | Our Maximum Dollar Limit of Liability |
|------------------|--------|----------------------------------------------------------|-------------------------|
| Covered Risk 16: | 1.00%  | % of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00%  | % of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: |        | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: |        | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.   (a)   Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)    the occupancy, use, or enjoyment of the Land;
        (ii)   the character, dimensions, or location of any improvement erected on the Land;
        (iii)  the subdivision of land; or
        (iv)   environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)   Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk  6.
2.   Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.   Defects, liens, encumbrances, adverse claims, or other matters
    (a)   created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)   not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)   resulting in no loss or damage to the Insured Claimant;
    (d)   attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e)   resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.   Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.   Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.

6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is

    (a) a fraudulent conveyance or fraudulent transfer, or

    (b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

## EXCEPTIONS FROM COVERAGE

(Except as provided in Schedule B - Part II,( t(or T)his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

## (PART I

(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

## PART II

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:)

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

    (i) the occupancy, use, or enjoyment of the Land;

    (ii) the character, dimensions, or location of any improvement erected on the Land;

    (iii) the subdivision of land; or

    (iv) environmental protection;

    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3. Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a) a fraudulent conveyance or fraudulent transfer; or

    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following:

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1.  (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2.  Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3.  Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4.  Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5.  (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6.  Any lien or right to a lien for services, labor or material not shown by the Public Records.
7.  (Variable exceptions such as taxes, easements, CC&R's, etc. shown here.)

### ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i)   the occupancy, use, or enjoyment of the Land;
    (ii)  the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv)  environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6.  Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8.  The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a) a fraudulent conveyance or fraudulent transfer, or
    (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.



THIS MAP FOR ASSESSMENT PURPOSES ONLY
Copyright 2001 Stanislaus County. All rights reserved

SECTIONS 5 & 6 T.5 S. R.7 E. M. D. B. & M.



**Standard Scale 1 :1**

**Legend**

- Parcel A : Property In Question, Fee
- Parcel B : Property In Question, Fee
- Parcel C : Property In Question, Fee
- Parcel D : Property In Question, Fee
- Not a Part
- Item No. 15 - Easement for Drainage In 02/16/1966 Inst # 5638 Bk2085 Pg670 of Official Records Affects said portion as described in the document

- Item No. 13 - Easement for Flood, Seep and Overflow In 04/02/1947 Bk881 Pg86 & 05/12/1947 Bk902 Pg223 of Official Records The exact location of said easement cannot be determined and is not plottable
- Item No. 14 - Easement for Irrigation or Drainage Ditch or Pipeline of Official Records The exact location of said easement cannot be determined and is not plottable
- Item No. 17 - Easement for Ingress & Egress In Bk44 Pg13 of Parcel Map Affects said portion as shown on said map
- Item No. 17 - Easement for Public Utilities In Bk44 Pg13 of Parcel Map Affects said portion as shown on said map
- Item No. 17 - Easement for Road In Bk44 Pg13 of Parcel Map Affects said portion as shown on said map

© 2018
**Chicago Title Company**
2540 West Shaw Lane, #112, ,
Fresno, CA 93711

This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

| Title Order No. : 45000994, Preliminary Report dated February 26, 2018 | Drawing Date : 03/21/2018 - FNFI |
| Reference : | Assessor's Parcel No. :021-013-028, 027, 025 & 026 |
| Property : HOME RANCH in Stanislaus County, , CA | Data : |

Plat Showing : A PORTION OF LAND IS SITUATED IN THE UNINCORPORATED AREA OF STANISLAUS, IN THE COUNTY OF STANISLAUS, STATE OF CALIFORNIA

77

Sheet 1 of 1

Archive #

# EXHIBIT D

RECORDING REQUESTED BY:
REED SMITH LLP

WHEN RECORDED MAIL TO:
REED SMITH LLP
THREE LOGAN SQUARE STE 3100
1717 ARCH STREET
PHILADELPHIA, PA 19103

Stanislaus, County Recorder
Lee Lundrigan Co Recorder Office
DOC- 2017-0028232-00
Check Number   1129
Wednesday, APR 19, 2017 14:56:26
Ttl Pd   $158.00     Rcpt # 0003960513
JMB/R2/4-31

## DEED OF TRUST WITH ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING

THIS DOCUMENT SERVES AS A FINANCING STATEMENT FILED AS A FIXTURE FILING UNDER SECTION 9502 OF THE CALIFORNIA UNIFORM COMMERCIAL CODE.

This DEED OF TRUST WITH ASSIGNMENT OF RENTS, SECURITY AGREEMENT AND FIXTURE FILING (this "**Deed of Trust**") is made as of April 17, 2017, by Jeffery E. Arambel, an unmarried man, as trustor and debtor, to Stewart Title Company ("**Trustee**"), as trustee, located at 809 Sylvan, Suite 101, Modesto, California 95350, and in favor of SBN V Ag I LLC, a Delaware limited liability company ("**Beneficiary**"), as beneficiary and secured party. (Jeffery E. Arambel, an unmarried man, is referred to herein as "**Grantor**".)

Capitalized terms used in this Deed of Trust without definition have the meanings ascribed to them by that certain Loan and Security Agreement, dated as of even date herewith (as amended, modified or supplemented from time to time, "**Credit Agreement**"), by JEA2, LLC, a California limited liability company, as "**Borrower**" and Beneficiary as "**Lender**". "**Note**" means that certain Promissory Note (Line of Credit) in the maximum original principal amount of $5,500,000.00 executed by Borrower in favor of Lender, as amended, modified or supplemented from time to time. JEA2, LLC, a California limited liability company, Jeffery E. Arambel, an adult individual, and Filbin Land and Cattle Company, a California corporation are sometimes collectively referred to herein as the "**Loan Parties**" and individually each a "**Loan Party**". "**Loan Documents**" means the Credit Agreement, the Note, the Deeds of Trust, the Pledge Agreement, and all other agreements, instruments and documents, including deeds of trust, mortgages, pledges, powers of attorney, consents, assignments, contracts, notices, security agreements, leases, financing statements and all other writings heretofore, now or from time to time hereafter executed by or on behalf of a Loan Party or any other Person and delivered to Lender or to any parent, affiliate or subsidiary of Lender in connection with the obligations or the transactions contemplated by the Credit Agreement, as each of the same may be amended, modified or supplemented from time to time; provided, however, that "Loan Documents" shall not include any guaranties.

## ARTICLE 1 - GRANT IN TRUST AND SECURED OBLIGATIONS

**1.01   Grant in Trust**. To secure repayment of the indebtedness evidenced by the Note and payment and performance of all other Secured Obligations (defined in Section 1.02), Grantor hereby irrevocably and unconditionally grants, conveys, transfers and assigns to Trustee, in trust for the benefit of Beneficiary, with POWER OF SALE and right of entry and possession, all

estate, right, title and interest which Grantor now has or may later acquire in and to the following property (all or any part of such property, or any interest in all or any part of it, together with the Personalty (as hereinafter defined) being hereinafter collectively referred to as the "**Property**"):

     (a)     the real property and any interest in the real property located in STANISLAUS COUNTY, CALIFORNIA, and described in <u>Exhibit A</u> attached hereto and incorporated herein by this reference (the "**Land**");

     (b)     all buildings, structures, improvements, fixtures, attachments, appliances, equipment, machinery and other articles now or hereafter erected on, affixed or attached to, or located in or on the Land, including all watering and irrigation apparatus, pumps, motors, generators, pipes, center pivot irrigators and sprinklers, windmills, and fences (the "**Improvements**");

     (c)     all easements, rights-of-way and rights appurtenant to the Land or used in connection with the Land or as a means of access thereto ("**Easements**");

     (d)     all equipment, machinery, fixtures and other tangible personal property of every kind and description, whether stored on the Land or elsewhere, including all goods, materials, supplies, tools, books, records, chattels, furniture, machinery and equipment or which is in all cases (i) directly related to the operation of the Property or acquired in connection with any construction or maintenance of the Land or the Improvements or (ii) affixed or installed, or to be affixed or installed, in any manner on the Land or the Improvements;

     (e)     the ground water on, under, pumped from or otherwise available to the Property or any drainage, retention, ditch, canal, reservoir, or other water rights, whether as a result of overlying groundwater rights, contractual rights, or otherwise and whether riparian, appropriative, or otherwise; the right to remove or extract any such ground water including any permits, rights or licenses granted by any Governmental Authority and any rights granted or created by any easement, covenant, agreement or contract with any Person; and any rights to which the Property or Grantor is entitled with respect to surface water, whether such rights are appropriative, riparian, prescriptive or otherwise and whether or not pursuant to historical use, contractual agreement, permit or other governmental authorization; any water right, water allocation for water not yet delivered, distribution right, delivery right, any proscriptive, contractual, easement or other rights necessary or convenient to convey any water to the Property, water storage right, or other water-related entitlement appurtenant to or otherwise applicable to the Property by virtue of the Property being situated within the boundaries of any governmental water district irrigation district or other local agency or within the boundaries of any private water company, mutual water company, or other non-governmental entity and any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Grantor or the Property may receive water (collectively, "**Water Rights**");

     (f)     all other existing and future hereditaments and appurtenances to the Land;

     (g)     all minerals, oil, gas, and other hydrocarbon substances, minerals, mineral interests, royalties, overriding royalties, production payments, net profit interests and other

interests and other interests and estates in, under and on the Land and other oil, gas and mineral interests with which any of the foregoing interests or estates are pooled or unitized (the **"Mineral Rights"**);

      (h)     timber now or hereafter standing or cut;

      (i)     the right, in the name and on behalf of Grantor, upon notice to Grantor, to appear in and defend any action or proceeding brought with respect to the Property and to commence any action or proceeding to protect the interest of Trustee or Beneficiary in the Property;

      (j)     leases, subleases, licenses, occupancy agreements, concessions and other agreements, granting a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Property (collectively, the **"Leases"**);

      (k)     all utility contracts, maintenance agreements, management agreements, service contracts and other agreements directly related to the operation and maintenance of the Property;

      (l)     all bushes, groves, trees, plants, vines and other plantings, upon or under the Land (**"Plantings"**);

      (m)     any shares, or any rights under such shares, of any private water company, mutual water company, or other non-governmental entity pursuant to which Grantor or the Property may receive water (collectively, the **"Water Stock"**) and any other certificated and uncertificated securities, securities entitlements, securities accounts and commodities accounts;

      (n)     working drawings, instructional manuals, and rights in processes directly related to the operation of the Property;

      (o)     all rights to the payment of money, accounts deposited by Grantor with third parties (including an utility deposits), contract rights, general intangibles (including any insurance proceeds and condemnation awards or compensation), instruments, architectural and engineering plans, specifications and drawings, and as-built drawings, which arise from or relate to the Land;

      (p)     all building materials, equipment or work in process, whether stored on the Land or elsewhere, which have been or later will be acquired for the purpose of being delivered to, incorporated into or installed in or about the Land or improvements;

      (q)     all general intangibles and rights relating to the Property, including, without limitation, all permits, licenses and claims to or demands for the voluntary or involuntary conversion of any of the Land, the Improvements or the other property described above into cash or liquidated claims, proceeds of any insurance policies, present and future, payable because of loss sustained to all or any part of any Property, whether or not such insurance policies are required by Beneficiary, and all condemnation awards or payments now or later to be made by any public body or decree by any court of competent jurisdiction for any taking or in connection with any condemnation or eminent domain proceeding, and all causes of action and their proceeds for any damage or injury to the Land, the Improvements or the other property described above or any part of them, or breach of warranty in connection with the construction of the

- 3 -

Improvements, including causes of action arising in tort, contract, fraud or concealment of a material fact;

(r)     all permits and licenses relating or pertaining to the use or enjoyment of the Property;

(s)     proceeds of and any unearned premiums on any insurance policies covering the Property, including the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Property and irrespective as to whether or not such policies are required by Beneficiary (the "**Insurance Claims**");

(t)     all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the whole or any part of the Land and Improvements (the "**Condemnation Awards**"); and

(u)     all substitutions, replacements, additions, accessions and proceeds for or to any of the foregoing, and all books, records and files relating to any of the foregoing, including, without limitation, computer readable memory and data and any computer software or hardware reasonably necessary to access and process such memory and data.

**1.02     Secured Obligations**. Grantor makes the grant, conveyance, transfer and assignment set forth in Section 1.01, makes the irrevocable and absolute assignment set forth in Article 2, and grants the security interest set forth in Article 3, to secure payment and performance of the following obligations (the "**Secured Obligations**") in any order of priority that Beneficiary may choose:

(a)     all obligations, including, without limitation, all indebtedness, liabilities and obligations of the Loan Parties to Lender arising pursuant to the Note or any of the other Loan Documents, whether now existing or hereafter arising, whether direct, indirect, related, unrelated, fixed, contingent, liquidated, unliquidated, joint, several, or joint and several;

(b)     all indebtedness, liabilities and obligations of any Person under the other Loan Documents;

(c)     all obligations of Grantor under this Deed of Trust;

(d)     all future advances and other obligations that Grantor or any successor in ownership of all or part of the Property may agree to pay and/or perform (whether as principal, surety or guarantor) for the benefit of Beneficiary, when a writing evidences the parties' agreement that the advance or obligation be secured by this Deed of Trust; and

(e)     any of the foregoing that arises after the filing of a petition by or against Grantor under any Insolvency Proceeding.

**1.03     Future Secured Obligations**. The Secured Obligations include future advances made by Beneficiary, at its option, and for any purpose, and all other future Secured Obligations. Those future advances and other future Secured Obligations are secured to the same extent as if made or incurred on the date of the execution of this Deed of Trust, and have priority as to third

- 4 -

persons with or without actual notice from the time this Deed of Trust is filed for record as provided by law. If this Deed of Trust secures a line of credit or there is a future advance, the total amount of indebtedness secured by this Deed of Trust may decrease or increase from time to time. The unpaid balance of any line of credit secured by this Deed of Trust may at certain times be zero. This Deed of Trust will remain in full force and effect notwithstanding any zero balance. Grantor shall not file for record any notice limiting the maximum amount secured by this Deed of Trust (a "**Maximum Amount Notice**"). A Maximum Amount Notice will be an Event of Default (defined herein). Nothing in this Section 1.03 will constitute a commitment to make additional or future advances or enter into future derivatives transactions in any amount.

      **1.04**    **Notice of Terms of Secured Obligation Documents**. All persons who have or acquire an interest in the Property will be deemed to have received notice of, and will be bound by, the terms of the Credit Agreement, the Note and the other Loan Documents, and each other agreement or instrument made or entered into in connection with each of the Secured Obligations (the Loan Documents and those other agreements or instruments, the "**Secured Obligation Documents**"). These terms include any provisions in the Secured Obligation Documents which permit borrowing, repayment and re-borrowing, or which provide that the rate of interest on one or more of the Secured Obligations may vary from time to time.

## ARTICLE 2 - ASSIGNMENT OF RENTS

      **2.01**    **Assignment**. Grantor irrevocably and unconditionally assigns Beneficiary all rents and other benefits derived from the Leases, and all other issues, profits, royalties, bonuses, income and other proceeds of the Property, whether now due, past due or to become due, including all prepaid rents, security deposits and other supporting obligations (the "**Rents**"). Beneficiary may collect Rents with or without taking possession of the Property. Beneficiary, by its acceptance of this Deed of Trust does not assume any duty or obligation under the Leases. THIS IS AN ABSOLUTE ASSIGNMENT, NOT AN ASSIGNMENT FOR SECURITY ONLY.

      **2.02**    **Grant of License**. Beneficiary confers upon Grantor a license to collect and retain the Rents as they become due and payable, so long as there is no Event of Default (the "**License**"). If an Event of Default has occurred, Beneficiary shall have the right, which it may choose to exercise in its sole discretion, to terminate the License without notice to or demand upon Grantor, and without regard to the adequacy of Beneficiary's security under this Deed of Trust.

      **2.03**    **Collection and Application of Rents**. Subject to the License granted to Grantor under Section 2.02, Beneficiary has the right, power and authority to collect any and all Rents. Beneficiary may apply all amounts received by it pursuant to this assignment to pay Secured Obligations, expenses of leasing, operating, maintaining and managing the Property, taxes, charges, claims, assessments, any other liens, and premiums for insurance, in such amounts and in such order as Beneficiary deems appropriate. Grantor hereby appoints Beneficiary its attorney-in-fact to perform any and all of the following acts, if and at the times when Beneficiary in its sole discretion may so choose:

      (a)     Demand, receive and enforce payment of any and all Rents;

(b)  Give receipts, releases and satisfactions for any and all Rents; or

(c)  Sue either in the name of Grantor or in the name of Beneficiary for any and all Rents.

Beneficiary's right to the Rents does not depend on whether or not Beneficiary takes possession of the Property as permitted under Section 8.02(c). In Beneficiary's sole discretion, it may choose to collect Rents either with or without taking possession of the Property. If an Event of Default occurs while Beneficiary is in possession of all or part of the Property and is collecting and applying Rents as permitted under this Deed of Trust, Beneficiary, Trustee and any receiver shall nevertheless be entitled to exercise and invoke every right and remedy afforded any of them under this Deed of Trust and at law or in equity, including the right to exercise the power of sale granted under Section 1.01 and Section 8.02(g).

**2.04  Notice.** All lessees under any and all Leases are hereby irrevocably authorized and notified by Grantor to rely upon and to comply with (and are fully protected in so doing) any notice or demand by Beneficiary for the payment to Beneficiary of any rental or other sums which may at any time become due under the Leases, or for the performance of any of lessees' undertakings under the Leases, and lessees shall have no right or duty to inquire as to whether any Event of Default has actually occurred or is then existing hereunder.

**2.05  Proceeds.** Beneficiary has the right to apply all amounts received by it pursuant to this assignment to pay any of the following in such amounts and in such order as Beneficiary deems appropriate: (a) any and all Secured Obligations, together with all costs and attorneys' fees; (b) all expenses of leasing, operating, maintaining and managing the Property, including without limitation, the salaries, fees, commissions and wages of a managing agent and such other employees, agents or independent contractors as Beneficiary deems necessary or desirable; (c) all taxes, charges, claims, assessments, any other liens, and premiums for all Insurance Beneficiary deems necessary or desirable; or (d) the cost of a alterations, renovations, repairs or replacements, and all expenses incident to taking and retaining possession of the Property.

**2.06  Beneficiary Not Responsible.** Regardless of whether or not Beneficiary, in person or by agent, takes actual possession of the Land and Improvements, Beneficiary is not and will not be deemed to be:

(a)  A "mortgagee in possession" for any purpose;

(b)  Responsible for performing any of the obligations of Grantor under any lease;

(c)  Responsible for any waste committed by lessees or any other parties, any dangerous or defective condition of the Property, or any negligence in the management, upkeep, repair or control of the Property; or

(d)  Liable in any manner for the Property or the use, occupancy, enjoyment or operation of all or any part of it.

- 6 -

## ARTICLE 3 - GRANT OF SECURITY INTEREST

**3.01**    **Grant of Security Interest**. Grantor grants to Beneficiary a security interest in, and pledges and assigns to Beneficiary, all of Grantor's right, title and interest in and to the Property, to the extent characterized as personal property (the **"Personalty"**).

**3.02**    **Financing Statements**. Grantor hereby authorizes Beneficiary to file one or more financing statements and such other documents as Beneficiary may from time to time require to perfect or continue the perfection of Beneficiary's security interest in any Personalty. Grantor must pay all fees and costs that Beneficiary may incur in filing such documents in public offices and in obtaining such record searches as Beneficiary may reasonably require.

**3.03**    **Possession and Use of Collateral**. Except as otherwise provided in this Deed of Trust or the Credit Agreement, so long as no Event of Default exists hereunder, Grantor may possess, use, transfer and dispose of any of the Personalty in the ordinary course of Grantor's business.

**3.04**    **Security Agreement**. This Deed of Trust constitutes a security agreement under the UCC covering all Personalty.

**3.05**    **Addresses of Debtor and Secured Party**. The address of Grantor adjacent to its signature below is the mailing address of Grantor as debtor under the UCC. The address for Trustee specified in the first paragraph of this Deed of Trust is the address for Trustee as secured party under the UCC; and the address for Beneficiary specified in Article 9 is the address for Beneficiary as secured party under the UCC.

## ARTICLE 4 - FIXTURE FILING

**4.01**    **Fixture Filing; Description of Fixtures**. This Deed of Trust constitutes a fixture filing under the UCC and covers any Property which now or later may become a Fixture to the Land or any Improvement. **"Fixtures"** include all articles of personal property now or hereafter attached to or placed upon said real property, appurtenances and improvements, together with all goods and other property, which are or at any time become so related to the Property that an interest in them arises under real estate law.

## ARTICLE 5 - RIGHTS AND DUTIES OF THE PARTIES

**5.01**    **Representations and Warranties**. Grantor represents and warrants that, except as previously disclosed to Beneficiary in a writing making reference to such representation or warranty, that:

(a)    the Property does not represent the proceeds of unlawful activity under any state, federal or foreign law;

(b)    to the best of Grantor's knowledge the Property includes all property and rights which may be reasonably necessary or desirable to enable Grantor to use, enjoy and operate the Land and the Improvements for the present uses thereof;

- 7 -

(c)    to the best of Grantor's knowledge none of the Land or Improvements is subject to any Lien, offset or claim except as listed on a title report received by Beneficiary prior to the Closing (those Liens, offsets or claims, if any, the **"Permitted Exceptions"**);

(d)    to the best of Grantor's knowledge Grantor owns the Personalty free and clear of any security interests, reservations of title or conditional sales contracts, and there is no presently valid financing statement affecting the Personalty on file in any public office;

(e)    the legal name of Grantor is as appears in the first paragraph of this Deed of Trust;

(f)    Grantor has not used any trade name, assumed name or other name;

(g)    if Grantor is anything other than a natural Person, it has complied with all Applicable Laws concerning its organization, existence and the transaction of its business, and is in existence and good standing in its state of organization and each state in which it conducts its business;

(h)    if Grantor is anything other than a natural Person, the execution, delivery and performance by Grantor of this Deed of Trust is within the powers and authority of Grantor and has been duly authorized;

(i)    to Grantor's knowledge this Deed of Trust does not conflict with any Applicable Law;

(j)    this Deed of Trust is a legal, valid and binding agreement of Grantor, enforceable against Grantor in accordance with its terms, and any instrument or agreement required hereunder, when executed and delivered, will be similarly legal, valid, binding and enforceable;

(k)    there is no lawsuit, tax claim or other dispute pending or to Grantor's knowledge threatened against Grantor or the Property that, if determined adverse to Grantor, is reasonably likely to have a Material Adverse Effect;

(l)    Grantor is not the subject of any Judgment;

(m)    this Deed of Trust does not conflict with, nor is Grantor in default on any credit agreement, indenture, purchase agreement, guaranty, capital lease, or other investment, agreement, or arrangement presently in effect providing for or relating to extensions of credit in respect of which Grantor is in any manner directly or contingently obligated;

(n)    Grantor has filed all tax returns (federal, state, and local) required to be filed and has paid all taxes, assessments, and governmental charges and levies thereon, including interest and penalties;

(o)    Grantor has complied with all current laws, regulations and ordinances or other requirements of any governmental authority relating to or imposing liability or standards of conduct concerning protection of health or the environment or hazardous substances (**"Environmental Laws"**);

(p)     Grantor has not received any notices of violations of any Applicable Laws; and Grantor is in compliance with all Applicable Laws;

(q)     there are no claims, actions, proceedings or investigations pending or threatened against Grantor or affecting the Property with respect to any violations of Applicable Laws;

(r)     Grantor's place of business is located at the address specified below;

(s)     unless otherwise disclosed to Beneficiary, Grantor is not a "foreign person" within the meaning of Section 1445 of the Internal Revenue Code of 1986;

(t)     and there is no Event of Default or event which, with notice or lapse of time would be an Event of Default.

## ARTICLE 6 - WARRANTY OF TITLE

**6.01**     **Warranty of Title**. Grantor represents and warrants that (a) Grantor lawfully possesses and holds fee simple title to all of the Land and the Improvements; (b) that Grantor has the right, power and authority to grant, convey and assign the Property; and (c) that except for Permitted Encumbrances, the Property is unencumbered. Grantor especially agrees and declares that the estate of him, whether vested, contingent or in expectancy, is hereby conveyed and shall be bound for the payment and performance of the Secured Obligations.

**6.02**     **Defense and Notice of Claims and Actions**. At Grantor's sole expense, Grantor shall protect, preserve and defend the Property and title to and right of possession of the Property, and the security of this Deed of Trust and the rights and powers of Beneficiary and Trustee created under it, against all adverse claims. Grantor must give Beneficiary and Trustee prompt notice in writing if any claim is asserted which does or could affect any of these matters, or if any action or proceeding is commenced which alleges or relates to any such claim.

**6.03**     **Liens, Charges and Encumbrances**. Grantor shall immediately discharge any Lien on the Property, other than Permitted Encumbrances, to which Beneficiary has not consented in writing. Grantor must pay when due each obligation secured by or reducible to a Lien, charge or encumbrance which now does or later may encumber or appear to encumber all or part of the Property or any interest in it, whether the Lien, charge or encumbrance is or would be senior or subordinate to this Deed of Trust. **"Permitted Encumbrances"** shall mean the Permitted Exceptions.

## ARTICLE 7 - COVENANTS

**7.01**     **Performance of Secured Obligations**. Grantor shall promptly pay and perform each Secured Obligation in accordance with its terms.

**7.02**     **Taxes and Assessments**. Grantor shall pay (a) prior to delinquency all taxes, levies, charges and assessments imposed by Applicable Law or any public or quasi-public authority or utility company which are (or if not paid, may become) a Lien on all or part of the Property or any interest in it, or which may cause any decrease in the value of the Property or any part of it (individually and collectively an **"Imposition"**); (b) any and all intangible taxes

- 9 -

and documentary stamp taxes determined at any time to be due on or as a result of the Secured Obligations, this Deed of Trust or any other Loan Documents, together with any and all interest and penalties thereon; and (c) taxes, levies, charges and assessments on Beneficiary's interest therein or upon this mortgage or the Secured Obligations (collectively "**Mortgage Taxes**"). If after the date of this Deed of Trust, the State of California passes any law deducting from the value of Land for the purpose of taxation any Lien thereon, or changing in any way the laws for the taxation of mortgages or debts secured by mortgage for state or local purposes, or the manner of the collection of any such taxes, so as to affect this Deed of Trust, then within 180 days after notice by Beneficiary to Grantor, Grantor shall pay all Secured Obligations. Notwithstanding the foregoing provisions of this Section 7.02, Grantor may, at its expense, contest the validity or application of any Imposition by appropriate legal proceedings promptly initiated and conducted in good faith and with due diligence, provided that (a) Beneficiary is satisfied that neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest, and (b) Grantor shall have posted a bond or furnished such other security required from time to time by Beneficiary.

**7.03    Damages and Insurance and Condemnation Proceeds.**

(a)    Grantor hereby absolutely and irrevocably assigns to Beneficiary, and authorizes and requires the payor to pay to Beneficiary, the following claims, causes of action, awards, payments and rights to payment: (i) all awards, claims and causes of action, arising out of any warranty affecting all or any part of the Property, or for damage or injury to or decrease in value of all or part of the Property or any interest in it; (ii) all proceeds of any insurance policies payable because of loss sustained to all or part of the Property; and (iii) all interest which may accrue on any of the foregoing.

(b)    Grantor must immediately notify Beneficiary in writing if: (i) any damage occurs or any injury or loss is sustained in the amount of $25,000 or more to all or part of the Property, or any action or proceeding relating to any such damage, injury or loss is commenced; or (ii) any offer is made, or any action or proceeding is commenced, which relates to any actual or proposed condemnation or taking of all or part of the Property.

(c)    Beneficiary may, at its option, (i) in its own name appear in or prosecute any action or proceeding to enforce any cause of action based on warranty, or for damage, injury or loss to all or part of the Property, and it may make any compromise or settlement of the action or proceeding; (ii) participate in any action or proceeding relating to any Condemnation Award; and (iii) join Grantor in adjusting any Insurance Claim. All insurance proceeds, Condemnation Awards, and proceeds of any other claim based on warranty, or for damage, injury or loss to the Property which Grantor may receive or be entitled to must be paid to Beneficiary. In each instance, Beneficiary may apply those proceeds first toward reimbursement of all of Beneficiary's costs and expenses of recovering the proceeds or Condemnation Award, including legal fees, the balance shall, at Beneficiary's option, be applied to pay or prepay some or all of the Secured Obligations in such order and proportions as it may choose. GRANTOR HEREBY SPECIFICALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ALL RIGHTS OF A PROPERTY OWNER GRANTED UNDER CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 1265.225(a), WHICH PROVIDES FOR ALLOCATION OF CONDEMNATION

PROCEEDS BETWEEN A PROPERTY OWNER AND A LIENHOLDER, AND ANY
OTHER LAW OR SUCCESSOR STATUTE OF SIMILAR IMPORT.

      7.04    **Maintenance and Preservation of Property**. Grantor shall:

      (a)    immediately discharge any Lien on the Property which Beneficiary has not
consented to in writing, and shall also pay when due each obligation secured by or reducible to a
Lien, charge or encumbrance which now or hereafter encumbers or appears to encumber all or
part of the Property, whether the Lien, charge or encumbrance is or would be senior or
subordinate to this Deed of Trust;

      (b)    not alter, remove or demolish any portion of the Improvements, except as
permitted or required by the Credit Agreement;

      (c)    maintain (or cause to be maintained) all policies of insurance required under the
Credit Agreement and pay (or cause payment of) all premiums for that insurance on or prior to
the date when due;

      (d)    promptly and completely repair and/or restore any portion of the Property which
becomes damaged or destroyed, in a good and workmanlike manner in accordance with sound
building practices, whether or not Grantor has received the proceeds of any Insurance Claim;

      (e)    not commit or allow any waste of the Property, nor do or suffer to be done any act
whereby the value of any part of the Property may be lessened;

      (f)    not initiate or allow any change in any zoning or other land use classification
which affects the Property or any part of it, except as permitted or required by the Credit
Agreement;

      (g)    if the Land is agricultural, keep the Property in good condition and repair; operate
the Property, whether improved pastures, orchards, grazing, timber, or crop lands, in a good and
husbandmanlike manner in accordance with accepted principles of sound agricultural and
forestry practices; take all reasonable precautions to control wind and water erosion; fertilize
improved pastures, if any, where necessary to maintain a good stand of desirable grasses; protect
orchards and timber, if any, by reasonable precautions against loss or damage by fire including
the maintenance of appropriate fire breaks; and neither to remove nor permit the removal of any
timber, buildings, oil, gas, mineral, stone, rock, clay, fertilizer, gravel or top soil without the
prior written consent of Beneficiary;

      (h)    complete appropriation and all other requirements, if any, necessary to obtain the
issuance of any license or water permit issued to Grantor, and take all other steps required or
advisable for purposes of perfecting and maintaining in good status all other Water Rights;

      (i)    not bring or keep any article on the Property or cause or allow any condition to
exist on it, if that could invalidate or would be prohibited by any insurance coverage required to
be maintained by Grantor on the Property or any part of it under this Deed of Trust; and

(j)       perform all other acts which from the character or use of the Property may be reasonably necessary to maintain and preserve its value and utility.

**7.05      Compensation and Reimbursement of Costs and Expenses**. Grantor shall pay (a) fees in the maximum amounts legally permitted, or reasonable fees as may be charged by Beneficiary or Trustee when the law provides no maximum limit, for any services that Beneficiary or Trustee may render in connection with this Deed of Trust, including Beneficiary's providing a statement or Trustee's rendering of services in connection with a reconveyance; (b) all of Beneficiary's or Trustee's costs and expenses which may be incurred in rendering any such services; and (c) all costs, expenses and other advances which may be incurred or made by Beneficiary or Trustee in any efforts to enforce any terms of this Deed of Trust or protect the Property, including any rights or remedies afforded to Beneficiary or Trustee under Section 8.02, whether any lawsuit is filed or not, including any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships, or in defending any action or proceeding arising under or relating to this Deed of Trust, including attorneys' fees and other legal costs, costs of any Foreclosure Sale (defined herein) and any cost of evidence of title. If Beneficiary chooses to dispose of Property through more than one Foreclosure Sale, Grantor must pay all costs, expenses or other advances that may be incurred or made by Beneficiary or Trustee in each of those Foreclosure Sales.

**7.06      Indemnification**. GRANTOR SHALL INDEMNIFY TRUSTEE AND BENEFICIARY AGAINST AND SHALL HOLD THEM HARMLESS FROM ALL LOSSES, DAMAGES, LIABILITIES, CLAIMS, CAUSES OF ACTION, JUDGMENTS, COURT COSTS, ATTORNEYS' FEES AND OTHER LEGAL EXPENSES, COST OF EVIDENCE OF TITLE, COST OF EVIDENCE OF VALUE, AND OTHER COSTS AND EXPENSES WHICH EITHER MAY SUFFER OR INCUR: (A) IN PERFORMING ANY ACT REQUIRED OR PERMITTED BY THIS DEED OF TRUST OR ANY OF THE OTHER SECURED OBLIGATION DOCUMENTS OR BY LAW; (B) BECAUSE OF ANY FAILURE OF GRANTOR TO PAY OR PERFORM ANY OF THE SECURED OBLIGATIONS; OR (C) EXCEPT FOR SOLE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF BENEFICIARY, BECAUSE OF ANY ALLEGED OBLIGATION OF OR UNDERTAKING BY BENEFICIARY TO PERFORM OR DISCHARGE ANY OF THE REPRESENTATIONS, WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN ANY DOCUMENT RELATING TO THE PROPERTY (OTHER THAN SUCH WARRANTIES, CONDITIONS, COVENANTS OR OTHER OBLIGATIONS IN THE SECURED OBLIGATION DOCUMENTS). THIS AGREEMENT BY GRANTOR TO INDEMNIFY TRUSTEE AND BENEFICIARY SURVIVES THE RELEASE AND CANCELLATION OF ANY OR ALL OF THE SECURED OBLIGATIONS AND THE FULL OR PARTIAL RELEASE AND/OR RECONVEYANCE OF THIS DEED OF TRUST.

**7.07      Payments Due Under this Deed Of Trust**. Grantor must pay all obligations to pay money arising under this Deed of Trust immediately upon demand by Trustee or Beneficiary. Each such obligation shall bear interest from the date the obligation arises at the Default Rate.

**7.08      Site Visits, Observation and Testing**. Beneficiary and its agents and representatives may enter and visit the Property at any reasonable time for the purposes of

- 12 -

observing it, performing appraisals or inspections, taking and removing soil or groundwater samples, and conducting tests on any part of it, and otherwise to determine Grantor's compliance with this Deed of Trust.

**7.09     Compliance with Applicable Law**. Grantor shall not commit or allow any act upon or use of the Property which would violate any Applicable Law, whether now existing or later to be enacted and whether foreseen or unforeseen, or any public or private covenant, condition, restriction or equitable servitude affecting the Property.

**7.10     Prohibited Transfers**. Grantor shall not, without the prior written consent of Beneficiary (which consent may be withheld in Beneficiary's sole discretion), make or permit, whether voluntarily or involuntarily by operation of law or otherwise, any Prohibited Transfer, Grantor acknowledges that Beneficiary is extending financing to Borrower under the Credit Agreement in reliance on the expertise, skill and experience of Grantor. Grantor acknowledges the materiality of the provisions of this Section 7.10 as a covenant of Grantor, given individual weight and consideration by Beneficiary in extending the Loan, and that any Prohibited Transfer in violation of the permitted transfer provisions hereinabove provided shall result in a material impairment of Beneficiary's interest in the Property and be deemed a breach of the foregoing covenant. If any Prohibited Transfer occurs, Beneficiary in its sole discretion may declare all of the Secured Obligations to be immediately due and payable and invoke any rights and remedies provided in Section 8.02 of this Deed of Trust. **"Prohibited Transfer"** means any sale, contract to sell, option, conveyance, encumbrance, pledge, mortgage, lease not expressly permitted under this Deed of Trust, the Credit Agreement or the other Loan Documents, or other transfer of all or any material part of the Property or any interest in it, including any transfer or exercise of any right to drill for or to extract any water (other than for Grantor's own use), oil, gas, or other hydrocarbon substances or any mineral of any kind under the surface of the Property, whether voluntary, involuntary, by operation of law or otherwise. If Grantor is an entity, **"Prohibited Transfer"** also means any transfer or transfers of the voting power or the direct or indirect beneficial ownership of Grantor.

## ARTICLE 8 - EVENTS OF DEFAULT; REMEDIES

**8.01     Events of Default**. Upon the occurrence of any one or more of the following events, Beneficiary may, by written notice delivered to Grantor, declare Grantor to be in default, and thereupon the same shall constitute an "Event of Default" under this Deed of Trust:

(a)     an Event of Default under the Note, the Guaranty, the Credit Agreement or any other Loan Document;

(b)     any representation in this Deed of Trust is materially false, incorrect or misleading;

(c)     the occurrence of a Prohibited Transfer;

(d)     the filing of any notice limiting the maximum amount secured by this Deed of Trust to a sum less than the maximum amount secured as specified herein, or if no such amount is specified, to any amount;

- 13 -

(e)     for more than 10 days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this <u>Section 8.01</u> which can be cured by the payment of a sum of money;

(f)     for 30 days after notice from Beneficiary, Grantor is in default under any term, covenant or condition of this Deed of Trust not previously described in this <u>Section 8.01</u>; provided that if (i) it is reasonably certain that the default can be cured by Grantor within that 30 day period and (ii) Grantor has commenced curing that default within that 30 day period and thereafter diligently and expeditiously proceeds to cure that default, then that 30 day period shall be extended for so long as reasonably required by Grantor in the exercise of due diligence to cure that default, up to a maximum of 90 days after the notice to Grantor of the Event of Default.

**8.02     <u>Remedies</u>.** At any time after an Event of Default, Beneficiary and Trustee shall be entitled to invoke any and all of the rights and remedies described below. All of such rights and remedies are cumulative, and the exercise of any one or more of them does not constitute an election of remedies. Except as required under applicable law, no notice to Grantor shall be required in the event that Beneficiary and/or Trustee elect to pursue one or more of the remedies described hereinafter.

(a)     <u>Acceleration</u>. Beneficiary may declare any or all of the Secured Obligations to be due and payable immediately.

(b)     <u>Receiver</u>. Beneficiary may apply to any court of competent jurisdiction for, and obtain appointment of, a receiver for the Property. Grantor hereby consents to, and agrees to not oppose, the appointment of a receiver.

(c)     <u>Entry</u>. Beneficiary, in person, by agent or by court-appointed receiver, may enter, take possession of, manage and operate all or any part of the Property, and may also do any and all other things in connection with those actions that Beneficiary may consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: taking and possessing all of Grantor's or the then owner's books and records; entering into, enforcing, modifying, or canceling leases on such terms and conditions as Beneficiary may consider proper; obtaining and evicting tenants; fixing or modifying rents; collecting and receiving any payment of money owing to Grantor; completing any unfinished construction; and/or contracting for and making repairs and alterations.  If Beneficiary so requests, Grantor will assemble all of the Property that has been removed from the Land and make all of it available to Beneficiary at the site of the Land. GRANTOR HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS BENEFICIARY AS GRANTOR'S ATTORNEY-IN-FACT TO PERFORM SUCH ACTS AND EXECUTE SUCH DOCUMENTS AS BENEFICIARY CONSIDERS APPROPRIATE IN CONNECTION WITH TAKING THESE MEASURES, INCLUDING ENDORSEMENT OF GRANTOR'S NAME ON ANY INSTRUMENTS. Regardless of any provision of this Deed of Trust or the other Secured Obligation Documents, Beneficiary shall not be considered to have accepted any property other than cash or immediately available funds in satisfaction of any obligation of Grantor to Beneficiary, unless Beneficiary has given express written notice of its election of that remedy in accordance with the UCC.

- 14 -

(d)     Cure; Protection of Security. Either Beneficiary or Trustee may cure any breach or default of Grantor, and if it chooses to do so in connection with any such cure, Beneficiary or Trustee may also enter the Property and/or do any and all other things which it may in its sole discretion consider necessary and appropriate to protect the security of this Deed of Trust. Such other things may include: appearing in and/or defending any action or proceeding which purports to affect the security of, or the rights or powers of Beneficiary or Trustee under, this Deed of Trust; paying, purchasing, contesting or compromising any encumbrance, charge, Lien or claim of Lien which in Beneficiary's or Trustee's sole judgment is or may be senior in priority to this Deed of Trust, such judgment of Beneficiary or Trustee to be conclusive as among the parties to this Deed of Trust; obtaining insurance and/or paying any premiums or charges for insurance required to be carried under the Credit Agreement; otherwise caring for and protecting any and all of the Property; and/or employing counsel, accountants, contractors and other appropriate persons to assist Beneficiary or Trustee. Beneficiary and Trustee may take any of the actions permitted under this Section 8.02 either with or without giving notice to any person.

(e)     Uniform Commercial Code Remedies. Beneficiary may exercise any or all of the remedies granted to a secured party under the UCC.

(f)     Judicial Action. Beneficiary may bring an action in any court of competent jurisdiction to foreclose this instrument or to obtain specific enforcement of any of the covenants or agreements of this Deed of Trust.

(g)     Power of Sale. Under this power of sale, Beneficiary has the discretionary right to cause some or all of the Property, including any Property which constitutes personal property, to be sold or otherwise disposed of in any combination and in any manner permitted by Applicable Law.

    (i)     Sales of Personal Property.

        (1)     For purposes of this power of sale, Beneficiary may elect to treat as personal property any Property which is intangible or which can be severed from the Land or Improvements without causing structural damage. If it chooses to do so, Beneficiary may dispose of any personal property separately from the sale of real property, in any manner permitted by Division 9 of the UCC, including any public or private sale, or in any manner permitted by any other Applicable Law. Any proceeds of any such disposition shall not cure any Event of Default or reinstate any Secured Obligation for purposes of Section 2924c of the California Civil Code.

        (2)     In connection with any sale or other disposition of such Property, Grantor agrees that the following procedures constitute a commercially reasonable sale: Beneficiary must mail written notice of the sale to Grantor not later than forty-five (45) days prior to such sale. Once per week during the four weeks immediately preceding such sale, Beneficiary must publish notice of the sale in a local daily newspaper of general circulation. Upon receipt of any written request, Beneficiary must make the Property available to any bona fide prospective purchaser for inspection during reasonable business hours.

- 15 -

Notwithstanding, Beneficiary is under no obligation to consummate a sale if, in its judgment, none of the offers received by it equals the fair value of the Property offered for sale. The foregoing procedures do not constitute the only procedures that may be commercially reasonable.

       (ii)    <u>Non-Judicial Foreclosure Sales of Real Property or Mixed Collateral</u>. Beneficiary may choose to dispose of some or all of the Property which consists solely of real property in any manner then permitted by Applicable Law. In its sole discretion, Beneficiary may also or alternatively choose to dispose of some or all of the Property, in any combination consisting of both real and personal property, together in one sale to be held in accordance with the law and procedures applicable to real property, as permitted by the UCC. Grantor agrees that such a sale of personal property together with real property constitutes a commercially reasonable sale of the personal property. For purposes of the Power of Sale, either a sale of real property alone, or a sale of both real and personal property together in accordance with the UCC, will sometimes be referred to as a "Non-Judicial Foreclosure Sale." Before any Non-Judicial Foreclosure Sale, Beneficiary or Trustee must give such notice of default and election to sell as may then be required by law. When all time periods then legally mandated have expired, and after such notice of sale as may then be legally required has been given, Trustee must sell the property being sold at a public auction to be held at the time and place specified in the notice of sale. Neither Trustee nor Beneficiary have any obligation to make demand on Grantor before any Non-Judicial Foreclosure Sale. From time to time in accordance with then Applicable Law, Trustee may, and in any event at Beneficiary's request must, postpone any Non-Judicial Foreclosure Sale by public announcement at the time and place noticed for that sale. At any Non-Judicial Foreclosure Sale, Trustee must sell to the highest bidder at public auction for cash in lawful money of the United States. Trustee must execute and deliver to the purchaser(s) a deed or deeds conveying the property being sold without any covenant or warranty whatsoever, express or implied. The recitals in any such deed of any matters or facts, including any facts bearing upon the regularity or validity of any Non-Judicial Foreclosure Sale, are conclusive proof of their truthfulness. Any such deed shall be conclusive against all persons as to the facts recited in it.

       (h)    <u>Single or Multiple Foreclosure Sales</u>. If the Property consists of more than one lot, parcel or item of property, Beneficiary may: (i) designate the order in which the lots, parcels and/or items shall be sold or disposed of or offered for safe or disposition; and (ii) elect to dispose of the lots, parcels and/or items through a single consolidated sale or disposition to be held or made under the power of sale granted in <u>Section 8.02(g)</u>, or in connection with judicial proceedings, or by virtue of a judgment and decree of foreclosure and sale; or through two or more such sales or dispositions; or in any other manner Beneficiary may deem to be in its best interests (any such sale or disposition, a "<u>Foreclosure Sale</u>" and any two or more, "<u>Foreclosure Sales</u>"). If it chooses to have more than one Foreclosure Sale, Beneficiary at its option may cause the Foreclosure Sales to be held simultaneously or successively, on the same day, or on such different days and at such different times and in such order as it may deem to be in its best interests. No Foreclosure Sale or Non-Judicial Foreclosure Sale will terminate or affect the liens of this Deed of Trust on any part of the Property which has not been sold, until all of the Secured Obligations have been paid in full.

**8.03    Credit Bids**. At any Foreclosure Sale, any Person, including Grantor, Trustee or Beneficiary, may bid for and acquire the Property or any part of it to the extent permitted by then Applicable Law. Instead of paying cash for that property, Beneficiary may settle for the purchase price by crediting the sales price of the property against the following obligations:

(a)    First, the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Grantor is obligated to pay or reimburse Beneficiary or Trustee; and

(b)    Second, all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose.

**8.04    Application of Foreclosure Sale Proceeds**. Beneficiary and Trustee shall apply the proceeds of any Foreclosure Sale in the following manner:

(a)    First, to pay the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Grantor is obligated to reimburse Beneficiary or Trustee;

(b)    Second, to pay the portion of the Secured Obligations attributable to any sums expended or advanced by Beneficiary or Trustee under the terms of this Deed of Trust which then remain unpaid;

(c)    Third, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose; and

(d)    Fourth, to remit the remainder, if any, to the person or persons entitled to it.

**8.05    Application of Rents and Other Sums**. Beneficiary must apply any and all Rents collected by it pursuant to the assignment provided in Article 2 of this Deed of Trust, and any and all other sums, other than the proceeds of a Foreclosure Sale, received or collected by Beneficiary, in the following manner:

(a)    First, to pay the portion of the Secured Obligations attributable to the costs and expenses of collection of such sums, including reasonable attorneys' fees, that may be incurred by Beneficiary, Trustee and/or any receiver appointed in accordance with this Deed of Trust;

(b)    Second, to pay any and all Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose, and any and all expenses of leasing, operating, maintaining and managing the Property and all other costs and charges incident to the Property as provided in Section 2.05 of this Deed of Trust, and in such order and proportions as Beneficiary in its sole discretion may choose; and

(c)    Third, to remit the remainder, if any, to the person or persons entitled thereto.

**8.06    No Liability for Funds Not Received**. Neither Trustee nor Beneficiary has any liability for any funds which it does not actually receive.

## ARTICLE 9 - NOTICES

All notices, approvals, consents, and other communications, under this Deed of Trust ("**Notices**") must be given in accordance with and will be subject to the terms and provisions of the Credit Agreement. Notices must be mailed or delivered, if to Grantor, to the address adjacent Grantor's signature below; if to Trustee, to the address in the first paragraph of this Deed of Trust if to Beneficiary or Lender, to c/o Summit Investment Management LLC, 1700 Lincoln Street, Suite 2150, Denver, CO 80203; and in the case of any other Person, to the address designated by that Person in a notice to Grantor, Beneficiary, and Lender.

## ARTICLE 10 - REQUEST FOR NOTICE

Grantor requests that a copy of any notice of default and any notice of sale be mailed to it at the address specified adjacent to its signature below.

## ARTICLE 11 - TRUSTEE AND BENEFICIARY

**11.01** **Releases, Extensions, Modifications and Additional Security**. Without affecting the personal liability of any Person, including Grantor, for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations:

(a) Beneficiary may from time to time and without notice: (i) release any person liable for payment of any Secured Obligation; (ii) extend the time for payment, or otherwise alter the terms of payment, of any Secured Obligation; (iii) accept additional real or personal property of any kind as security for any Secured Obligation, whether evidenced by deeds of trust, mortgages, security agreements or any other instruments of security; or (iv) alter, substitute or release any property securing the Secured Obligations.

(b) From time to time when requested to do so by Beneficiary in writing, Trustee may perform any of the following acts without incurring any liability or giving notice to any Person: (i) consent to the making of any plat or map of the Property or any part of it; (ii) join in granting any easement or creating any restriction affecting the Property; (iii) join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or (iv) reconvey the Property or any part of it without any warranty.

**11.02** **Authority of Beneficiary**. Without affecting the personal liability of any Person, including Grantor, for the payment of the Secured Obligations or the lien of this Deed of Trust on the remainder of the Property for the unpaid amount of the Secured Obligations, Trustee may perform any of the following acts when requested to do so by Beneficiary in writing: (a) consent to the making of any plat or map of the Property or any part of it; (b) join in granting any easement or creating any restriction affecting the Property; (c) join in any subordination or other agreement affecting this Deed of Trust or the lien of it; or (d) reconvey the Property or any part of it without any warranty.

**11.03** **Exculpation of Trustee and Beneficiary**. Neither Beneficiary nor Trustee will be directly or indirectly liable to Grantor or any other person as a consequence of any of the

- 18 -

following: (a) the exercise of or failure to exercise any rights, remedies or powers granted to it in this Deed of Trust; (b) any failure or refusal to perform or discharge any obligation or liability of Grantor under any agreement related to the Property or under this Deed of Trust; or (c) any loss sustained by Grantor or any third party resulting from any failure to lease the Property or from any other act or omission in managing the Property after an Event of Default, unless the loss is caused by the willful misconduct and bad faith of Beneficiary or Trustee, respectively. GRANTOR HEREBY EXPRESSLY WAIVES AND RELEASES ALL LIABILITY OF THE TYPES DESCRIBED ABOVE, AND AGREES THAT NO SUCH LIABILITY BE ASSERTED AGAINST OR IMPOSED UPON TRUSTEE OR BENEFICIARY.

**11.04  Substitution of Trustee**. Beneficiary may substitute a successor to any Trustee named in or acting under this Deed of Trust in any manner now or later to be provided at Applicable Law, or by a written instrument executed and acknowledged by Beneficiary and recorded in the office(s) of the recorder(s) of the county or counties where the Land and Improvements are situated. Any such instrument is conclusive proof of the proper substitution of the successor Trustee, who will automatically upon recordation of the instrument succeed to an estate, title, rights, powers and duties of the predecessor Trustee, without conveyance from it.

**11.05  Subrogation**. Beneficiary is subrogated to the liens of all encumbrances, whether released of record or not, which are discharged in whole or in part by Beneficiary in accordance with this Deed of Trust or with the proceeds of any loan secured by this Deed of Trust.

## ARTICLE 12 - RECONVEYANCE

When all Secured Obligations have been paid in full, and there are no further obligations under the Loan Documents, Trustee shall execute and deliver an instrument reconveying the Property, or so much of it as is then held under this Deed of Trust, without warranty to the person or persons legally entitled to it.  In the reconveyance, the grantee may be described as the person or persons legally entitled thereto, and the recitals of any matters or facts shall be conclusive proof of their truthfulness.  Trustee and Beneficiary will have no duty to determine the rights of persons claiming to be rightful grantees of any reconveyance of the Property.

## ARTICLE 13 - MISCELLANEOUS PROVISIONS

**13.01  Additional Provisions**. The Loan Documents fully state all of the terms and conditions of the parties' agreement regarding the matters mentioned in or incidental to this Deed of Trust. The Loan Documents also grant further rights to Beneficiary and contain further agreements and affirmative and negative covenants by Grantor which apply to this Deed of Trust and to the Property. In the event of a conflict between this Deed of Trust and any other Agreements required by this Deed of Trust, this Deed of Trust shall prevail.

**13.02  Other Acts**. Grantor shall cooperate with Beneficiary for the purposes of, and perform all acts which may be necessary or advisable to perfect any Lien provided for in this Deed of Trust or to carry out the intent of this agreement. Promptly (but in no event more than ten business days) after request by Beneficiary, Grantor will execute, acknowledge and deliver any document which Beneficiary deems necessary or advisable for these purposes, and will, on

demand, pay any expenses incurred by Beneficiary in the preparation, execution and filing of any such documents.

**13.03  No Waiver or Cure**. Each waiver by Trustee or Beneficiary must be in writing, and no waiver is to be construed as a continuing waiver. No waiver is to be implied from any delay or failure by Trustee or Beneficiary to take action on account of any default of Grantor. Consent by Trustee or Beneficiary to any act or omission by Grantor must not be construed as a consent to any other or subsequent act or omission or to waive the requirement for Trustee's or Beneficiary's consent to be obtained in any future or other instance. The exercise by Trustee or Beneficiary of any right or remedy under this Deed of Trust or the other Secured Obligation Documents or under Applicable Law, shall not: cure or waive a breach, Event of Default or notice of default under this Deed of Trust or invalidate any act performed pursuant to any such default or notice; or nullify the effect of any notice of default or sale (unless all Secured Obligations then due have been paid and performed and all other defaults under the Secured Obligation Documents have been cured); or impair the security of this Deed of Trust; or prejudice Trustee or Beneficiary or any receiver appointed in accordance with this Deed of Trust, in the exercise of any right or remedy afforded any of them under this Deed of Trust; or be construed as an affirmation by Beneficiary of any tenancy, lease or option, or a subordination of the lien of this Deed of Trust.

**13.04  Powers of Beneficiary and Trustee**.

(a)     Trustee has no obligation to perform any act which it is empowered to perform under this Dead of Trust unless it is requested to do so in writing and is reasonably indemnified against loss, cost, liability and expense.

(b)     If either Beneficiary or Trustee performs any act which it is empowered or authorized to perform under this Deed of Trust that act alone does not release or change the personal liability of any person for the payment and performance of the Secured Obligations then outstanding, or the lien of this Deed of Trust on all or the remainder of the Property for full payment and performance of all outstanding Secured Obligations. The liability of the original Grantor does not release or change if Beneficiary grants any successor in interest to Grantor any extension of time for payment, or modification of the terms of payment, of any Secured Obligation. Beneficiary is not required to comply with any demand by the original Grantor that Beneficiary refuse to grant such an extension or modification to, or commence proceedings against, any such successor in interest.

(c)     Beneficiary may take any of the actions permitted under Sections 8.02(b) and/or 8.02(c) regardless of the adequacy of the security for the Secured Obligations, or whether any or all of the Secured Obligations have been declared to be immediately due and payable, or whether notice of default and election to sell has been given under this Deed of Trust.

**13.05  Merger**. No merger occurs as a result of Beneficiary's acquiring any other estate in or any other lien on the Property unless Beneficiary consents to a merger in writing.

**13.06  Joint and Several Liability**. If Grantor consists of more than one Person, each Grantor (a) acknowledges and undertakes, together with the other Grantors, joint and several

liability for the indebtedness, liabilities and obligations of Grantor under this Deed of Trust; (b) acknowledges that this Deed of Trust is the independent and several obligation of each Grantor and may be enforced against each Grantor separately, whether or not enforcement of any right or remedy hereunder has been sought against any other Grantor; and (c) agrees that its liability hereunder and under any other Secured Obligation Document shall be absolute, unconditional, continuing and irrevocable. GRANTOR EXPRESSLY WAIVES ANY REQUIREMENT THAT BENEFICIARY EXHAUST ANY RIGHT, POWER OR REMEDY AND PROCEED AGAINST THE OTHER GRANTORS UNDER THIS DEED OF TRUST, OR ANY OTHER SECURED OBLIGATION DOCUMENTS, OR AGAINST ANY OTHER PERSON UNDER ANY GUARANTY OF, OR SECURITY FOR, ANY OF THE SECURED OBLIGATIONS.

**13.07  Choice of Law; Jurisdiction and Venue; Jury Trial Waiver; Judicial Reference Provision.**

(a)      THE VALIDITY OF THIS DEED OF TRUST, THE CONSTRUCTION, INTERPRETATION, AND ENFORCEMENT HEREOF, THE RIGHTS OF THE PARTIES HERETO WITH RESPECT TO ALL MATTERS ARISING HEREUNDER OR RELATED HERETO, AND ANY CLAIMS, CONTROVERSIES OR DISPUTES ARISING HEREUNDER OR RELATED HERETO SHALL BE DETERMINED UNDER, GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF CALIFORNIA. THE PARTIES HERETO AGREE THAT THE PROVISIONS IN THE CREDIT AGREEMENT WITH RESPECT TO JURISDICTION AND VENUE, ARE APPLICABLE TO THIS DEED OF TRUST AS IF FULLY SET FORTH HEREIN. THE PROVISIONS IN THIS SECTION ARE A MATERIAL INDUCEMENT TO ENTER INTO THIS DEED OF TRUST.

(b)      TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, EACH PARTY HERETO HEREBY WAIVES ITS/HIS RESPECTIVE RIGHTS, IF ANY, TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS DEED OF TRUST OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREIN, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW OR STATUTORY CLAIMS (EACH A "CLAIM"). EACH PARTY HERETO REPRESENTS THAT EACH HAS REVIEWED THIS WAIVER AND EACH KNOWINGLY AND VOLUNTARILY WAIVES ITS/HIS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL. IN THE EVENT OF LITIGATION, A COPY OF THIS AMENDMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

(c)      IN THE EVENT ANY LEGAL PROCEEDING IS FILED IN A COURT OF THE STATE OF CALIFORNIA (THE "COURT") BY OR AGAINST ANY PARTY HERETO IN CONNECTION WITH ANY CLAIM AND THE WAIVER SET FORTH IN **SECTION 13.06(b)** ABOVE IS NOT ENFORCEABLE IN SUCH PROCEEDING, THE PARTIES HERETO AGREE AS FOLLOWS:

(i)      WITH THE EXCEPTION OF THE MATTERS SPECIFIED IN **SECTION 13.06(c)(ii)** BELOW, ANY CLAIM SHALL BE DETERMINED BY A

GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THE PROVISIONS OF CALIFORNIA CODE OF CIVIL PROCEDURE SECTIONS 638 THROUGH 645.1. THE PARTIES INTEND THIS GENERAL REFERENCE AGREEMENT TO BE SPECIFICALLY ENFORCEABLE. VENUE FOR THE REFERENCE PROCEEDING SHALL BE IN THE COUNTY OF FRESNO, CALIFORNIA.

(ii)    THE FOLLOWING MATTERS SHALL NOT BE SUBJECT TO A GENERAL REFERENCE PROCEEDING: (A) NON-JUDICIAL FORECLOSURE OF ANY SECURITY INTERESTS IN REAL OR PERSONAL PROPERTY, (B) EXERCISE OF SELFHELP REMEDIES (INCLUDING SET-OFF OR RECOUPMENT), (C) APPOINTMENT OF A RECEIVER, AND (D) TEMPORARY, PROVISIONAL, OR ANCILLARY REMEDIES (INCLUDING WRITS OF ATTACHMENT, WRITS OF POSSESSION, TEMPORARY RESTRAINING ORDERS, OR PRELIMINARY INJUNCTIONS). THIS DEED OF TRUST DOES NOT LIMIT THE RIGHT OF ANY PARTY TO EXERCISE OR OPPOSE ANY OF THE RIGHTS AND REMEDIES DESCRIBED IN CLAUSES (A)-(D) AND ANY SUCH EXERCISE OR OPPOSITION DOES NOT WAIVE THE RIGHT OF ANY PARTY TO PARTICIPATE IN A REFERENCE PROCEEDING PURSUANT TO THIS DEED OF TRUST WITH RESPECT TO ANY OTHER MATTER.

(iii)    UPON THE WRITTEN REQUEST OF ANY PARTY, THE PARTIES SHALL SELECT A SINGLE REFEREE, WHO SHALL BE A RETIRED JUDGE OR JUSTICE. IF THE PARTIES DO NOT AGREE UPON A REFEREE WITHIN 10 DAYS OF SUCH WRITTEN REQUEST, THEN, ANY PARTY SHALL HAVE THE RIGHT TO REQUEST THE COURT TO APPOINT A REFEREE PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 640(b). THE REFEREE SHALL BE APPOINTED TO SIT WITH ALL OF THE POWERS PROVIDED BY LAW. PENDING APPOINTMENT OF THE REFEREE, THE COURT SHALL HAVE THE POWER TO ISSUE TEMPORARY OR PROVISIONAL REMEDIES.

(iv)    EXCEPT AS EXPRESSLY SET FORTH IN THIS DEED OF TRUST, THE REFEREE SHALL DETERMINE THE MANNER IN WHICH THE REFERENCE PROCEEDING IS CONDUCTED INCLUDING THE TIME AND PLACE OF HEARINGS, THE ORDER OF PRESENTATION OF EVIDENCE, AND ALL OTHER QUESTIONS THAT ARISE WITH RESPECT TO THE COURSE OF THE REFERENCE PROCEEDING. ALL PROCEEDINGS AND HEARINGS CONDUCTED BEFORE THE REFEREE, EXCEPT FOR TRIAL, SHALL BE CONDUCTED WITHOUT A COURT REPORTER, EXCEPT WHEN ANY PARTY SO REQUESTS A COURT REPORTER AND A TRANSCRIPT IS ORDERED, A COURT REPORTER SHALL BE USED AND THE REFEREE SHALL BE PROVIDED A COURTESY COPY OF THE TRANSCRIPT. THE PARTY MAKING SUCH REQUEST SHALL HAVE THE OBLIGATION TO ARRANGE FOR AND PAY THE COSTS OF THE COURT REPORTER, PROVIDED THAT SUCH COSTS, ALONG WITH THE REFEREE'S FEES, SHALL ULTIMATELY BE BORNE BY THE PARTY WHO DOES NOT PREVAIL, AS DETERMINED BY THE REFEREE.

(v)    THE REFEREE MAY REQUIRE ONE OR MORE PREHEARING CONFERENCES. THE PARTIES HERETO SHALL BE ENTITLED TO DISCOVERY, AND THE REFEREE SHALL OVERSEE DISCOVERY IN ACCORDANCE WITH THE RULES OF DISCOVERY, AND SHALL ENFORCE ALL DISCOVERY ORDERS IN THE SAME MANNER AS ANY TRIAL COURT JUDGE IN PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA.

(vi)    THE REFEREE SHALL APPLY THE RULES OF EVIDENCE APPLICABLE TO PROCEEDINGS AT LAW IN THE STATE OF CALIFORNIA AND SHALL DETERMINE ALL ISSUES IN ACCORDANCE WITH CALIFORNIA SUBSTANTIVE AND PROCEDURAL LAW. THE REFEREE SHALL BE EMPOWERED TO ENTER EQUITABLE AS WELL AS LEGAL RELIEF AND RULE ON ANY MOTION WHICH WOULD BE AUTHORIZED IN A TRIAL, INCLUDING MOTIONS FOR DEFAULT JUDGMENT OR SUMMARY JUDGMENT. THE REFEREE SHALL REPORT HIS OR HER DECISION, WHICH REPORT SHALL ALSO INCLUDE FINDINGS OF FACT AND CONCLUSIONS OF LAW. THE REFEREE SHALL ISSUE A DECISION AND PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE, SECTION 644, THE REFEREE'S DECISION SHALL BE ENTERED BY THE COURT AS A JUDGMENT IN THE SAME MANNER AS IF THE ACTION HAD BEEN TRIED BY THE COURT. THE FINAL JUDGMENT OR ORDER FROM ANY APPEALABLE DECISION OR ORDER ENTERED BY THE REFEREE SHALL BE FULLY APPEALABLE AS IF IT HAS BEEN ENTERED BY THE COURT.

(vii)    THE PARTIES RECOGNIZE AND AGREE THAT ALL CLAIMS RESOLVED IN A GENERAL REFERENCE PROCEEDING PURSUANT HERETO WILL BE DECIDED BY A REFEREE AND NOT BY A JURY. AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR OWN CHOICE, EACH PARTY HERETO KNOWINGLY AND VOLUNTARILY AND FOR THEIR MUTUAL BENEFIT AGREES THAT THIS REFERENCE PROVISION SHALL APPLY TO ANY DISPUTE BETWEEN THEM THAT ARISES OUT OF OR IS RELATED TO THIS DEED OF TRUST.

**13.08    Counterpart Execution.** This Deed of Trust may be executed in one or more counterparts, each of which is, for all purposes deemed an original and all such counterparts taken together, constitute one and the same instrument.

**13.09    Binding Effect; Successors and Assigns.** The Secured Obligation Documents shall inure to the benefit of and snail be binding upon the parties and their respective successors and assigns; provided, that Grantor shall not assign its rights or obligations hereunder without Beneficiary's prior written consent. However, this Section 13.07 does not waive the provisions of Section 7.10; and Grantor shall not assign its rights or obligations hereunder without Beneficiary's prior written consent.  Beneficiary may transfer all or any portion of its rights under the Secured Obligation Documents to any other Person.  Beneficiary may disclose to any actual or proposed transferee any information that Grantor has delivered to Beneficiary in connection with the negotiation of this Deed of Trust or pursuant to the Secured Obligation Documents; and Grantor shall cooperate fully with Beneficiary in providing that information to any actual or proposed transferee.

- 23 -

**13.10  Necessary Action**. Beneficiary is authorized to execute any other documents or take any other actions necessary to effectuate this Deed of Trust and the consummation of the transactions contemplated herein.

**13.11  Credit Report**. Beneficiary is authorized to order a credit report and verify all other credit information, including past and present loans and standard references from time to time to evaluate the creditworthiness of Grantor. Without limitation, a copy of the consent for release of information, general authorization or similar document on file with Beneficiary shall authorize third Persons to provide the information requested from time to time.

**13.12  Interpretation**. Whenever the context requires, all words used in the singular will be construed to have been used in the plural, and vice versa, and each gender will include any other gender. The captions of the sections of this Deed of Trust are for convenience only and do not define or limit any terms or provisions. The word "include(s)" means "include(s), without limitation", and the word "including" means "including, but not limited to". The word "obligations" is used in its broadest and most comprehensive sense, and includes all primary, secondary, direct, indirect, fixed and contingent obligations, and it further includes all principal, interest, prepayment charges, late fees, loan fees and any other fees and charges accruing or assessed at any time, as well as all obligations to perform acts or satisfy conditions. No listing of specific instances, items or matters in any way limits the scope or generality of any language of this Deed of Trust. The Exhibits to this Deed of Trust are hereby incorporated in this Deed of Trust.

**13.13  Time of the Essence**. Time is of the essence of this Deed of Trust.

**13.14  No Construction Against Drafter**. Each party has participated in negotiating and drafting this Deed of Trust, so if an ambiguity or a question of intent or interpretation arises, this Deed of Trust is to be construed as if the parties had drafted it jointly, as opposed to being construed against a party because it was responsible for drafting one or more provisions of this Deed of Trust.

**13.15  Attorneys' Fees and Costs**. Grantor agrees to pay all costs and expenses, including legal fees, expert witness fees, paralegal fees and court costs, incurred in connection with enforcement of the Loan Documents and this Deed of Trust, whether by negotiation, legal proceedings, or otherwise, including, without limitation, in the context of any bankruptcy proceedings. In addition, Borrower shall pay any and all stamp and other taxes and fees payable or determined to be payable in connection with the execution, delivery, filing, and recording of any of this Deed of Trust, and agrees to hold Beneficiary harmless from and against any and all liabilities with respect from any delay in paying or omission to pay such taxes and fees. Grantor's obligations to Beneficiary under this Section shall survive termination of this Deed of Trust and repayment of Grantor's obligations to Beneficiary under this Deed of Trust, shall also survive as unsecured obligations after any acquisition by Beneficiary of the Collateral or any part of it by foreclosure or any other means. Whenever Grantor is obligated to pay or reimburse Beneficiary or Trustee for any attorneys' fees, those fees shall include the allocated costs for services of in-house counsel.

**13.16** **Waiver of Marshalling**. Grantor waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require upon foreclosure sales of assets in a particular order, including any rights provided by California Civil Code sections 2899 and 3433, as such sections may be amended from time to time. Each successor and assign of Grantor, including any holder of a lien subordinate to this Deed of Trust, by acceptance of its interest or lien agrees that it shall be bound by the above waiver, as if it had given the waiver itself.

**13.17** **Waiver of Certain Other Laws**. To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for appraisement, valuation, stay, extension or redemption, and Grantor, for Grantor, and its representatives, successors and assigns, and for any and all persons ever claiming any interest in the Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, or notice of election to mature or declare due the whole of the Secured Obligations in the event of foreclosure of the lien created by this Deed of Trust.

**13.18** **Rights and Remedies Cumulative**. All rights and remedies under this Deed of Trust and the Secured Obligation Documents are cumulative, and the exercise of any one or more of them does not constitute an election of remedies.

**13.19** **Severability**. If any provision of this Deed of Trust should be held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare all Secured Obligations immediately due and payable.

Grantor is signing and delivering this Deed of Trust effective as of the day and year first above written.

**GRANTOR:**

Jeffery E. Arambel, an unmarried man

Address:
Jeffery E. Arambel
433 Roxanne Drive
Patterson, CA 95363

[NOTARY ACKNOWLEDGMENTS SET FORTH ON THE FOLLOWING PAGE]

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ *Stanislaus* )

On *April 17, 2017* _____ before me, *Jeanne Jordan, Notary Public* _____
(insert name and title of the officer)

personally appeared *Jeffery E. Arambel* _____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**JEANNE JORDAN**
COMM. #2019307
NOTARY PUBLIC-CALIFORNIA
MERCED COUNTY
My Commission Expires April 30. 2017

Signature _____ (Seal)

# EXHIBIT "A"
Legal Description

**For APN/Parcel ID(s):  021-013-006, 021-013-004, 021-013-025, 021-013-026, 021-013-027, 021-013-028, 021-013-029, 016-034-003, 021-022-055 and 021-025-020**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE UNINCORPORATED AREA IN COUNTY OF STANISLAUS, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

Tract A:

Parcel 1:

Parcel 1 as shown on that certain Parcel Map filed for record April 3, 1969 in Book 6 of Parcel Maps, Page 96, Stanislaus County Records, being a portion of Sections 22 and 27, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Parcel 2:

An easement for road purposes over a strip of land 30 feet wide, lying 3 feet Northerly and 27 feet Southerly of the following described line:

Beginning at a point on the Easterly line of Section 22, Township 5 South, Range 7 East, Mount Diablo Base and Meridian, distant thereon South 0° 22' West 400.00 feet from the 1/4 section corner set in the Easterly line of Section 22, said line also being the centerline of Rogers Road; thence from said point of beginning, South 70° 38' West 2218.60 feet; thence over a strip of land lying 30 feet Westerly from a line described as South 1° 00' West 1528.60 feet to a 3/4 inch iron pipe set in the Southerly line of Section 22.

APN: 021-022-055

Tract B One:

Parcel A:

Parcel 1 as shown on that certain Parcel Map filed for record February 26, 1991 in Book 44 of Parcel Maps, Page 10, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Except therefrom any portion thereof lying within that certain Parcel Map filed for record June 5, 1969 in Book 7 of Parcel Maps, Page 51, Stanislaus County Records.

Together with a right of way and easement for road purposes as described in document recorded July 13, 1988, Instrument No.  046357, of Official Records, described as follows:

Commencing at the Northwest corner of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian; run thence East along the North line of said section a distance of 20 feet to a point; thence South and parallel with the West line of said Section 5 to the South line of Lateral 6-South of the West Stanislaus Irrigation District, as said lateral was conveyed to said district by Deed from Evelyn N. Hansen recorded December 15, 1930 in Book 421, Page 499, of Official Records; thence Westerly along the South line of said lateral to the West line of said Section 5; thence North along the West line of said Section 5 to the point of commencement.

Also together with an easement for ingress-egress and public utilities only over a strip of land 30 feet wide, as described in document recorded February 26, 1991, Instrument No.  014108, of Official Records, lying within a portion of the Northwest quarter of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian, the centerline of which is described as follows:

Title No.: FSST-TO17000860

## EXHIBIT "A"
### Legal Description
(continued)

Commencing at the Northwest corner of said Section 5; thence North 89° 45' East, along the North line of said Section 5 and the centerline of a county road (Howard Road), a distance of 675.00 feet to the Westerly line of Arambel property as described in Deed recorded July 13, 1988, Instrument No. 046357, of Official Records; thence continuing North 89° 45' East along the North line of said Section 5 a distance of 15.00 feet; thence South 0° 31' West and parallel to the Westerly property line as described in the above mentioned deed, a distance of 50.00 feet to the Southerly right of way of Howard Road as shown in Book 7 of Parcel Maps, Page 51, Stanislaus County Records, and being the true point of beginning of this centerline description; thence continuing South 0° 31' West, 15.00 feet Easterly from and parallel with the above mentioned Westerly property line, to the Southerly right of way of the West Stanislaus Irrigation District Lateral No. 6-South, and the end of this centerline description.

Parcel B:

Parcel 2 as shown on that certain Parcel Map filed for record February 26, 1991 in Book 44 of Parcel Maps, Page 10, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with an easement for ingress-egress and public utilities only over a strip of land 30 feet wide, as described in document recorded February 26, 1991, Instrument No. 014108, of Official Records, lying within a portion of the Northwest quarter of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian, the centerline of which is described as follows:

Commencing at the Northwest corner of said Section 5; thence North 89° 45' East, along the North line of said Section 5 and the centerline of a county road (Howard Road), a distance of 675.00 feet to the Westerly line of Arambel property as described in Deed recorded July 13, 1988, Instrument No. 046357, of Official Records; thence continuing North 89° 45' East along the North line of said Section 5 a distance of 15.00 feet; thence South 0° 31' West and parallel to the Westerly property line as described in the above mentioned deed, a distance of 50.00 feet to the Southerly right of way of Howard Road as shown in Book 7 of Parcel Maps, Page 51, Stanislaus County Records, and being the true point of beginning of this centerline description; thence continuing South 0° 31' West, 15.00 feet Easterly from and parallel with the above mentioned Westerly property line, to the Southerly right of way of the West Stanislaus Irrigation District Lateral No. 6-South, and the end of this centerline description.

Also together with an easement for ingress, egress and public utilities over and across the Northerly 30 feet of the Easterly 669.13 feet of the above referred to Parcel 1 of Parcel Map filed for record in Book 44 of Parcel Maps, Page 10, Stanislaus County Records.

Tract B One A and B APN: 021-013-006

Tract B Two:

All that portion of the Northwest quarter of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian, described as follows:

Commencing at the Northwest corner of said Section 5; thence North 89° 45' East, along the North line of said Section 5 and the centerline of a county road (Howard Road), a distance of 876.52 feet to the point of beginning of this description; thence South 0° 31' West 262.4 feet to a point in the centerline of Lateral No. 6-South of the West Stanislaus Irrigation District as described in the Deed from Evelyn N. Hansen to said district recorded December 15, 1930, in Book 421, Page 499, of Official Records; thence along the centerline of said Lateral No. 6-South, North 76° 31 1/2' West 179.7 feet; thence North 73° 11' West 27.8 feet; thence leaving said Lateral No. 6-South, North 0° 31' East 210.7 feet to a point on the centerline of said Howard Road; thence North 89° 45' East, along the centerline of said Howard Road, 201.52 feet to the point of beginning.

Title No.: FSST-TO17000860

## EXHIBIT "A"
### Legal Description
(continued)

Tract B Two APN: 021-013-004

<u>Tract B Three:</u>

Parcel A:

Parcel 1 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Except therefrom Parcel One as shown on that certain Parcel Map filed for record December 15, 1992 in Book 45 of Parcel Maps, Page 62, Stanislaus County Records.

Together with a non-exclusive easement for ingress and egress over and across the East 15 feet of Parcel 2 as shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-028

Parcel B:

Parcel 2 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1 as shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-027

Parcel C:

Parcel 3 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1; over and across the East 15 feet of Parcel 2; and over and across the 30 foot ingress and egress easement on Parcel 4, as said parcels are shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

APN: 021-013-025

Parcel D:

Parcel 4 as shown on that certain Parcel Map filed for record February 27, 1991 in Book 44 of Parcel Maps, Page 13, Stanislaus County Records, and being a portion of the West one-half of Section 5, Township 5 South, Range 7 East, Mount Diablo Base and Meridian.

Together with a non-exclusive easement for ingress and egress over and across the West 15 feet of Parcel 1; and over and across the East 15 feet of Parcel 2, as said parcels are shown on said Parcel Map filed for record in Book 44 of Parcel Maps, Page 13, Stanislaus County Records.

Title No.: FSST-TO17000860

# EXHIBIT "A"
Legal Description
(continued)

APN: 021-013-026

Tract B Four:

Parcel One as shown on that certain Parcel Map filed for record December 15, 1992 in Book 45 of Parcel Maps, Page 62, Stanislaus County Records.

Tract Four APN: 021-013-029

Tract C:

Parcel 2 as shown on Parcel Map filed for record August 28, 1967 in Book 4 of Parcel Maps, Page 15, Stanislaus County Records.

Except therefrom all oil, gas and other hydrocarbon substances and minerals in and under the above described property as reserved by John Sylvester King and Judy S. King, husband and wife, in Deed recorded November 30, 1981, Instrument No. 29129, in Book 3501, Page 569, of Official Records, which provides as follows: Together with right of surface entry.

APN: 016-034-003

# EXHIBIT E

RECORDING REQUESTED BY:
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
888-745-3886

WHEN RECORDED MAIL TO:
STATE OF CALIFORNIA
EMPLOYMENT DEVELOPMENT DEPARTMENT
LIEN GROUP, MIC 92G
PO BOX 826880
SACRAMENTO, CA 94280-0001

Stanislaus, County Recorder
Lee Lundrigan Co Recorder Office
DOC- 2018-0004483-00
Acct 401-Over The Counter Documents
Wednesday, JAN 24, 2018 10:18:36
Ttl Pd $0.00 Rcpt # 0004076338
JLO/R1/1-1

# NOTICE OF STATE TAX LIEN
(Filed pursuant to Section 7171 of the Government Code)

JEFFREY E ARAMBEL                          XXX-XX-6709

J ARAMBEL FARMS

433 ROXANNE DR
PATTERSON CA 95363-2152            STANISLAUS

Letter ID. L0251573408          Certificate No. G001864701

| TAX PERIOD | TAX | PENALTY | INTEREST | TOTAL |
|---|---|---|---|---|
| 10/01/2016 to 12/31/2016 | $12,737.71 | $6,819.45 | $694.66 | $20,251.82 |

Interest calculated through 01/13/2018

The Director of the Employment Development Department hereby certifies the above is liable to the State of California for amounts due and required to be paid as determined under the provisions of the California Unemployment Insurance Code, the Revenue and Taxation Code, or both.

THE AMOUNT OF DELINQUENCY ABOVE SET FORTH SHALL BE A LIEN UPON ALL REAL OR PERSONAL PROPERTY AND RIGHTS TO SUCH PROPERTY, INCLUDING ALL AFTER-ACQUIRED PROPERTY AND RIGHTS TO PROPERTY BELONGING TO THE ABOVE NAMED.

Date: 01/13/2018

At Sacramento, California



The Director of the Employment Development Department has complied with all provisions of the California Unemployment Insurance Code in the computation and levy of the amount assessed and has caused this notice of lien to be issued by a duly authorized representative.

*Teresa Gage*

By _____
Authorized Representative
This agency has adopted the use of a facsimile signature as affixed above.

DE 2181 Rev. 5 (7-12)                            1264594944_P1013_E13