**5**

Christopher O. Rivas (SBN 238765)
REED SMITH LLP
355 South Grand Avenue, Suite 2900
Los Angeles, CA 90071-1514
Tel: 213.457.8000
Fax: 213.457.8080

Attorneys for SBN V Ag I LLC

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case Nos.　9:18-bk-90029-E-11 |
| JEFFERY EDWARD ARAMBEL, | Chapter 11 |
| Debtor. | Docket No: MF-40 |
| | **REPLY IN SUPPORT OF CONFIRMATION OF PROPOSED PLAN OF REORGANIZATION** |
| | Date:　　　　September 10, 2019<br>Time:　　　　10:00 a.m.<br>Courtroom:　Modesto Division<br>　　　　　　　501 I Street, 6th Floor<br>　　　　　　　Sacramento, CA |
| | Honorable Ronald H. Sargis |

**TO THE HONORABLE BANKRUPTCY COURT AND ALL PARTIES AND THEIR COUNSEL OF RECORD:**

Secured Creditor SBN V Ag I LLC ("Summit") respectfully submits this Reply in support of confirmation of the Proposed Plan of Reorganization (the "Plan"), [Docket No. 860], filed by Debtor in Possession, Jeffery E. Arambel (the "Debtor").

## I.

## INTRODUCTION

This Court is well-aware of the long history of this case, including the numerous concerns raised by not only Summit, which is the largest creditor of this case, but by nearly every other stakeholder in this case at one time or another. Summit will not recite the history of this case in this summary reply, other than to observe that the Plan is the product of very long extended negotiations between the Debtor, Summit, Metropolitan Life Insurance Company ("MetLife"), and the other secured and unsecured creditors of this estate, many of whom were asked for their input before the Plan was filed.

It is not surprising, then, that many of the concerns raised in the objections that have been filed to the Plan are directly related to the negotiated compromises reflected in the Plan. Summit addresses these more specifically, below. Moreover, Summit joins in the reply filed by the Debtor supporting the Plan and incorporates the arguments made by the Debtor by reference herein.

    **A.**     **Objection of Dorothy Arnaud, et al.**

The Objection of Dorothy M. Arnaud, Helen F. Jacobson, Deborah Dewolf; and Garry Dewolf in their various individual and representative capacities (together, the "Filbin Creditors") sets forth objections to the Plan on the purported basis that the Filbin Creditors wish to be paid "adequate protection payments" on account of their secured claim (the "Filbin Objection") [Docket No. 909]. The objection should be overruled out of hand based solely on the fact that there is a sufficient equity cushion on the Filbin Creditors' claims that they are more than adequately protected by the Plan.

But the Filbin Objection reveals the true motivation of the Filbin Creditors, who seek far more than they are entitled to receive. The Objection primarily targets the "Filbin Available Cash", which are the remaining cash proceeds of a sale approved by this Court in a related bankruptcy case: Filbin Land & Cattle Co. (Case No. 9:18-bk-90030) (the "Filbin Case"). As this Court may recall, the Filbin Creditors were secured creditors in the Filbin Case and they made every effort to block the sale of very valuable gas station property in the Filbin Case that provided for the full repayment of their secured claim in that case. It was apparent at the sale hearing that the Filbin Creditors were hoping to block the sale of that real property so they could foreclose on it, which was not surprising given the fact that the property sold for a gross sale price of approximately $8.3 million – well in excess of the Filbin Creditors' secured claim.

Summit is and was the sole remaining unsecured creditor in the Filbin Case. In the interests of funding the operations of this bankruptcy case in an orderly fashion post-confirmation, Summit has expressed willingness to subordinate their unsecured claims as to certain proceeds (a/k/a the Filbin Available Cash). The Filbin Creditors have no interest in the funds remaining in the Filbin Case, including the Filbin Available Cash. This is particularly true here, where the Filbin Creditors settled any and all claims they had against Filbin Land & Cattle Co., whether known or unknown, the release of which would include any right the Filbin Creditors otherwise had to the excess proceeds from the sale by Filbin Land & Cattle Co.[1] [*See* Filbin Case; Docket No. 500; Settlement Agreement.]

It is only now for the first time, **after** confirmation and closure of the Filbin Case, that the Filbin Creditors have alleged that a Purchase and Sale Agreement (the "PSA") gives them some right to proceeds in the Filbin Case. Any such hypothetical rights would have been released anyway, but there were no such rights to begin with, because the Filbin Creditors have mischaracterized the PSA. Specifically, the Filbin Creditors provide the Court with a selective block quote from Section 4.2.2 of the PSA to insinuate that the Filbin Creditors have a "right" to

---

[1] The fact that the Filbin Creditors "preserved" rights they had against Mr. Arambel, directly, does not confer extra rights to the Filbin Creditors with respect to property owned by Filbin Land & Cattle Co. that the Filbin Creditors never had.

excess proceeds of sale in order to effectuate Section 4.2.4 of the PSA. However, it is the omission of the language from Section 4.2.4 from the Filbin Objection that is most concerning. This is a key omission, since Section 4.2.4 of the PSA provides:

> "Buyers may encumber the Real Property or a portion thereof with an additional deed of trust or deeds of trust so long as the total indebtedness encumbering the Real Property does not exceed 77.5% of the fair market value of the Real Property at the time of the encumbrance."

[Docket No. 911, Ex. A.]

In other words, all that the PSA does is permit the Filbin Creditors to record **an additional** Deed of Trust against Filbin Land & Cattle Co. to perfect **additional** notes, including, presumably, the notes that the Filbin Creditors are asserting are owed by **this** Debtor (Mr. Arambel, as debtor-in-posssesion). However, the simple fact is that the Filbin Creditors filed no additional Deeds of Trust against the real property of Filbin Land & Cattle Co, let alone a Deed of Trust securing the notes they are owed in **this completely distinct** bankruptcy case. Their claim against Filbin Land & Cattle Co. was fully satisfied during the administration of the Filbin Case (and released therein), which has *res judicata* effect on any claims that the Filbin Creditors had against Filbin Land & Cattle Co.

This Court should not countenance the Filbin Creditors' second attempt to lay special claims to the proceeds of the sale in the Filbin Case, let alone to do so at the expense of the stakeholders of this case, each of whom will ultimately benefit from Summit's willingness to fund the operations of this estate post-confirmation, including by permitting the estate to use the Filbin Available Cash pursuant to the terms of the Plan.

**B.     Objection of Benjamin Lopez**

The chief concern raised by Mr. Lopez appears to be one of "lack of information", but the Disclosure Statement, which was approved by this Court, and the Plan itself, provides more than sufficient information for Mr. Lopez to understand the treatment being offered to unsecured creditors in the Plan. The fact is that given the amount of the claims of secured creditors in this case, chief of which are MetLife and Summit, that under any normal liquidation scenario

(including, for example, through a liquidating Chapter 7 trustee), the unsecured creditors of this case would face the prospect of receiving no distributions in this case whatsoever.

The value of Mr. Arambel's real properties in a "free fall" liquidation could be so low that Summit, itself, would be concerned about fully recovering on its claims. It is for this reason that Summit has agreed to fund the administration of this estate for another year-and-a-half: to maximize the sale value of the real estate. The alternative of an orderly Plan process in this case is clearly better than such a liquidation, not only for Summit and the other secured creditors, but also for unsecured creditors and even for equity. Moreover, Summit has agreed – given the time it will take to implement the Plan – to defer recovery on its own claims in an amount up to $3.5 million for distribution to unsecured creditors during the implementation of the Plan.

Mr. Lopez, who has only recently become involved in this bankruptcy case, likely did not appreciate this special treatment being offered to unsecured creditors. Summit believes that this plan is unquestionably better for unsecured creditors than the alternative, and once Mr. Lopez has an opportunity to liquidate his contingent claim, he will benefit from the special treatment being provided to unsecured creditors in this Plan.

### III.
### CONCLUSION

Summit requests that the Court confirm the Plan, as drafted.

DATED: September 3, 2019                REED SMITH LLP

                                        By     /s/ Christopher O. Rivas
                                            Christopher O. Rivas
                                            Attorneys for SBN V Ag I LLC